## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

PENNSYLVANIA CHIROPRACTIC ASSOCIATION,
NEW YORK CHIROPRACTIC COUNCIL,
ASSOCIATION OF NEW JERSEY CHIROPRACTORS,
FLORIDA CHIROPRACTIC ASSOCIATION and
CALIFORNIA CHIROPRACTIC ASSOCIATION, on their
own behalf and in a representational capacity on behalf of
their members, and GREGORY T. KUHLMAN, D.C, JAY
KORSEN, D.C., IAN BARLOW, KENDALL GEARHART,
D.C., JEFFREY P. LERI, D.C., MICHELLE M. ASKAR,
D.C., MARK BARNARD, D.C., BARRY A. WAHNER,
D.C., ANTHONY FAVA, D.C., DAVID R. BARBER, D.C.,
RYAN S. FORD, D.C., LARRY MIGGINS, D.C., CASEY
PAULSEN, D.C., DEAN RENNEKE, D.C., ANDREW
RENO, D.C., PERI L. DWYER, D.C., RONALD L.
YOUNG, D.C., ERIC THOMPSON, D.C., on their own
behalf and on behalf of all others similarly situated,

               Plaintiffs,

      -against-

BLUE CROSS BLUE SHIELD ASSOCIATION, BLUE
CROSS AND BLUE SHIELD OF RHODE ISLAND, BLUE
CROSS AND BLUE SHIELD OF ALABAMA,
ARKANSAS BLUE CROSS AND BLUE SHIELD, BLUE
SHIELD OF CALIFORNIA, BLUE CROSS AND BLUE
SHIELD OF FLORIDA, BLUE CROSS AND BLUE
SHIELD OF GEORGIA, HEALTH CARE SERVICES
CORPORATION, INDEPENDENCE BLUE CROSS, BLUE
CROSS AND BLUE SHIELD OF KANSAS, CAREFIRST,
INC., BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS, BLUE CROSS AND BLUE SHIELD
OF MICHIGAN, BLUE CROSS AND BLUE SHIELD OF
MINNESOTA, BLUE CROSS AND BLUE SHIELD OF
KANSAS CITY, HORIZON BLUE CROSS AND BLUE
SHIELD OF NEW JERSEY, EXCELLUS BLUE CROSS
AND BLUE SHIELD, BLUE CROSS AND BLUE SHIELD
OF NORTH CAROLINA, HIGHMARK, INC., BLUE
CROSS AND BLUE SHIELD OF SOUTH CAROLINA,
BLUE CROSS AND BLUE SHIELD OF TENNESSEE,
PREMERA BLUE CROSS, THE REGENCE GROUP,
WELLMARK, INC., and WELLPOINT, INC.,

               Defendants.

Case No.: 1.09-cv-05619

Hon. Matthew F. Kennelly
Hon. Arlander Keys

**PLAINTIFFS'
MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANTS'
CONSOLIDATED
MOTION TO DISMISS
PLAINTIFFS' CLAIMS
UNDER ERISA**

# TABLE OF CONTENTS

OVERVIEW AND BACKGROUND ........................................................................... 1

THE BLUE CARD PROGRAM ............................................................................... 4

ARGUMENT ....................................................................................................... 10

   THE MOTION TO DISMISS THE ERISA CLAIMS SHOULD BE DENIED ...................... 10

    I.    PLAINTIFFS HAVE ASSERTED VALID ERISA CLAIMS  AGAINST THE BCBS ENTITY DEFENDANTS .............................................................. 10

      A.   The BCBS Entity Defendants Are The Proper Parties ................................ 10

      B.   ERISA Governs an Insurer's Claim for a Return of Benefits ..................................... 14

      C.   ERISA Governs Claims Concerning The "Right" To Receive Payments Issued Under A Health Care Plan, While The In-Network Agreement Governs Disputes Over The "Amount" Of Such Payments ..................................... 18

      D.   Plaintiffs Have Alleged Facts Showing Violations of ERISA .................................. 21

    II.   PLAINTIFFS SATISFY THE EXHAUSTION REQUIREMENT ......................... 22

    III.  COUNT III IS A VALID ALTERNATIVE CLAIM FOR RELIEF ....................... 25

    IV.  THE CLAIM FOR INJUNCTIVE RELIEF UNDER COUNT VII CAN BE PRESERVED PENDING A DETERMINATION OF  WHETHER A VALID CLAIM PROVIDING SUCH RELIEF REMAINS .................................................. 26

    V.   PLAINTIFFS HAVE PROPERLY PLED ERISA STANDING ............................. 27

    VI.  PLAINTIFFS HAVE PROPERLY PLED ERISA VIOLATIONS AGAINST ALL BCBS ENTITY DEFENDANTS .............................................................. 30

CONCLUSION ................................................................................................... 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) .......................................................................................................19

*Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs., Inc.*,
    2008 U.S. Dist. LEXIS 13370 (D.N.J. Feb. 21, 2008) .........................................................30

*Anderson v. Simon*,
    217 F.3d 472 (7th Cir. 2000) ..............................................................................................7

*Bahnaman v. Lucent Techs., Inc.*,
    219 F. Supp. 2d 921 (N.D. Ill. 2002) ...................................................................................11

*Blanck v. Consol. Edison Ret. Plan*,
    2006 U.S. Dist. LEXIS 2460 (S.D.N.Y. Jan. 23, 2006) ........................................................15

*Blue Cross and Blue Shield of Alabama v. Weitz*,
    913 F.2d 1544 (11th Cir. 1990) ..........................................................................................17

*Blue Cross of California v. Anesthesia Care Associates Med. Group, Inc.*,
    187 F.3d 1045 (9th Cir. 1999) ............................................................................................18

*Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Associates*,
    53 F.3d 172 (7th Cir. 1995) ...........................................................................................15, 17

*Chavis v. Life Ins. Co. of N. Am.*,
    2009 U.S. Dist. LEXIS 114418 (D.S.C. Dec. 8, 2009) .........................................................24

*Cherene v. First Am. Fin. Corp. Long-Term Disability Plan*,
    303 F. Supp. 2d 1030 (N.D. Cal. 2004) ..............................................................................17

*Chicago United Indus., Ltd. v. Chicago*,
    2007 U.S. LEXIS 88399 (N.D. Ill. Dec.  3, 2007) ...............................................................26

*City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*,
    156 F.3d 223 (1st Cir. 1998) ..............................................................................................27

*Cleghorn v. Blue Shield of Cal.*,
    408 F.3d 1222 (9th Cir. 2005) ............................................................................................19

*Conn. State Dental Assoc. v. Anthem Health Plans, Inc.*,
  2009 U.S. App. LEXIS 28773 (11th Cir. Dec. 30, 2009) ................................................. 16, 28

*Davis v. SmithKline Beecham Clinical Laboratories*,
  993 F. Supp. 897 (E.D. Pa. 1998) ....................................................................................... 19

*Denmark v. Liberty Life Assur. Co. of Boston*,
  566 F.3d 1 (1st Cir. 2009) ..................................................................................................... 9

*Eidmann v. UNUM Life Ins. Co. of Am.*,
  2005 U.S. Dist. LEXIS 20819 (N.D. Ill. Sept. 20, 2005) ..................................................... 11

*First Nat'l Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.*,
  960 F.2d 1546 (11th Cir. 1992) ........................................................................................... 17

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health
  & Welfare Trust Fund*,
  538 F.3d 594 (7th Cir. 2008) ............................................................................................... 16

*Fresno Cmty. Hosp. and Med. Ctr. v. Souza*,
  2007 U.S. Dist. LEXIS 51700 (E.D. Cal. July 3, 2007) ....................................................... 18

*Gallegos v. Mt. Sinai Medical Ctr.*,
  210 F.3d 803 (7th Cir. 2000) ............................................................................................... 23

*Garratt v. Knowles*,
  245 F.3d 941 (7th Cir. 2001) ............................................................................................... 12

*Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
  2009 U.S. Dist. LEXIS 90600 (D.N.J. Sept. 30, 2009) ........................................................ 29

*Hackett v. Xerox Corp. Long Term Disability Income Plan*,
  315 F.3d 771 (7th Cir. 2003) ............................................................................................... 26

*Hackner v. Long Term Disability Plan for Employees for Havi Group LP*,
  2003 U.S. App. LEXIS 23605 (7th Cir. Nov. 17, 2003) ....................................................... 13

*Halpin v. W.W. Grainger, Inc.*,
  962 F.2d 685 (7th Cir. 1992) ............................................................................................... 22

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ................................................................................................. 7

*Hermann Hosp. v. MEBA Med. and Benefits Plan*,
  959 F.2d 569 (5th Cir. 1992) ............................................................................................... 19

*Jass v. Prudential Health Care Plan, Inc.*,
    88 F.3d 1482 (7th Cir. 1996) ........................................................................12, 13

*Kellner v. First Unum Life Ins. Co.*,
    589 F. Supp. 2d 291 (S.D.N.Y. 2008)...................................................................15

*Lutheran Gen. Hosp. v. Printing Indus. of Employee Benefit Trust*,
    1998 U.S. Dist. LEXIS 15885 (N.D. Ill. Sept. 22, 1998) ......................................27

*Maciosek v. Blue Cross & Blue Shield United*,
    930 F.2d 536 (7th Cir. 1991) ........................................................................16, 17

*Madaffari v. Metrocall Cos. Group*,
    2004 U.S. Dist. LEXIS 12739 (N.D. Ill. July 1, 2004).......................................13, 14

*In re Managed Care Litig.*,
    No. 00-1334-MD, 2009 U.S. Dist. LEXIS 23212 (S.D. Fla. Mar. 20, 2009).........................22

*Matuszak v. Torrington Co.*,
    927 F.2d 320 (7th Cir. 1991) ..............................................................................23

*McGowin v. ManPower Int'l, Inc*,
    363 F.3d 556 (5th Cir. 2004) ..............................................................................19

*Moffat v. Unicare Health Ins. Co.*,
    352 F. Supp. 2d 873 (N.D. Ill. 2005) ...................................................................13

*Mondry v. Am. Family Mut. Ins. Co.*,
    557 F.3d 781 (7th Cir. 2009) ..............................................................................13

*Mote v. Aetna Life Ins. Co.*,
    502 F.3d 601 (7th Cir. 2007) ..............................................................................13

*Nationwide Children's Hospital, Inc. v. D.W. Dickey & Son, Inc.*,
    2010 U.S. Dist. LEXIS 3316 (S.D. Ohio Jan. 15, 2010) ...................................21, 23

*Neuma, Inc. v. AMP, Inc.*,
    259 F.3d 864 (7th Cir. 2001) ....................................................................11, 12, 13

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare
    Reimbursement Plan*,
    388 F.3d 393 (3d Cir. 2004)................................................................................18

*Pharm. Care Mgmt. Ass'n. v. Rowe*,
    429 F.3d 294 ......................................................................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  309 F. Supp. 2d 156 (D. Mass. 2004) .................................................................................19

*Pisek v. Kindred Healthcare, Inc*,
  633 F. Supp. 2d 659 (S.D. Ind. 2007) .................................................................................13

*Plucinski v. I.A.M. Nat'l Pension Fund*,
  875 F.2d 1052 (3d Cir. 1989).............................................................................................17

*Provident Life & Accident Ins., Co. v. Waller*,
  906 F.2d 985 (4th Cir. 1990) .............................................................................................17

*Quality Infusion Care Inc. v. Humana Health Plan of Texas, Inc.*,
  2008 U.S. App. LEXIS 17416 (5th Cir. Aug. 13, 2008) .........................................................19

*Riordan and Mein v. Carus Corp.*,
  241 F.3d 581 (7th Cir. 2001) .............................................................................................13

*Riordan v. Commonwealth Edison Co.*,
  128 F.3d 549 (7th Cir. 1997) .............................................................................................12

*Sereboff v. Mid Atlantic Med. Services*,
  547 U.S. 356 (2006).........................................................................................................15

*St. Joseph's Hosp. of Marshfield, Inc. v. Carl Klemm, Inc.*,
  459 F. Supp. 2d 824 (W.D. Wis. 2006) ...............................................................................26

*St. Luke's Episcopal Hosp. v. Acordia Nat'l*,
  2006 U.S. Dist. LEXIS 37781 (S.D. Tex. June 8, 2006) .........................................................19

*Tackett v. M&G Polymers, USA, LLC*,
  561 F.3d 478 (6th Cir. 2009) .............................................................................................25

*Trustmark Life Ins. Co. v. University of Chicago Hosps.*,
  207 F.3d 876 (7th Cir. 2000) .......................................................................................15, 17

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
  546 F.3d 620 (9th Cir. 2008) .............................................................................................24

*Wachtel v. Guardian Life Ins. Co.*,
  223 F.R.D. 196 (D.N.J. 2004)............................................................................................25

*Wheeler v. Aetna Life Ins. Co.*,
  2003 U.S. Dist. LEXIS 12742 (N.D. Ill. July 21, 2003)..........................................................23

*Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund*,
794 F.2d 221 (6th Cir. 1986) .......................................................................17

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
93 F.3d 397 (7th Cir. 1996) ........................................................................23

*Zipperer v. Raytheon Co., Inc.*,
493 F.3d 50 (1st Cir. 2007) .........................................................................18

## DOCKETED CASES

*Leonardo v. Health Care Service Corp.*,
Case No. 09 C 1588 (N.D. Ill. Jan. 20, 2010) ..........................................13

*Nationwide Children's Hospital, Inc. v. D.W. Dickey & Sons, Inc.*,
Case No. 2:08-cv-1140 (S.D. Ohio Jan. 27, 2010 ) ....................................3

## STATUTES

29 C.F.R. § 2560.503-1(m)(4) ..............................................................2, 24

29 U.S.C. § 1002(21)(A)............................................................................15

29 U.S.C. § 1024(b)(4) ..............................................................................13

29 U.S.C. § 1132(c)(1)(B) .................................................................. *passim*

29 U.S.C. § 1133..........................................................................................25

## OVERVIEW AND BACKGROUND

The plaintiffs in this action consist of 17 chiropractic physicians and one occupational therapist ("Individual Plaintiffs"), along with five chiropractic associations. Each of the Individual Plaintiffs has provided health care services to patients who are insured by Blue Cross and Blue Shield entities ("BCBS Entity Defendants") which license the BCBS name from the Blue Cross and Blue Shield Association ("BCBSA").[1] The amount of benefits paid for providing services covered under the terms of the BCBS insurance plans ("Covered Services") depends on whether the provider has agreed to accept discounted rates as an "In-Network Provider," or whether the provider elects to remain free to bill the usual, non-discounted charges as an "Out-of-Network Provider." Standard form "Provider Agreements" entered into between a BCBS Entity Defendant and In-Network Providers set out the rates to be paid for providing Covered Services, while the BCBS plans determine reimbursement rates for Out-of-Network Providers.

The Individual Plaintiffs obtain assignments from their patients who are insured under a BCBS plan ("BCBS Insured"), which allows them to submit claims to and receive payments from the BCBS Entity Defendants. When a claim for benefits is submitted to a BCBS Entity Defendant, it first determines whether the treatments are Covered Services, after which it determines the amount of benefits to be paid. When a BCBS Entity Defendant determines that certain treatments are not Covered Services or are otherwise not payable under the BCBS plan, this constitutes an "Adverse Benefit Determination" under ERISA, which is defined in ERISA Regulations as follows:

> The term "adverse benefit determination" means any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or

---

[1]  This case is limited to claims relating to services provided to patients insured by BCBS health care plans issued through private employers, which are therefore governed by the terms and conditions of the Employee Retirement Income Security Act of 1974 ("ERISA").

in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-1(m)(4). Thus, if a BCBS Entity finds that a bill submitted by the provider should not be paid in full, this constitutes an Adverse Benefit Determination.

Once a BCBS Entity Defendant makes an Adverse Benefit Determination, it must comply with strict requirements under ERISA, including providing notification of the denial, with "[t]he specific reason or reasons for the adverse determination," "[r]eference to the specific plan provisions on which the determination is based," "[a] description of any additional material or information necessary for the claimant to perfect the claim," and "[a] description of the plan's review procedures . . ., including a statement of the claimant's right to bring a civil action under section 502(a) of the Act," and making available any "internal rule, guideline, protocol, or other similar criterion . . . relied upon in making the adverse benefit determination." 29 C.F.R. § 2560.503-1(g). ERISA regulations further require that any employee benefit plan shall provide a "full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h).

In this case, all of the disputed services were originally deemed by the applicable BCBS Entity Defendant to be a Covered Service, and the Individual Plaintiffs were paid the appropriate benefits under the BCBS plans or the Provider Agreements. However, at some point thereafter, the local BCBS Entity Defendant operating in the state where the claim was submitted made a retroactive Adverse Benefit Determination. It did so by finding, after-the-fact, that the benefits had purportedly been paid erroneously because the treatments were not Covered Services, and

now was reversing its decision and demanding that the Individual Plaintiffs return the previously paid funds.

If the denial had been made in advance of payment, there is no question that ERISA would apply. Making the same denial after-the-fact does not change this conclusion. Either way, the denial of benefits constitutes an Adverse Benefit Determination as defined under ERISA, as the BCBS Entity Defendant has concluded that the treatment at issue was not a Covered Service. *See, e.g., Nationwide Children's Hospital, Inc. v. D.W. Dickey & Sons, Inc.*, Case No. 2:08-cv-1140, Opinion and Order (S.D. Ohio Jan. 27, 2010) ("Children's Op."), attached hereto as Exh. A, at 3 (a retroactive denial of benefits and repayment demand treated as an Adverse Benefit Determination, with the provider hospital given full appeal rights under ERISA). Nevertheless, in each and every case that the BCBS Entity Defendant made its retroactive denials of benefits it refused to provide the Individual Plaintiffs any rights under ERISA. Rather, the BCBS Entity Defendant merely informed the Individual Plaintiff that the previous coverage decision had been reversed and the BCBS Entity Defendant had determined that the Individual Plaintiff owed restitution for the amount that had been overpaid.

Twelve of the Individual Plaintiffs were given no rights to appeal the retroactive Adverse Benefit Determination whatsoever, but were simply told that they owed the funds and, if they refused to pay, the BCBS Entity Defendant forcibly recouped them by withholding payments owed for new claims submitted for unrelated BCBS Insureds.[2]   While the remaining six

---

[2] As alleged in the First Amended Complaint ("FAC"), the following Plaintiffs were subjected to retroactive Adverse Benefit Determinations in the form of recoupment demands with no right to appeal: Plaintiffs Korsen (Def BCBRI), FAC ¶ 106-109, 118-119; Barlow (Def BCBSRI), FAC ¶ 106-109, 118-119; Gearhart (Def Wellpoint, operating in Ohio as Anthem BCBS), FAC ¶ 169-172; Barnard (Def IBC), FAC ¶ 245-253; Wahner (Def IBC), FAC ¶ 258-260, 267-271; Fava (Def Horizon), FAC ¶ 276, 278, 282; Barber (Def Wellpoint, operating as Anthem in Kentucky), FAC ¶ 287-288, 290-291; Miggins (Defs Premera and Regence), FAC ¶¶ 303-305, 308-309; Paulsen (Def BCBSMN), FAC ¶ 312-314; Renneke

Individual Defendants were offered at least some form of appeal, each of such appeal processes was effectively a sham that failed to comply with the explicit requirements under ERISA, leading thereafter to the same improper forced restitution of unrelated benefit payments.[3]

Through this action, Plaintiffs are challenging the practice by the BCBS Entity Defendants of making Adverse Benefit Determinations and recouping previously paid benefit payments without compliance with ERISA. Because the funds that were taken by the BCBS Entity Defendants were done so through an improper means and in violation of ERISA, they should be returned, with interest. The BCBS Entity Defendants should then be compelled to comply with ERISA in making repayment demands going forward.

## THE BLUE CARD PROGRAM

While only one BCBS Entity Defendant makes the direct recoupment demand against each of the Individual Defendants, it frequently does so on behalf of other BCBS Entity Defendants which actually insured or administered the health care plan through which the original – and now recouped – benefits were paid. This occurs when a BCBS Insured receives treatment from an Individual Plaintiff in one state, but is insured under a BCBS policy issued by a different BCBS Entity Defendant in another state.

Pursuant to what is known as the "Blue Card" program established and administered by the BCBSA, any patient who is insured by one of the BCBS Entity Defendants may be treated by

---

(Def BCBSMN), FAC ¶ 323-324, 327-328; Reno (Def Wellpoint, operating as Anthem in Virginia), FAC ¶ 334-338, 352; and Young (Def BCBSKS), FAC ¶ 380-384, 386-387, 393.

[3] These Plaintiffs included Plaintiffs Kuhlman (Def HCSC, through its division, BCBSIL), Leri and Askar (Def Highmark), Ford (Def Wellpoint, operating as Anthem in Missouri), Dwyer (Def BCBSF), and Thompson (Def Wellpoint, operating as Anthem in Kentucky). The FAC details how none of the appeals purportedly offered by the BCBS Entity Defs to these six Plaintiffs complied with ERISA, and were largely ignored. FAC (Dr. Kuhlman ¶¶ 87-93, 97); (Dr. Leri ¶¶ 180-182, 191-192, 198-200); (Dr. Askar ¶¶ 221-226, 232-235); (Dr. Ford ¶ 298); (Dr. Dwyer ¶¶ 356-362, 366, 374-375); (Dr. Thompson ¶¶ 400-408, 412).

an In-Network Provider for *any* other BCBS Entity Defendant, as explained in a BCBS health care plan attached to Defendants' brief:

> The Company participates with other Blue Cross and/or Blue Shield Licensees in a program called BlueCard to process claims for care received outside the service area. If you receive care within the service area of a Blue Cross and/or Blue Shield Licensee, other than the Company [Regence], you may be able to take advantage of agreements between providers and the on-site Blue Cross and/or Blue Shield Licensee. By using your identification card, Preferred Plans and/or participating providers with those Licensees can file your claim with the on-site Blue Cross and/or Blue Shield Licensee. ***The Licensee will then send your claim electronically to the Company. We will inform the on-site Licensee of benefit information and the Licensee will then pay the provider as appropriate.*** When your claim is processed, you will receive an explanation of claims processing that will specify any amount you owe the provider. You will not be responsible for any balances beyond any deductible, copay, and coinsurance amount. You will also, most likely, avoid having to pay for your entire service up front.

Defendants' Memorandum of Law In Support Of Their Consolidated Motion To Dismiss Plaintiffs' Claims Under ERISA ("Def. ERISA Mem."), Exhibit C, Regence Preferred Plan ("Regence Plan"), at 46 (emphasis added). As this demonstrates, when the Blue Card Program is used, the BCBS Entity Defendant that issues the policy as the "Home Plan" actually makes the benefit determination based on its health insurance policy. The "on-site" BCBS Entity Defendant serving as the "Host Plan" then applies that benefit determination and pays the benefit based on its fee schedule. Notably, the Home Plan which issues the insurance policy, provides an Explanation of Benefits ("EOB") to the patient that describes what portion of the claim was covered and what was not, even while the Host Plan issues the benefit payment to the provider.

The BCBS Identification Cards issued by the BCBS Entity Defendants to their BCBS Insureds generally describe this process. As one example, Plaintiff Jay Korsen, D.C. – who until recently was an In-Network provider for Defendant BCBS of Rhode Island ("BCBSRI") – has treated patients who were insured under the National Elevator Industry Health Benefit Plan ("NEIHBP"), for which BCBS of Illinois ("BCBSIL"), a division of Defendant Health Care

Services Corp. ("HCSC"), provides claims processing. As stated on the Identification Card issued to BCBS Insureds subject to that plan:

> HEALTH CARE PROVIDERS:  This group health benefit plan is sponsored and administered by the National Elevator Industry Health Benefits Plan. While eligibility is maintained persons who are covered under this plan are entitled to benefits subject to its terms, conditions and limitations. This card does not guarantee coverage. For eligibility verification or benefits information please call the respective numbers as shown on the front side of the card. . . .

> COVERED PERSONS: See your (green) benefits booklet for a description of covered services and reimbursement levels.

The numbers to call for "eligibility verification" or "benefits information" on the front of the card direct the provider to 800 numbers to the NEIHBP (administered by BCBSIL), not BCBSRI. Thus, while BCBSRI processes the claim as the "Host Plan" where the service is provided, the actual coverage decisions are made through BCBSIL, as the "Home Plan," subject to the terms and conditions of its health insurance plans.

Similarly, Defendant Wellpoint, operating under the name "Anthem," also makes clear in its subscribers' Identification Cards that whether a treatment will be deemed to be a Covered Service is determined by its plans, even when the BlueCard Program is used:

> This is your employer health plan Identification Card. Present it to the provider of health care when you or your eligible dependants receive services. See your certificate(s) or booklet(s) for a description of the benefits terms, conditions, limitations and exclusions of coverage. When submitting inquiries always include your member number from the face of this card. Possession or use of this card does not guarantee payment. Benefits received outside the BlueCard PPO Network may be limited or greatly reduced.

> FOR ALL PROVIDERS NATIONWIDE:  Please submit claims to your local Blue Cross and/or Blue Shield Plan. To ensure prompt claims processing please include the 3-digit alpha prefix that precedes the patient's identification number listed on the front of this card.

Again, the coverage terms are determined by Anthem, as the Home Plan, not by BCBSRI, which merely processes the claim on behalf of Dr. Korsen. These are only samples of many other

6

Identification Cards issued by each of the BCBS Entity Defendants that make clear that, even if the local BCBS Entity Defendant processes the claims submitted to it by an In-Network Provider, the coverage decision is made by the BCBS Entity Defendant which issued the policy.[4] *See* Affidavit of Jay Korsen, D.C. in Support of Plaintiffs' Opposition to Dismiss the First Amended Complaint ("Korsen Aff."). ¶¶ 8-11.[5]

To the extent the BCBS Entity Defendant -- acting as a Host Plan -- is seeking recoupment from the Individual Defendants relating to a BCBS plan issued through another BCBS Entity Defendant -- as the Home Plan -- then the Host Plan is effectively acting as the agent of the Home Plan. After all, it is the Home Plan that makes the benefit determination pursuant to the terms of the health insurance policy. A challenge to an Adverse Benefit Determination similarly must seek reversal of the benefit determination made pursuant to the Home Plan's insurance policy, even if that determination is communicated to the provider by the Host Plan. Under these circumstances, both the Host and Home Plans are therefore subject to the ERISA claims asserted herein.

In total, 11 BCBS Entity Defendants are identified in the FAC as making direct improper recoupment demands.[6]  However, the other 12 BCBS Entity Defendants are also subject to valid

---

[4]  If the plan at issue is fully insured by the BCBS Entity Defendant, the benefit payments will be paid to the provider from the assets of the BCBS Entity Defendant. On the other hand, if the plan is self-funded, which means that the BCBS Entity Defendant is hired as a claims administrator and the benefit payments come from the assets of the plan sponsor (usually the insured's employer), then the BCBS Entity Defendant authorizes the payment to be paid from the plan sponsor's assets. *See* Def. ERISA Mem., Exh. C (Regence Plan), at 2 ("Regence BlueShield has contracted with the Group to provide administrative services, including claims processing, and does not assume any financial risk or obligations with respect to claims.").

[5] Courts may consider documents outside the pleadings to which the Complaint had referred when ruling on a motion to dismiss.  *Hecker v. Deere & Co.*, 556 F.2d 575, 582 (7th Cir. 2009); *Anderson v. Simon*, 217 F.3d 472, 474-475 (7th Cir. 2000).

[6]  *See* FAC ¶¶ 87, 93 (BCBS of  Illinois); ¶ 115 (BCBS of Rhode Island); FAC ¶¶ 165, 287, 290-91, 294, 334 (Wellpoint, operating as Anthem in Ohio, Kentucky, Missouri and Virginia); FAC ¶¶ 178-79, 215, 221-22 (Highmark); FAC ¶¶ 258-260 (IBC); FAC ¶¶ 277-280 (Horizon); FAC ¶ 303 (Premera); FAC

ERISA claims as the Home Plan with respect to recoupment demands that have been made for benefits payable under their health care policies. As a result, they are liable under ERISA as the entity on whose behalf benefits were improperly recouped.[7]   Because many of the BCBS Entity Defendants made their recoupment demands without identifying whether each claim was processed through the BlueCard Program on behalf of another BCBS Entity Defendant, it is difficult if not impossible for Plaintiffs to identify all of the BCBS Entity Defendants that are implicated in their claims. Such information will undoubtedly be determined through discovery.

Plaintiffs Korsen and Barlow provide the most striking example of how the various BCBS Entity Defendants are intermingled due to the cross-pollination resulting from the recoupment demands being made through the Blue Card program. In April 2009, Defendant BCBSRI demanded that these Plaintiffs repay a total of more than $400,000 relating to treatments they had provided over a six year period to more than 1,500 patients. FAC ¶¶ 115, 127; *see* Korsen Aff. ¶¶ 17-29. Without offering ***any*** appeal rights, BCBSRI merely demanded repayment and then began withholding future benefit payments from unrelated patients to apply toward the alleged overpayment. FAC ¶¶ 144-146.

While BCBSRI did not identify which plans were involved, including which BCBS Entity Defendant were responsible for making benefit determinations, Plaintiff Korsen has reviewed the records of many of the affected patients. He has identified at least 91 patients who he treated under the BlueCard Program for whom BCBSRI has demanded repayment based on its finding that the treatments were not Covered Services. Korsen Aff. ¶ 34. Twenty-eight

---

¶ 308 (Regence);  FAC ¶¶ 322-23, 325-27 (BCBS of Minnesota); FAC ¶¶ 356, 362-64 (BCBS of Florida); and FAC ¶¶ 380-81, 388, 392 (BCBS of Kansas).

[7]   These included Defendants BCBS of Alabama, FAC ¶¶ 150-51; Arkansas BCBS, FAC ¶¶ 150-51; Blue Shield of California, FAC ¶¶ 150-51; BCBS of Georgia, FAC ¶¶ 150-51; CareFirst, Inc., FAC ¶¶ 63, 150-51; BCBS of Massachusetts, FAC ¶¶ 150-51; BCBS of Michigan, FAC ¶¶ 376-77; Excellus BCBS, FAC ¶¶ 69, 150-51; BCBS of North Carolina, Inc., FAC ¶ 150-51; BCBS of South Carolina, FAC ¶ 73, 150-51; BCBS of Tennessee, FAC ¶ 150-51; and Wellmark, Inc., FAC ¶ 77, 150-51.

patients treated under the BlueCard Program have had benefits otherwise payable to Plaintiffs Korsen or Barlow forcibly withheld and applied toward the alleged overpayments. FAC ¶ 150-51. These patients were insured, in total, by 21 of the other BCBS Entity Defendants, including all 13 Defendants against which Plaintiffs have not alleged that direct recoupment demands have been made. *Id.*; Korsen Aff. ¶ 34. BCBSRI has demanded or recouped payments on behalf of each of these BCBS Entity Defendants. In doing so, it was acting as their agent, since any decision as to Covered Services had to come from them, not BCBSRI.

At least seven of the patients for which recoupments were demanded, for example, were insured by a plan issued by BCBSIL; BCBSRI has subsequently withheld claims submitted on behalf of two BCBSIL subscribers. Korsen Aff. ¶ 34. Thus, when BCBSRI made a demand for repayment due to the fact that the treatments at issue were not Covered Services, or recouped benefits thereafter, it was acting as an agent of BCBSIL (or Defendant HCSC, which owns BCBSIL) to apply the terms and conditions of the BCBSIL health care policies. The same is true for many other patients affected by the repayment demand. Because BCBSRI is acting as the agent of the BCBS Entity Defendant in each of those states for purposes of seeking recoupment, and is violating ERISA in doing so, each of those BCBS Entities is also an appropriate Defendant here.

Moreover, many of Dr. Korsen's recoupments arose out of self-funded plans. As a result, the funds allegedly overpaid would have been owed to the employer, not BCBSRI. Such self-funded plans may also have had an appeal process that that would have allowed Defendants to appeal to the employer. *See Denmark v. Liberty Life Assur. Co. of* Boston, 566 F.3d 1, 3 (1st Cir. 2009) ("The employer self-funded the STD Plan. Under it, [the claims administrator] provided an initial claims review and benefits determination. Its decisions were appealable to the

employer, which paid approved claims from its own exchequer.").[8] BCBSRI denied Dr. Korsen those appeal rights.

The same pattern is repeatedly followed by each BCBS Entity Defendant, when it made a repayment demand either on its own behalf or on behalf of one of the other BCBS Entity Defendants and, in most occasions, forcibly recouped such funds by withholding new benefit payments. In all occasions, not only did Defendants fail to provide proper ERISA appeal rights with regard to such repayment demands and recoupments, but they also failed to identify when the Blue Card program or self-funded plans were involved, which could materially impact available remedies, including appeal rights.

The amount of recoupments being taken by Defendants through these improper actions is substantial. According to a June 2009 report of Defendant BCBSA, it – working with its state-based licenses, including each of the BCBS Entity Defendants – had recouped over $350 million from providers in 2008 alone. FAC ¶ 462.

## ARGUMENT

### THE MOTION TO DISMISS THE ERISA CLAIMS SHOULD BE DENIED

I. **PLAINTIFFS HAVE ASSERTED VALID ERISA CLAIMS AGAINST THE BCBS ENTITY DEFENDANTS**

A. **The BCBS Entity Defendants Are The Proper Parties**

In moving to dismiss the ERISA claims, Defendants argue that, because they are not "ERISA Plans," they cannot be sued for benefits, relying on decisions holding that "'ERISA

---

[8]   Similarly, if a Blue Card Program was involved, the appeal should go to the original Home Plan (the BCBS Entity Defendant that issued the policy and makes the benefit determination) rather than to the Host Plan (here BCBSRI), which only applies the benefits from the Home Plan's policy. *See, e.g.,* Def. ERISA Mem., Exh. C (Regence Plan), at 49 ("If you have a complaint against the Company [Regence] or if the Company has notified you in writing that a claim or request for services or supplies has been denied, you or your authorized representative may request a review of the complaint or denial . . . You or your authorized representative may review pertinent documents at the Company."). BCBSRI did not permit such an appeal.

permits suits to recover benefits only against the Plan as an entity.'" Def. ERISA Mem. at 5 (quoting *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001)). However, these cases do not involve *retroactive* Adverse Benefit Determinations, whereby the "Plans" had already paid benefits to the Individual Plaintiffs, only to have these previously paid benefits forcibly recouped by the BCBS Entity Defendants without complying with ERISA requirements. Indeed, Defendants fail to cite a single case involving recoupment demands relating to prior overpayments.

When an Adverse Benefit Determination is made prior to payment, and a suit is brought for benefits, it might make sense to name the "Plan," as the entity through which benefits are paid. Here, however, benefits have already been paid by the Plan, but the BCBS Entity Defendants have now recouped them. There is no indication that the Plans, to the extent they are distinct from the BCBS Entity Defendants, had anything to do with the repayment demands or the recoupments, making it nonsensical to sue the Plans instead.[9] This is consistent with decisions that have held that the plaintiff should sue the "Plan," since that was the proper party to obtain the requested relief. *See, e.g., Eidmann v. UNUM Life Ins. Co. of Am.*, 2005 U.S. Dist. LEXIS 20819, at *4 (N.D. Ill. Sept. 20, 2005) ("in suing the plan, most plaintiffs will have identified the party that is both necessary and sufficient for relief") (citing *Matuszak v. Anesi, Ozmon, Rodin, Novak, & Kohen, Ltd.,* 2004 U.S. Dist. LEXIS 21920, at *6-8 (N.D. Ill. Oct. 29, 2004) ("the presence of the Plan in this case is sufficient for plaintiff to recover all possible relief'")); *Bahnaman v. Lucent Techs., Inc.*, 219 F. Supp. 2d 921, 923 (N.D. Ill. 2002) ("even if a

---

[9]  An example is NEIHBP plan, based in Illinois, which insures several of Dr. Korsen's patients. Defendant BCBSRI has demanded repayments of benefits paid to insureds under the NEIHBP, and has withheld funds from others who were insured by that Plan. Yet, as alleged in the FAC, the NEIHBP had nothing to do with the repayments or recoupments, and, indeed, knew nothing about them. FAC ¶ 150. As a result, there would be no basis to sue NEIHBP, even if it is the applicable "Plan." The only proper parties would be BCBSRI, as the party which imposed the recoupment, and Defendant HCSC, the party on whose behalf BCBSRI was acting. The same is true for the remaining BCBS Entity Defendants.

claim for denial of benefits could also be brought against [the employer], the [plan's] presence in the case is sufficient for plaintiffs to obtain all possible relief."). When, as here, the benefits at issue have been recouped by the BCBS Entity Defendants, not the various Plans, the BCBS Entity Defendants are clearly "the part[ies] that [are] the proper part[ies] to obtain the requested relief."

Even assuming that Defendants' precedents would otherwise apply, here, too, they have misinterpreted the law. The 7th Circuit authority relied on by Defendants derives from *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7ᵗʰ Cir. 1996). *See Neuma*, 259 F.3d at 872 n.4 (in dismissing claim against employer, relied on the holding in *Jass*, 88 F.3d at 1490, stating that "[w]e continually have noted that 'ERISA permits suits to recover benefits only against the Plan as an entity'").[10] Notably, the plaintiff in *Jass* sued Prudential Health Care Plan ("PruCare"), as "the administrator of her husband's employee benefit plan," as well as a nurse employed by PruCare, for vicarious liability and negligence. 88 F.3d at 1484. Significantly, in dismissing the claim against the nurse, the court held that the claim against the nurse "in an individual capacity" was properly dismissed because "'ERISA permits suits to recover benefits only against the Plan as an entity. . .'" *Id.* at 1490 (citations omitted). But then the 7th Circuit held that, while the nurse was "the wrong defendant," the "appropriate defendant for a denial of benefits claim would be the Plan, ***which in this case is PruCare***." *Id.* at 1490 (emphasis added). As a result, the decision that serves as the ultimate basis for Defendants' argument, actually allowed a claim against the insurer, which was, in effect, the Plan.

---

[10] *See also Garratt v. Knowles*, 245 F.3d 941, 949 (7ᵗʰ Cir. 2001) (dismissing claims against corporate directors because of "the rule, clearly articulated in *Jass*, that 'ERISA permits suits to recover benefits only against a Plan as an entity'"); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (noting, in case against employer "that ERISA permits suits to recover benefits only against the plan as an entity," citing *Jass*).

This conclusion makes sense, since when an insurance company issues and administers a policy, it and "the Plan" are really intermingled, and any action against the "Plan" to compel payment of benefits is, in essence, an action against the insurance company that has issued that policy. As stated in *Neuma*, the case relied upon by Defendants, "[w]e have . . . allowed a suit for benefits to go forward with an employer named as the defendant when the employer was the plan administrator and the plan were otherwise closely intertwined." 259 F.3d at 872 n.4 (citing *Riordan and Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001)).[11] The same analysis applies here. *See Leonardo v. Health Care Service Corp.*, No. 09 C 1588 (N.D. Ill. Jan. 10, 2010) (Hibbler, J.) (attached hereto as Exhibit B), at 8 ("*Neuma* does not compel denial of the instant motion, but it does reinforce the point that the 7th Circuit generally uses the 'closely intertwined' exception as a means to allow suit in the face of confusion or uncertainty.")

Citing the 7th Circuit's analysis of *Jass* in *Mein v. Carus*, the court in *Madaffari v. Metrocall Cos. Group*, 2004 U.S. Dist. LEXIS 12739, at *4 (N.D. Ill. July 1, 2004), denied dismissal of an ERISA claim against the insurance company which "ma[de] all determinations

---

[11] The cases cited by Defendants which dismiss ERISA claims against insurers are easily distinguishable. In *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 603 (7th Cir. 2007), for example, the district court had dismissed the claim against Aetna because it was "not a proper party," but this was never raised on appeal. Further, in that case, the Plan, not Aetna, made all the benefit determinations concerning disability payments and also handled the appeals, so there was no basis for suggesting that Aetna would be a proper party in a benefits claim. Similarly, in *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009), there was no claim for benefits at all against the insurer, which served as the claims administrator in a self-funded plan. The only issue there was whether the insurer could be liable for failing to produce relevant documents under 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1132(c)(1)(B). The court held, however, that only the designated "plan administrator" was responsible under these sections for producing documents to beneficiaries, finding that "CIGNA's role as the claims administrator did not bring it within the reach of sections 1024(b)(4) and 1132(c)(1)." *Id.* at 793-94. Plaintiffs here do not seek relief under those provisions. *See also Pisek v. Kindred Healthcare, Inc*, 633 F. Supp. 2d 659, 668 (S.D. Ind. 2007) (finding that MetLife, as the "claims administrator," was not liable for penalties under Section 502(c), which may only be applied against "plan administrators"); *Hackner v. Long Term Disability Plan for Employees for Havi Group LP*, 2003 U.S. App. LEXIS 23605, at *11 (7th Cir. Nov. 17, 2003) (in disability action, found that Hartford was not liable under ERISA because it was "neither the Plan nor the Plan Administrator"); *Moffat v. Unicare Health Ins. Co.*, 352 F. Supp. 2d 873, 878 (N.D. Ill. 2005) (dismisses claim against insurance company where plaintiff "has failed to allege, or even argue, that Defendants qualify as 'plan administrators'")

pertaining to claims regarding termination of disability benefits . . . [and] was also responsible for the actual disbursement of benefits under the policy," stating:

> ReliaStar is the entity that governed benefits claim determinations. In the event of a successful claim, the policy calls on ReliaStar to provide benefits to the insured. . . . [B]ecause the intent of ERISA is that the "party legally responsible for paying benefits governed by ERISA is a party that can be sued," the Court is unable to say that ReliaStar is not a proper defendant in this action. . . . ReliaStar's motion to dismiss is therefore denied with respect to Count I.

*Id.*, at *14-15 (citation omitted).

Here, when Defendants sought recoupment through their retroactive Adverse Benefit Determinations, they failed to identify the proper "Plans" at issue, instead lumping together numerous patients and their Plans. Moreover, they acted entirely on their own, without providing any indication that they were operating at the Plans' request. Under these circumstances, the BCBS Entity Defendants clearly are the proper parties to this action. *See Leonardo*, Exh. B at 8 ("Leonardo does allege that HCSC played a crucial role in virtually every aspect of the Plan's terms, administration, and funding. In addition, the Court is presently unable to determine the Plan's identify on the basis of the record before it. Thus, the Court denies HCSC's motion to dismiss on the grounds that it is an improper defendant."); *Children's Hospital*, Exh. A at 12 (denying motion to dismiss ERISA benefit suit against claim administrator, noting that "control can subject entities other than a plan to a claim under § 1132(a)(1)(B)").[12]

## B.     ERISA Governs an Insurer's Claim for a Return of Benefits

Ignored by Defendants, the Supreme Court has held that ERISA governs efforts by ERISA fiduciaries, including insurers and claims administrators, to seek repayment of previously

---

[12]  In *Leonardo*, the court scheduled an "evidentiary hearing to resolve the issue of whether Defendant is the proper party under Count I and portions of Count II," given that there were open issues concerning the plans and the role played by HSCS. *Leonardo*, Exh. B at 18. The same issue are not as uncertain here, since it is clear from the allegations that the BCBS Entity Defendants made the  Adverse Benefit Determinations under dispute, not any unrelated "Plans."

paid benefits. *See Sereboff v. Mid Atlantic Med. Services*, 547 U.S. 356, 361 (2006) (seeking recoupment of benefits is "a proper use" of ERISA because it is based on an effort "to 'enforce'" plan terms).[13] *Sereboff* has been followed by numerous courts which have applied ERISA to repayment demands.[14] This is true not only where the recoupment effort is against the subscriber, but also against a provider. *See Trustmark Life Ins. Co. v. University of Chicago Hosps.*, 207 F.3d 876, 879 (7th Cir. 2000) (ERISA governs action against hospital "to recover payment" of benefit payments, after the court concluded in an earlier decision that the treatments "did not fall within the parameters of 'medically necessary' procedures as defined in the Plan policy") (citation omitted). Citing *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Associates*, 53 F.3d 172 (7th Cir. 1995), the 7th Circuit concluded in *Trustmark* that an action "to recover a mistaken overpayment made to a medical care provider for the medical treatment of one of its members" fell under ERISA, noting further "that the state law claim made by the trustees of the plan would be preempted by ERISA." 207

---

[13] As the entities that assume responsibility for administering their health care plans, including making coverage decisions, the BCBS Entity Defendants are clearly ERISA fiduciaries. *See Pharm. Care Mgmt. Ass'n. v. Rowe,* 429 F.3d 294, 300 ("Under ERISA, a fiduciary is one who exercises discretionary authority or control in the management and administration of an ERISA plan. 29 U.S.C. § 1002(21)(A).") (quoted in R&R, at 5). In *Sereboff,* for example, the case involved an action under ERISA brought by Mid Atlantic Medical Services, Inc., which "administered" an employer sponsored health insurance plan. 547 U.S. at 359. The Supreme Court held that "[t]here is no dispute that Mid Atlantic is a fiduciary under ERISA." *Id.* at 361. As a fiduciary, BCBSRI can therefore bring claims under Section 502(a)(3) "to enjoin" actions that violate the terms of its plans or "to obtain other equitable relief."

[14] *See, e.g., Kellner v. First Unum Life Ins. Co.*, 589 F. Supp. 2d 291, 312 (S.D.N.Y. 2008) ("The Supreme Court has allowed fiduciaries of ERISA plans to bring suit under this provision to recover benefits paid as a result of injuries from an accident with a third party, where the beneficiary also recovers damages from that third party. Similarly, where the "[ERISA] plan includes an applicable offset provision, its fiduciaries may also recover payments to beneficiaries that are later offset by a retroactive award of Social Security benefits ") (citing *Sereboff*); *Blanck v. Consol. Edison Ret. Plan*, 2006 U.S. Dist. LEXIS 2460 (S.D.N.Y. Jan. 23, 2006) ("it appears that a Plan fiduciary would have a cause of action under 29 U.S.C. § 1132 to recover the overpayments for the Plan by way of restitution," adding: "there is no dispute that Plaintiff wrongfully received additional payments from the Plan as a result of clerical errors; it would thus appear that a fiduciary would have a cause of action for restitution on the Plan's behalf").

F.3d at 880. As a result, there can be no question that the BCBS Entity Defendants' effort to recover past benefit payments requires application of ERISA.

Similarly, even if the Individual Plaintiffs could have pursued state law claims under their Provider Agreements, they have the right to choose to bring ERISA claims instead pursuant to their assignments of benefits. Relying on 7th Circuit authority, the 11th Circuit recently reached this conclusion, stating:

> [A] provider that has received an assignment of benefits and has a state law claim independent of the claim arising under the assignment holds two separate claims. In such a case, the provider may assert a claim for benefits under ERISA, the state law claim, or both. See *Franciscan Skemp* [*Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538 F.3d 594, 597 (7th Cir. 2008)] ("Franciscan Skemp *could* bring ERISA claims in Romine's shoes as a beneficiary for the denial of benefits under the plan; but it has not.") (emphasis in original).

*Conn. State Dental Assoc. v. Anthem Health Plans, Inc.*, 2009 U.S. App. LEXIS 28773, at *18-19 (11th Cir. Dec. 30, 2009). Thus, to the extent the Individual Plaintiffs could have brought state law claims under their Provider Agreements, they nevertheless have the right under both *Conn. State Dental Assoc.* and *Franciscan Skemp* to choose – as they did here – to pursue their rights under ERISA.[15]  Their ERISA claims therefore are valid.

Had the Individual Plaintiffs sued the BCBS Entity Defendants under state law, instead of ERISA, it is likely that Defendants would have removed the action to federal court based on ERISA preemption in any event. *See Maciosek v. Blue Cross & Blue Shield United*, 930 F.2d 536, 538 (7th Cir. 1991) (upholding ERISA preemption of claims that, *inter alia*, BCBS insurer had "violated Wisconsin common law which prohibits an insurer from recovering mistaken payments unless the payment was caused by a mistake of fact"). In its decision, the 7th Circuit carefully analyzed the law of preemption, holding that "[t]he state law causes of action alleged

---

[15]  As discussed below, in responding to Defendants' arguments concerning assignments, Plaintiffs have also properly pled assignments and ERISA standing.

by the [plaintiffs] obviously are preempted under the Supreme Court's construction of ERISA."

930 F.2d at 540. In doing so, it noted that "all of the claims are based on the improper denial of

benefits by an ERISA-regulated health care plan," *id.*, and then affirmed the district court. The

same conclusion supports the application of ERISA here.[16]

This conclusion is especially true given that the forced recoupments that the BCBS Entity

Defendants have been making against the Individual Plaintiffs constitute in and of themselves

Adverse Benefit Determinations under ERISA. As concluded in *Cherene v. First Am. Fin. Corp.*

*Long-Term Disability Plan*, 303 F. Supp. 2d 1030 (N.D. Cal. 2004), when benefit payments are

withheld for any reason, including to offset the alleged improper payments in the past, that

constitutes an ERISA Adverse Benefit Determination. *Id.* at 1036 n.1 ("Whether the reduction is

taken prior to plaintiff's monthly payment or as a claim for reimbursement, [a recoupment] is

either a reduction from her full benefits or a failure to provide for a benefit. Accordingly,

***Hartford's claim for reimbursement is an adverse benefit determination that triggers the***

***requirements of section 503 [of ERISA].***") (emphasis added). Thus, each and every time the

BCBS Entity Defendants forcibly recouped money from the Individual Plaintiffs by withholding

---

[16]   As noted in *Trustmark*, the 7th Circuit in *Neurobehavioral Assoc.* not only upheld federal jurisdiction for a claim by an insurer for recoupment of funds from a provider, but it also expressly found that state law claims seeking similar relief – such as the claim that the recoupments are merely efforts to enforce the Provider Agreement – would be preempted. After holding that "a federal court has jurisdiction over an action seeking restitution of wrongfully-paid ERISA benefits under section 502(a)(3)," 53 F.3d at 174, the court went on to state that this conclusion is "[r]einforc[ed] [by] our belief that [the insurer] could not pursue this action in state court because a state law would be preempted by ERISA." *Id. See also Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir. 1990) (ERISA governs recoupment actions against providers); *Provident Life & Accident Ins., Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990) (described in *Neurobehavioral Assoc.*, 53 F.3d at 175, as holding that "an insurer's right to recover mistaken payments to a beneficiary was in fact essential to ERISA's purposes, and that preemption was therefore appropriate"); *First Nat'l Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1549 (11th Cir. 1992) (holding that ERISA preempts state law claims against an employer alleging an improper payment of benefits); *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1057-58 (3d Cir. 1989) (same); *Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 794 F.2d 221 (6th Cir. 1986) (same).

benefits applicable to unrelated claims, that constituted an Adverse Benefit Determination under ERISA which entitled the Individual Plaintiffs to appropriate ERISA rights and remedies.

C.   **ERISA Governs Claims Concerning The "Right" To Receive Payments Issued Under A Health Care Plan, While The In-Network Agreement Governs Disputes Over The "Amount" Of Such Payments**

In determining whether ERISA governs disputes over claims involving payments to an In-Network Provider, the critical question is whether the claim involves the *amount* to be paid under the Provider Agreement, or the *right* to payment, as determined by the terms of the ERISA plans. *See, e.g., Blue Cross of California v. Anesthesia Care Associates Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999) (ERISA does not preempt claims over in-network fee schedules because "[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements"); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3d Cir. 2004) (ERISA not involved because "[c]overage and eligibility . . . are not in dispute").

Where, unlike in *Anesthesia Care* and *Pascack Valley*, the dispute is over the *right* to payment, instead of the *amount*, ERISA governs even for an In-Network Provider. *See Fresno Cmty. Hosp. and Med. Ctr. v. Souza*, 2007 U.S. Dist. LEXIS 51700 (E.D. Cal. July 3, 2007) (applying ERISA to uphold removal of suit filed by an in-network hospital for insurer's failure to pay bills). While the provider was suing pursuant to its contract in *Fresno*, the court nevertheless found ERISA preemption "where a claim requires interpretation of an ERISA plan or law." *Id.*, at *6. In doing so, the court noted that the provider contract – just like Defendants' Provider Agreements here – specifically referenced the health care plans, stating that "neither the parties nor the Court can escape the conclusion that the contract upon which UMC bases its rights requires interpretation of the underlying . . . Plan." *Id.*, at *9. *See also Zipperer v. Raytheon Co.*,

18

*Inc.*, 493 F.3d 50, 54 (1st Cir. 2007) ("We affirmed the dismissal of the complaint on preemption grounds," noting that an analysis of plaintiff's claims would 'ultimately depend on an analysis' of the ERISA plan at issue, to which the claims were thus 'inseparably connected.'") (citation omitted); *St. Luke's Episcopal Hosp. v. Acordia Nat'l*, 2006 U.S. Dist. LEXIS 37781, at *5, 37-38 (S.D. Tex. June 8, 2006) (state law claim by In-Network Provider for unpaid benefits preempted under ERISA, because "when the dispute is over the right to payment, and that right depends on the ERISA-regulated Plan terms, the fact of assignment converts the hospital's claims into claims to recover benefits under the terms of the ERISA Plan").[17]

As this line of authority makes clear, when the BCBS Entity Defendants made recoupment demands based on their claim that the Individual Providers did not have the *right* to receive payments for particular services for which benefits had previously been paid, as opposed to the *amount* of payment, they are doing so subject to the rules and regulations of ERISA.[18] The Provider Agreements therefore do not govern; ERISA does. *See* Memorandum of Law in Support of Defendants' Motion to Compel Arbitration or Mediation ("Def. Arb. Mem."), at 14

---

[17] *See also Quality Infusion Care Inc. v. Humana Health Plan of Texas, Inc.*, 2008 U.S. App. LEXIS 17416, at *21 (5th Cir. Aug. 13, 2008) ("In essence, QIC's [Any Willing Provider] claims are for benefits under the Plan and, thus, are completely preempted and subject to removal, regardless of any differences in their elements, *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 216 (2004), or how artful QIC is in its pleadings, *see McGowin v. ManPower Int'l, Inc*, 363 F.3d 556, 559 (5th Cir. 2004); *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1224-26 (9th Cir. 2005) (holding a claim based on an insurer's failure to provide "emergency" benefits under state law is completely preempted because "the factual basis of the complaint . . . was the denial of reimbursement of plan benefits"); *Hermann Hosp. v. MEBA Med. and Benefits Plan*, 959 F.2d 569, 578 (5th Cir. 1992) (Plaintiff's state law claims of fraud and negligent misrepresentation "are based upon the failure of MEBA to pay benefits to which Hermann was entitled . . . and have a nexus with the ERISA plan and its benefit system").

[18] *See In re Pharm. Indus. Average Wholesale Price Litig.*, 309 F. Supp. 2d 156, 175 (D. Mass. 2004) ("At this preliminary stage, in light of these pleadings, the Court concludes that it is likely that at least some of the claims are not capable of resolution without reference to an ERISA plan . . . [and] this Court will assert removal jurisdiction."); *Davis v. SmithKline Beecham Clinical Laboratories*, 993 F. Supp. 897, 899 (E.D. Pa. 1998) (finding ERISA preemption because "[t]he determination of the amounts of overpayments to [defendants] by ERISA plans and ERISA-covered class members like [plaintiff] will require the examination and interpretation of ERISA plans setting forth the criteria for examining such payments.").

("the Par Agreements control the **amount** of reimbursement the Individual Plaintiffs were entitled to receive") (emphasis added).

Not only is this clear from the health insurance policies themselves (*see* discussion of the BCBS Entity Defendants' Identification Cards, *supra*), but it is also specified in each Provider Agreement. For example, in the standard form Provider Agreement used by Defendant Wellpoint (operating as Anthem), it states that the provider will be entitled to receive benefit payments for providing "Covered Services," defined as "Medically Necessary Health Services, ***as described in the applicable Health Benefit Plan, for which a Covered Individual is eligible***." *Id.,* Exhs. 6 (Gearhart Provider Agreement); 8 (Barber Provider Agreement); and 9 (Thompson Provider Agreement), at 2 (§ 1.8) (emphasis added). The same is true for each Provider Agreement relating to the Individual Plaintiffs, such that the ERISA health care plans must be interpreted in order to determine whether the benefits in dispute were for Covered Services.[19] If they were,

---

[19]   *See, e.g.,* Def. Arb. Mem., Exhs. 1A and 1B (Paulsen and Renneke Provider Agreements with BCBSMN), at 5 ("Provider Reimbursement. . . . Blue Cross shall assure prompt payment directly to Provider for covered Health Services . . ."), at 9 ("Scope of Agreement" includes "services provided to Subscribers in health benefit plans underwritten or administered by Blue Cross"); Exh. 2 (Miggins Provider Agreement with Regence), at 2 ("this Agreement . . . is for services provided by the Clinic to subscribers and enrolled dependents covered under health care plans offered or administered by the Company," with "Covered Services" defined as "services or supplies for which benefits are provided under a Subscriber Agreement"); Exh. 4 (Young Provider Agreement with BCBSKS), at 2 ("'Maximum Allowable Payment' means the amounts established by Blue Cross and Blue Shield as the maximum payment allowances for services rendered by contracting providers to insureds which are covered benefits under the terms of the insured contracts."); Exh. 7 (Ford Provider Agreement with Anthem), at 2 (provider shall be paid for providing "Covered Services to Covered Persons"; "Covered Person means any individual entitled to receive Covered Services pursuant to the terms of the Coverage Agreement"; and "Coverage Agreement means any agreement, contract, program or certificate entered into, issued or agreed to by the Company, a plan sponsor, or a group where the Company furnishes administrative services and/or other services in support of such plan sponsor's or group's health care program"). *See also* Defendant BCBSRI's Memorandum of Law in Support of its Motion to Dismiss, or in the Alternative to Stay, Claims Made by Plaintiffs Jay Korsen and Ian Barlow ("BCBSRI Mem."), Exh. B to Exh. 5 (Korsen Provider Agreement with BCBSRI), at 1 (provider agrees to provide treatments which are "described as 'covered services' in accordance with the respective agreements from time to time in effect between the Corporation and its Subscribers (herein after referred to as "Covered Services"). The BCBSRI Administrative Policy, which is incorporated in to the Provider Agreement, further defines "Covered Health Services" as "[t]hose Medically Necessary health care services and benefits which are

there is no basis for a repayment demand. If not, then Defendants may pursue available remedies under ERISA. Either way, ERISA must be followed in making the recoupment demands; Defendants failed to do so.

### D.    Plaintiffs Have Alleged Facts Showing Violations of ERISA

Defendants assert that Plaintiffs fail to plead a valid ERISA claim because they "do not identify even a *single* ERISA plan, a *single* plan participant who did not receive benefits or a *single* plan provision that allegedly was violated by the Blue Defendants." Def. ERISA Mem. at 7. This argument, however, misses the point. Plaintiffs do not allege the violation of a specific ERISA plan precisely because Defendants have violated their obligations under ERISA by making recoupment demands without identifying the specific plans, including the plan terms on which they rely in asserting that they have overpaid benefits to Plaintiffs. Had the BCBS Entity Defendants properly complied with ERISA by identifying the plans under which they were making Adverse Benefit Determinations and allowing valid appeals, then the Individual Plaintiffs would have been given the opportunity to challenge the decision to recoup the funds under the terms of their patients' policies, just as the provider plaintiff was able to do in *Children's Hospital*, Exh. A. Because the BCBS Entity Defendants did not give the Individual Plaintiffs this chance, the claim here is that Defendants have violated the explicit procedural requirements under ERISA by making repayment demands and taking recoupments without complying with ERISA's statutory and regulatory requirements.[20]

---

covered in whole or in part under the terms of the applicable Blue Cross Subscriber Agreement(s), which is incorporated herein by reference." Korsen Aff. ¶ 3.

[20]  As Judge Hibbler recently held in *Leonardo*, in denying a motion to dismiss by Defendant HSCS on a similar point (albeit not involving a retroactive denial, as here), a claim should not be dismissed if there are questions as to whether the plan terms have been violated. Exh. B, at 9 ("Given that the Court is unable to determine the contents of any plan documents, the Court cannot determine whether they belie Leonardo's allegations, as HCSC suggests. Thus, the Court must deny HCSC's motion on this ground.").

Once the Court finds that Defendants' recoupment demands constitute actions under ERISA, then this motion to dismiss will be resolved. If ERISA applies, and Plaintiffs have alleged that Defendants failed to comply with ERISA in demanding repayment of benefits and taking recoupment, a valid ERISA claim has been pled.[21]

## II.   PLAINTIFFS SATISFY THE EXHAUSTION REQUIREMENT

In a truly ironic portion of their motion, Defendants argue that Plaintiffs have failed to exhaust the administrative remedies available under the applicable health care plans, as required under ERISA. Def. ERISA Mem. at 8, 18-19. Yet, a central component of Plaintiffs' claims is that Defendants have violated ERISA precisely because they have *failed to provide an opportunity to pursue an ERISA appeal before recouping previously paid benefits.* As cited above, Defendants offered *no* appeal rights at all to 12 of the Individual Plaintiffs, while the other six allege that the those appeals which were purportedly offered were mere shams that failed to satisfy ERISA requirements. Under these circumstances, there can be no dispute that Plaintiffs have satisfied the pleading requirements under ERISA.

The 7th Circuit has made clear that where ERISA benefits have been denied without providing proper means to undertake an appeal, not only is there a valid claim, but a proper remedy is to order reinstatement of benefits. In awarding such relief in *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688-89, 690-91 (7th Cir. 1992), where the defendant had denied previously awarded disability payments, the court noted the "minimum requirements" under ERISA, including "that the claimant be afforded an opportunity for 'full and fair review' by the

---

[21] While Defendants cite to *In re Managed Care Litig.*, No. 00-1334-MD, 2009 U.S. Dist. LEXIS 23212, at *3 (S.D. Fla. Mar. 20, 2009), as a case where provider claims were dismissed because the plaintiffs "failed to identify any of the ERISA plans under which the providers were asserting claims," Def. ERISA Mem. at 7, that case is inapposite. It did not involve a situation where the defendant insurer had taken back previously paid benefits itself without having complied with ERISA, so that the statute and its regulations were violated.

administrator" to allow claimants "to prepare adequately 'for any further administrative review, as well as appeal to the federal courts.'" (Quoting *Matuszak v. Torrington Co.*, 927 F.2d 320, 323 (7th Cir. 1991).). The 7th Circuit subsequently upheld the district court's order "reinstat[ing]" the benefits, finding "[s]uch relief [to be] authorized by the statute," given that "'the plan's claims procedure failed to comply with ERISA's requirements for a full and fair review.'" *Id.* at 697 (citation omitted). The court further pointed out that, while it was appropriate to reinstate benefits due to the ERISA violations, the defendant "remains free in the future to initiate further review of [the insured's] continuing eligibility for long-term disability benefits," noting simply that, "on the basis of the processes undertaken so far, it cannot be permitted to terminate benefits previously awarded." *Id.* at 697-98.[22]

Here, too, Plaintiffs satisfy the pleading requirement by alleging that "administrative remedies are not available," such that they were not given "meaningful access to a 'full and fair' final appeal" of Defendants' retroactive Adverse Benefit Determinations. Should Plaintiffs succeed, they will be entitled to have the recoupment of previously denied benefits reversed, and the benefits "reinstated" by being returned to the Individual Plaintiffs, due to Defendants violations of ERISA. But in the future, the BCBS Entity Defendants will remain free to seek appropriate relief for alleged overpayments, so long as they comply with ERISA requirements.[23]

---

[22] *See also Gallegos v. Mt. Sinai Medical Ctr.*, 210 F.3d 803, 807-08 (7th Cir. 2000) ("We have held that a plaintiff is excused from failing to pursue administrative remedies where 1) *administrative remedies are not available* or 2) pursuing those remedies would be futile.) (emphasis added); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 403 (7th Cir. 1996) (in denying motion to dismiss, held that "the averments in the amended complaint are sufficient to allege that Lumbermens denied Ms. Wilczynski meaningful access to a 'full and fair' final appeal of her claim for disability benefits"); *Nationwide Children's Hospital, Inc. v. D.W. Dickey & Son, Inc.*, 2010 U.S. Dist. LEXIS 3316, at *17 (S.D. Ohio Jan. 15, 2010) (defendants "cannot indefinitely insulate themselves from federal litigation by failing to meet their obligations so as to frustrate the [plaintiffs] having meaningful access to the claim determination process").

[23] With an appeal, and a subsequent right to pursue judicial review, Plaintiffs will be given an opportunity to demonstrate that Defendants' findings with regard to the alleged overpayments were

Moreover, even were ERISA exhaustion be found to apply under these circumstances, Plaintiffs have properly alleged violation of ERISA and its underlying regulations such that a finding of "deemed exhaustion" is appropriate. *See* FAC ¶ 128 (citing 29 C.F.R. § 2560.503-1(l)); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008) ("Under 29 C.F.R. § 2560.503-1 (*l*), where a plan fails to establish or follow 'reasonable' claims procedures as required by ERISA, 'a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.'"). The rationale for finding "deemed exhaustion" in *Chavis v. Life Ins. Co. of N. Am.*, 2009 U.S. Dist. LEXIS 114418, at *12-13 (D.S.C. Dec. 8, 2009), applies equally well here:

> The letter did not provide plaintiff with any specific reasons for denying her claim for LTD benefits, other than to say that she was "ineligible." The letter did not provide any policy provision references, what steps might be necessary for plaintiff to perfect her claim, a description of the plan's review procedures, or any guidelines or rules on which defendant's decision was based. Defendant used the word "determined" in the body of the notification letter, arguably giving the impression that defendant had made a LTD benefit determination, and defendant did not explain why plaintiff was ineligible for LTD benefits. Such vagueness does not satisfy the substantial compliance required under section 503. As a result of defendant's failure to follow the requisite claim procedure for notifying a claimant of a benefit determination under 29 C.F.R. § 2560.503-1(g), plaintiff is deemed to have exhausted all administrative remedies under the plan and may pursue her claim under ERISA section 502(a).

---

invalid. In *Wheeler v. Aetna Life Ins. Co.*, 2003 U.S. Dist. LEXIS 12742, at *33 (N.D. Ill. July 21, 2003), for example, the court held that Aetna's denial of coverage for speech therapy was arbitrary and capricious under ERISA because it "failed to acknowledge the actual language of the plan provisions." Notably, while Aetna stated that it denied coverage for certain services because "[t]he effectiveness of this therapy is unproven," the court reversed the finding because "it is clear that such a conclusion was arbitrary and does not comport with the plain language of the plan," given that "[t]here is no exclusion under the plan for therapies whose 'effectiveness . . . is unproven.'" *Id.*, at *34. Defendants could make a similar argument to challenge BCBSRI's claim that the treatments they provided were not "medically necessary" because of the "lack of published peer-reviewed literature to support [their] efficacy." BCBSRI has not demonstrated that this is a permitted exclusion for coverage under its health care plans, such that a court could well find its holding to be arbitrary and capricious, as in *Wheeler*.

*See also Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 208 (D.N.J. 2004) (defendant's "appeals procedures, and the information it provides to beneficiaries, fall short of the requirements in 29 U.S.C. § 1133, resulting in deemed exhaustion").

## III.    COUNT III IS A VALID ALTERNATIVE CLAIM FOR RELIEF

Defendants seek to dismiss Count III for breach of fiduciary duty under ERISA §502(a)(3), claiming it is duplicative of the benefit claim brought under Section 502(a)(1)(B). Yet, Defendants assert that they are not the proper defendants in a benefit claim since they are not "the Plan." While Plaintiffs disagree with this assessment, if that is true, then the available remedy being sought here does not actually arise under Section 502(a)(1)(B). To the extent "the Plans" are deemed to be distinct entities from the BCBS Entity Defendants for purposes of benefit claims, then Plaintiffs would not be able to get the relief they seek for a claim for benefits since "the Plans" do not have the benefit funds that are being sought – they were taken and are in the possession of the BCBS Entity Defendants. Under these circumstances, the BCBS Entity Defendants are subject to challenge for breach of fiduciary duty under ERISA § 502(a)(3) by violating the express terms of the statue and its regulations, and improperly recouping benefit payments from the Individual Plaintiffs.

In addition, not only are Plaintiffs seeking a return of the benefits, but they are also seeking plan-wide relief by imposing requirements on the BCBS Entity Defendants for how they handle recoupment demands. That relief could properly be provided under Section 502(a)(3). *See Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 491-92 (6th Cir. 2009) ("[T]he plaintiff in *Hill* [*v. Blue Cross & Blue Shield of Mich.*, 409 F./3d 710, 718 (6th Cir. 2005)] also brought a claim for injunctive relief under § 502(a)(3) to require the defendant 'to alter the manner in which it administers all of the . . . claims.' *Id*. The Court noted that this § 502(a)(3) claim was for

"plan-wide injunctive relief, not [for] individual-benefit payments." *Id*. Although the plaintiff had the ability to seek damages for improperly denied benefits, the Court allowed the plaintiff to proceed on both claims because '[o]nly injunctive relief of the type available under § [502(a)(3)] will provide the complete relief sought.' *Id*."). *See also Leonardo*, Exh. B at 14 ("Given that HCSC has failed to provide the Court with any precedent indicating that plan reformation, restitution, and disgorgement are duplicative of the relief available under subsection (a)(1)(B), the Court denies its motion to dismiss on these grounds.").

Defendants further argue that Count II should be dismissed as a "procedural violation," since it "does not entitle a . . . substantive remedy." Def. ERISA Mem. at 12. Instead, Defendants argue that "'the appropriate remedy" when "'a plan administrator fails[s] to afford adequate procedures in its initial denial of benefits," is "'to provide the claimant with the procedures that it sought in the first place.'" *Id.* (quoting *St. Joseph's Hosp. of Marshfield, Inc. v. Carl Klemm, Inc.*, 459 F. Supp. 2d 824, 834 (W.D. Wis. 2006), and *Hackett v. Xerox Corp. Long Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003)). That is true. Here, Plaintiffs are seeking to compel the BCBS Entity Defendants to provide them with "the procedures that [they] sought in the first place" by requiring compliance with ERISA before making repayment demands and recouping previously paid benefits. The only additional caveat is that the BCBS Entity Defendants should not be permitted to retain the benefits they improperly took in violation of ERISA.

## IV.   THE CLAIM FOR INJUNCTIVE RELIEF UNDER COUNT VII CAN BE PRESERVED PENDING A DETERMINATION OF WHETHER A VALID CLAIM PROVIDING SUCH RELIEF REMAINS

Defendants seek to dismiss Count VII, the claim for injunctive relief, because it is merely a claim for relief, not an independent cause of action. Def. ERISA Mem. at 13. As this Court held in *Chicago United Indus., Ltd. v. Chicago*, 2007 U.S. LEXIS 88399, at *30 (N.D. Ill. Dec.

3, 2007) (Kennelly, J.), which Defendants rely upon, "[t]he Court need not address this claim separately, as it remains viable only to the extent some underlying claim on which injunctive relief maybe appropriate remains in the case." As a result, the Court need not dismiss the claim now, but wait to see if there is an underlying basis for the relief as the case proceeds.

## V.    PLAINTIFFS HAVE PROPERLY PLED ERISA STANDING

To have standing to pursue ERISA benefits claim, the Individual Plaintiffs generally have to have assignments from their patients.[24] In this case, however, the Individual Plaintiffs already have received the benefit payments from the BCBS Entity Defendants, and it is the Individual Plaintiffs – not their patients – who had those payments recouped. Thus, there is no basis for Defendants to argue now that the Individual Plaintiffs do not have standing to pursue this claim for relief. Nevertheless, even if assignments are deemed necessary, Plaintiffs have properly pled such assignments, as well as the BCBS Entity Defendants' pattern and practice of accepting the assignments through their repeated payments directly to the Individual Plaintiffs. *See* FAC ¶¶ 7, 11, 52, 421, 422, 85-86, 104, 126, 163-64, 174, 203, 243, 257, 274, 285, 293, 301, 311, 320, 332, 354, 378, 393, 395, 411. As recently held by the Eleventh Circuit, the standard for showing a valid assignment for purposes of ERISA standing is very low:

> [A]s the 7th Circuit observed in *Kennedy v. Connecticut General Life Insurance Co.,* 924 F.2d 698 (7th Cir. 1991), . . . all one needs for standing under ERISA is a colorable claim for benefits, and "[t]he possibility of direct payment is enough to

---

[24]  Courts have universally recognized that providers who have received assignments from their patients to file benefit claims and receive payments directly from insurers have a legal right to file an action under ERISA. *See Lutheran Gen. Hosp. v. Printing Indus. of Employee Benefit Trust*, 1998 U.S. Dist. LEXIS 15885, at *8-9 (N.D. Ill. Sept. 22, 1998) ("In *Kennedy* [*v. Connecticut General Life Ins. Co.,* 924 F.2d 698 (7th Cir. 1991)] , the 7th Circuit held that a medical services provider who obtained an assignment of benefits from a plan beneficiary in his care could sue a group health insurer for nonpayment of a claim, provided that the assignee had a mere "colorable claim" to the benefits. 924 F.2d at 700."); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.,* 156 F.3d 223, at *17 (1st Cir. 1998) ("City of Hope's standing depends on a 'colorable claim' that it is an assignee of a beneficiary. . . . As the assignee of an ERISA beneficiary, City of Hope satisfies the standing requirements of section 1132 and has a right to have the court decide the merits of its claim against [the insurer defendant].").

> establish subject-matter jurisdiction." *Id*. at 700-01. [The provider plaintiffs']
> rights to direct payment of benefits are thus sufficient to confer standing.

*Conn. State Dental Assoc.*, 2009 U.S. App. LEXIS 28773, at *36. Moreover, the Court specifically found that there was no need to tie a particular assignment to a specific patient or ERISA plan, so long as there is evidence that assignments are generally given as reflected on claim form: "[A]lthough Anthem did not link any particular assignment to a particular ERISA plan, [its] affidavit sufficiently demonstrates that the submitted assignments in the claim forms are representative of assignments [the provider plaintiffs] received for services they rendered, which would necessarily include patients covered by ERISA plans administered by Anthem." *Id*. Here, the Individual Plaintiffs easily satisfy this requirement by pleading their practice of obtaining assignments from their patients.

To defeat these proper allegations, Defendants rely on a single anti-assignment clause provision that is apparently used by Regence with respect to "the specific Regence claim at issue and the governing ERISA plan under which the claim was submitted" for Plaintiff Miggins. Def. ERISA Mem. at 15.[25]  Even if that single plan has an enforceable anti-assignment clause, however, that does not apply to any other claims or Plaintiffs. Moreover, the plan in question can be interpreted to allow assignments to providers.

There is a provision in the Regence Plan entitled "Benefits Not Transferable," which states that "[o]nly you are entitled to benefits under this plan," and [t]hese benefits are not assignable or transferable to anyone else and you . . . may not delegate, in full or in part, benefits

---

[25]  The only example of an anti-assignment clause given by Defendants is a purported clause used on some occasions by BCBS of Massachusetts. Def. ERISA Mem. at 14. However, Defendants fail to show that these provisions are applicable to any plans at issue in this case where the BCBS Entity Defendants have recouped previously paid benefits. Defendants try to blame Plaintiffs for failing to identify the specific plans, but that is the fault of the BCBS Entity Defendants, as they made their retroactive Adverse Benefit Determinations without disclosing to Plaintiffs the plans under which those benefits were issued, in violation of ERISA.

to any person, corporation, or entity." Regence Plan, at 49. Yet, while this purports to preclude assignments, an earlier provision in the Regence Plan, entitled "Preferred Plan and Participating Providers," indicates that this does not apply, at the least, to In-Network Providers, since they are authorized to receive payments directly from Regence:

> Be sure to present your Preferred Plan identification card when receiving treatment. Filing of claims for services of Preferred Plan or participating providers, including hospitals, is not necessary. If you receive a bill from your provider or hospital, please verify with the provider or hospital that the Company has been billed. . . .

*Id.* at 46. The statement that "[o]nly you are entitled to benefits" is clearly intended to prohibit transfer of the right to the benefit of <u>services</u> by the member to another person. The member's right to assign payment to the provider is unaffected.[26]

This is also consistent with what happened in this case. Dr. Miggins billed and received payments directly from Regence, and when Regence made a retroactive Adverse Benefit Determination, it went directly to Dr. Miggins for reimbursement, not the patient. This is a consistent pattern alleged concerning all of the BCBS Entity Defendants, whereby they consistently recognize assignments and pay Plaintiffs directly. Plaintiffs therefore can argue that Defendants have waived reliance on any anti-assignment clause and are therefore estopped from disavowing Plaintiffs' standing to pursue their claims. *See Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2009 U.S. Dist. LEXIS 90600, at *14 (D.N.J. Sept. 30, 2009) (complaint "describes regular interaction between Horizon and GRS prior to and after claim forms are submitted, without mention of Horizon's invocation of the anti-assignment clause. . .; [s]uch actions impede Horizon's ability to rely on the anti-assignment provision to

---

[26] Further, certain claims submission instructions to providers that appear on Regence Washington's own website make it clear that assignments are assumed. "*Note:* Hospitals, other facilities and medical groups submitting professional claims . . . should continue submitting their Regence identifier in addition to their NPI to facilitate <u>proper payment assignment</u>." http://www.wa.regence. com/provider/claims-and-billing/national-provider-identifier/faq/.

challenge GRS's standing."); *Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs., Inc.*, 2008 U.S. Dist. LEXIS 13370, at *8-9 (D.N.J. Feb. 21, 2008) (defendant could not rely on anti-assignment clause where its course of dealings with plaintiff included "patient coverage discussions under health care policies, direct submission of claim forms, direct reimbursement of medical costs, and engagement in appeal processes").

## VI.  PLAINTIFFS HAVE PROPERLY PLED ERISA VIOLATIONS AGAINST ALL BCBS ENTITY DEFENDANTS

Defendants seek dismissal of the ERISA claims which were brought against 13 of the BCBS Entity Defendants because Plaintiffs purportedly do not make substantive or actionable allegations against them. Def. ERISA Mem. at 16-17. The problem, however, is that Defendants do not understand Plaintiffs' claim. As explained above, 11 of the BCBS Entity Defendants made direct repayment demands and/or recouped funds in violation of ERISA. While the other 13 did not, Plaintiffs nevertheless also have valid ERISA claims against them because, through the BlueCard Program, retroactive Adverse Benefit Determinations were made by other BCBS Entity Defendants on behalf of or as agents for those 13. Thus, for example, BCBS of Florida demanded repayment and recouped funds from Dr. Dwyer with respect to a health insurance plan issued by Defendant BCBS of Michigan. FAC ¶ 355, 376. As a result, the ERISA claim is not limited to BCBS of Florida, which took the direct action, but also against BCBS of Michigan, for which BCBS of Florida was acting as agent. The same is true for each of the 13 BCBS Entity Defendants for which Plaintiffs do not allege direct recoupments.

## CONCLUSION

For the reasons detailed herein, Plaintiffs have alleged valid ERISA claims against the BCBS Entity Defendants. Because Plaintiffs have properly pled the BCBS Entity Defendants'

failure to comply with ERISA in making repayment demands and enforcing recoupments, the

ERISA claims should be upheld.

Respectfully submitted,


s/ D. Brian Hufford
D. Brian Hufford
Robert J. Axelrod
Susan J. Weiswasser
POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
100 Park Avenue
New York, New York 10017
212.661.1100
212.661.1373 (fax)

Patrick V. Dahlstrom
POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
312.377.1181
312.377.1184 (fax)

Vincent N. Buttaci
John W. Leardi
BUTTACI & LEARDI, LLC
212 Carnegie Center, Suite 206
Princeton, New Jersey 08540
609.919.6311
609.524.2575 (fax)

*Co-Lead Counsel for Plaintiffs
  and the Putative Classes*

Joseph P. Guglielmo
SCOTT + SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
212-223-6444

Christopher M. Burke
SCOTT + SCOTT LLP
600 B Street, Suite 1500
San Diego, CA 92101
619.233.4565

Kim Driggers
BROOKS, LeBOEUF, BENNETT,
  FOSTER & GWARTNEY, P.A.
909 East Park Avenue
Tallahassee, FL 32301
850.222.2000

Alan R. Tate
Christy B. Durant
TATE & ELIAS
321 South Main Street
Providence, RI 02903
401.421.7400

Patrick J. Sheehan
WHATLEY DRAKE & KALLAS, LLC
60 State Street, 7th Floor
Boston, MA 02109
617.573.5118

Andrew S. Friedman
BONNETT, FAIRBOURN
  FRIEDMAN & BALINT, P.C.
2901 N. Central Avenue, Suite #1000
Phoenix, AZ 85012
602.274.1100

James E. Cecchi
CARELLA BYRNE BAIN GILFILLAN
  CECCHI STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, NJ 07068
973.994.1700

32

Jonathan W. Cuneo
David W. Stanley
CUNEO GILBERT & LADUCA, LLP
507 C Street NE
Washington, D.C. 20002
202.789.3960

Diane M. Frantell
LAW OFFICES OF DIANE M. FRANTELL
313 Hampton Court, Suite 200
Lake Villa, IL 60046
847.265.0707

Michael C. Dodge
GLAST, PHILLIPS & MURRAY, P.C.
2200 One Galleria Tower
13355 Noel Road, L.B. 48
Dallas, Texas 75240-1518
972.419.8300

Bruce D. Greenberg
LITE DEPALMA GREENBERG LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102
973.623.3000

Todd Crabtree
CRABTREE LAW FIRM, P.A.
610 North Main Street
Suite 300
Stillwater, MN 55082
651.351.1400

*Counsel for Plaintiffs and the Putative Classes*