## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PENNSYLVANIA CHIROPRACTIC ASSOCIATION, )
NEW YORK CHIROPRACTIC COUNCIL, )
ASSOCIATION OF NEW JERSEY )
CHIROPRACTORS, FLORIDA CHIROPRACTIC )
ASSOCIATION and CALIFORNIA CHIROPRACTIC )
ASSOCIATION, on their own behalf and in a )
representational capacity on behalf of their )
members, and GREGORY T. KUHLMAN, D.C., JAY )
KORSEN, D.C., IAN BARLOW, KENDALL )
GEARHART, D.C., JEFFREY P. LERI, D.C., )
MICHELLE M. ASKAR, D.C., MARK BARNARD, )
D.C., BARRY A. WAHNER, D.C., ANTHONY FAVA, )
D.C., DAVID R. BARBER, D.C., RYAN S. FORD, )
D.C., LARRY MIGGINS, D.C., CASEY PAULSEN, )
D.C., DEAN RENNEKE, D.C., ANDREW RENO, )
D.C., PERI L. DWYER, D.C., RONALD L. YOUNG, )
D.C., and ERIC THOMPSON, D.C., on their own )
behalf and on behalf of all others similarly )
situated, )
　 )
                 Plaintiffs, )     Case No. 09 C 5619
　 )
     vs. )
　 )
BLUE CROSS BLUE SHIELD ASSOCIATION, )
BLUE CROSS AND BLUE SHIELD OF RHODE )
ISLAND, BLUE CROSS AND BLUE SHIELD OF )
ALABAMA, ARKANSAS BLUE CROSS AND BLUE )
SHIELD, BLUE SHIELD OF CALIFORNIA, BLUE )
CROSS AND BLUE SHIELD OF FLORIDA, BLUE )
CROSS AND BLUE SHIELD OF GEORGIA, )
HEALTH CARE SERVICES CORPORATION, )
INDEPENDENCE BLUE CROSS, BLUE CROSS )
AND BLUE SHIELD OF KANSAS, CAREFIRST, )
INC., BLUE CROSS AND BLUE SHIELD OF )
MASSACHUSETTS, BLUE CROSS AND BLUE )
SHIELD OF MICHIGAN, BLUE CROSS AND BLUE )
SHIELD OF MINNESOTA, BLUE CROSS AND )
BLUE SHIELD OF KANSAS CITY, HORIZON BLUE )
CROSS AND BLUE SHIELD OF NEW JERSEY, )
EXCELLUS BLUE CROSS AND BLUE SHIELD, )

**BLUE CROSS AND BLUE SHIELD OF NORTH** )
**CAROLINA, HIGHMARK, INC., BLUE CROSS** )
**AND BLUE SHIELD OF SOUTH CAROLINA,** )
**BLUE CROSS AND BLUE SHIELD OF** )
**TENNESSEE, PREMERA BLUE CROSS, THE** )
**REGENCE GROUP, WELLMARK, INC., and** )
**WELLPOINT, INC.,** )
                                      )
            **Defendants.** )

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are chiropractic physicians who have provided services

to members of health care plans insured or administered by the defendants, and

professional associations whose members are chiropractic physicians. The defendants

are Blue Cross and Blue Shield of America (BCBSA) and individual Blue Cross and

Blue Shield entities (BCBS entities). BCBSA is a national umbrella organization that

facilitates the activities of individual BCBS entities. Individual BCBS entities insure and

administer health care plans to Blue Cross and Blue Shield customers (BCBS insureds)

in various regions.

Plaintiffs' allegations all concern actions they allege the defendants took to

improperly take money belonging to plaintiffs. They allege that defendants would

initially reimburse plaintiffs for services they provided to BCBS insureds and then

sometime afterward would make a false or fraudulent determination that the payments

had been in error and would demand repayment from plaintiffs. If the plaintiffs refused

to return the payment as demanded, defendants would force recoupment by

withholding payment on other, unrelated claims for services plaintiffs provided to other

BCBS insureds.  Plaintiffs contend defendants' actions violated the Racketeer Influenced and Corrupt Organizations Act (RICO), the Employee Retirement Income Security Act (ERISA), and Florida state law (with respect to plaintiffs and defendants located in Florida).  On behalf of themselves, their members, and a putative class of similarly-situated health care providers, plaintiffs seek to recover the money that they allege defendants improperly recouped from them and to enjoin defendants from engaging in similar behavior in the future.

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on several grounds.  They argue that plaintiffs have failed to plead facts that, if true, would give rise to a viable RICO or ERISA claim.  They further contend that several plaintiffs lack standing to sue and that the factual allegations regarding several individual BCBS entities are too scant to allow claims to proceed against those entities. They argue that some plaintiffs' claims are precluded under the doctrine of accord and satisfaction because those plaintiffs have reached monetary settlements with the BCBS entities that made repayment demands against them.  Finally, they argue that one claim (count 6) must be dismissed because the Florida statute at issue in that claim does not provide for a private right of action.[1]

For the reasons below, the Court grants defendants' motion with regard to the RICO claims, denies the motion with regard to the ERISA claims, denies the motion in part and grants it in part with regard to the standing argument, denies the motion with

---

[1] Defendants have also moved to dismiss or stay and to compel arbitration of the claims of several plaintiffs whose contracts with BCBS entities included arbitration clauses.  The Court considers that motion in a separate decision.

regard to arguments concerning particular plaintiffs or defendants involving factual insufficiency or accord and satisfaction, and defers ruling on the motion with regard to the Florida law claim and the Rhode Island plaintiffs.

**Facts**

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, and Agr. Implement Workers of Am.*, 538 F.3d 583, 587 (7th Cir. 2008). The Court takes the following facts from the allegations in plaintiffs' amended complaint.

**A.     Background**

BCBSA is a federation of BCBS entities that licenses the use of the BCBS name. The remaining defendants are regional BCBS entities, health care companies that have licenses from BCBSA to use the BCBS name. BCBS entities work together, with the oversight and assistance of BCBSA, to administer health care plans to people insured by BCBS entities.

A number of the plaintiffs, Drs. Kuhlman, Korsen, Gearhart, Leri, Askar, Barnard, Wahner, Fava, Barber, Ford, Miggins, Paulsen, Renneke, Reno, Dwyer, Young, and Thompson, are licensed chiropractors. Plaintiff Barlow is a licensed occupational therapist. For purposes of this opinion, the Court refers to these plainitffs collectively as the "individual plaintiffs".

During the period when the acts giving rise to plaintiffs' claims took place, each of the individual plaintiffs had a signed contract (a "provider agreement") with at least

one BCBS entity in the region where the plaintiff practiced.  For purposes of this opinion, the Court refers to the BCBS entity with which a plaintiff signed a provider agreement as that plaintiff's "local BCBS entity."  Pursuant to these contracts, plaintiffs agreed to provide covered services to BCBS insureds at agreed-upon discounted rates, in exchange for obtaining access to BCBS insureds of all BCBS entities.  Under the terms of the provider agreements, a plaintiff could provide medical services to any BCBS insured and then submit a reimbursement form to the insured's local BCBS entity, which would administer payment to that plaintiff for services rendered to the BCBS insured.

The provider agreements limit reimbursement to "covered services," as defined in the agreements.  If an individual plaintiff provided services to a BCBS insured that did not fall under the "covered services" definition, the plaintiff would not be reimbursed for those services.  Typically, plaintiffs have patients sign agreements in advance of treatment stating that it is the responsibility of the patient to pay for any services that are not reimbursed by the insurer.

Several plaintiffs, the Pennsylvania Chiropractic Association, New York Chiropractic Council, Association of New Jersey Chiropractors, Florida Chiropractic Association, and California Chiropractic Association, are professional associations whose members consist of chiropractic physicians.  The Court refers to these plaintiffs collectively as the "association plaintiffs."  Members of these associations often have provider agreements with BCBS entities with terms similar or identical to those described above.

Though an individual plaintiff's contract is with his local BCBS entity, a BCBS

insured may obtain health care services from any doctor in the nationwide network of BCBS entities. An insured, therefore, may be treated by a physician whose provider agreement is with a BCBS entity other than the one that insures the BCBS insured. If a patient's insurance is provided through a BCBS entity outside the state where medical services are performed (for example, if a patient is insured by her employer, whose headquarters are in state A, but she receives treatment from a provider in state B), the BCBS entity that operates in the state where she is treated (state B) is referred to as the "host plan," while the BCBS entity that actually insures or administers her insurance plan (state A) is referred to as the "home plan".

When a doctor provides medical services to a patient who is insured by an out-of-state BCBS entity, he submits a claim for reimbursement to his local BCBS entity (the host plan). The host plan processes the claim and determines the amount of reimbursement due to the doctor. The host plan then consults with the BCBS entity that administers the patient's insurance (the home plan). The home plan determines whether the services that were provided to the patient are "covered services" under her health insurance plan. If the services are covered services, the home plan authorizes the host plan to pay benefits to the doctor. The ultimate financial responsibility for paying the benefits rests with the home plan. Benefits are paid either from the home plan's own assets (in the case of a "fully insured" plan) or from the assets of the patient's employer (in the case of a "self-funded" plan). The process through which BCBS entities collaborate to ensure nationwide coverage for BCBS Insureds is known as the BlueCard program. The BlueCard program is implemented and overseen by BCBSA.

During the relevant period, the individual plaintiffs submitted claims for reimbursement to their local BCBS entities for services provided to both local and out-of-state BCBS insureds. Plaintiffs assert that the "vast majority" of the BCBS insureds on whose behalf plaintiffs submitted claims received their insurance from BCBS entities as part of private employee welfare benefit plans that are subject to ERISA.

**B.     Plaintiffs' allegations**

Plaintiffs' claims stem from what they allege was a practice of defendants to improperly recoup money that had previously been paid to plaintiffs for medical services they had provided to BCBS insureds.  Plaintiffs allege that defendants would pay for services and then sometime later would make a false or fraudulent determination that individual plaintiffs had been overpaid for those services.  Defendants would demand that individual plaintiffs repay the supposedly overpaid amounts immediately but would not provide information about which claims, services, or patients were allegedly the subject of overpayment.

Plaintiffs allege that when defendants made these repayment demands, they often offered no appeal process at all.  When an appeal process was available, plaintiffs allege, defendants refused to provide specific details about which patients, claims, and plans were affected.  This, plaintiffs allege, made it difficult or impossible for them to challenge the reimbursement demands effectively.  Plaintiffs further allege that defendants threatened to, and in some cases actually did, force individual plaintiffs to repay the amounts they allegedly owed.  Defendants did this by withholding payments to which plaintiffs were otherwise entitled for unrelated claims they had submitted on behalf of other BCBS insureds.

7

Plaintiffs sue on behalf of themselves and, in the case of association plaintiffs, on behalf of their members. They also sue on behalf of a putative class of similarly-situated individual plaintiffs.

1.     RICO allegations (counts 3, 4 and 5)

Plaintiffs contend that the repayment demands and forced recoupments are part of a nationwide fraudulent scheme by BCBSA and numerous BCBS entities to improperly obtain funds from health care providers, including the individual plaintiffs and members of the association plaintiffs' organizations. BCBSA has a national anti-fraud department, and individual BCBS entities have their own anti-fraud departments. Plaintiffs allege that BCBSA used its national anti-fraud department to organize the local BCBS entities' anti-fraud departments and that they all worked in concert. This, plaintiffs contend, constituted an association-in-fact "enterprise" under RICO.

Plaintiffs allege that working together, the anti-fraud departments identified targets and then coerced payments from providers by making vague allegations of overpayment without a legitimate basis, failing to provide an appeal process, and then forcibly recouping the money by withholding it on other, unrelated claims. They contend that plaintiffs participated in the conduct of the enterprise through a pattern of racketeering activity, including using the mail to deliver false recoupment demands and benefit denials and stealing money from employee benefit plans in an effort to enhance their profits. Plaintiffs allege that these acts violated RICO, 18 U.S.C. § 1962(c).

2.     ERISA allegations (counts 1, 2, and 7)

Plaintiffs allege that the repayment requests and forced recoupments also violated the terms of ERISA, which governs claims relating to any BCBS insured whose

insurance is provided through a private employee benefit plan. Defendants argue that all the repayment demands were made pursuant to the provider agreements between individual plaintiffs and their local BCBS entities and therefore fall outside ERISA's purview.

Plaintiffs allege that defendants told the individual plaintiffs that the repayment demands were being made for a variety of reasons. These included: the individual plaintiff used the wrong code when billing for the service provided; the patient was no longer covered by the insurance plan when the service was performed; the patient's claims were covered by another insurer; or the individual plaintiff had mischaracterized the service provided as "mechanical traction" when it was not, in an effort to bring it under the umbrella of "covered services." Plaintiffs argue that despite what defendants say, the repayment demands and subsequent recoupment efforts actually amount to "adverse benefit determinations" – that is, *post hoc* determinations that the services provided were not covered by the terms of the patient's insurance plan. Under ERISA, patients (and, by assignment, their physicians) have certain rights when an insurer makes an adverse benefit determination. These rights include adequate notice and opportunity for a full and fair review of an adverse benefits determination. Plaintiffs allege defendants did not comply with these procedures and that this practice of making *post hoc* adverse benefit determinations without an adequate appeals process violates ERISA, 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. §1132(a)(3).

3.     Florida state law claim (count 6)

Plaintiffs Florida Chiropractic Association and Dwyer (the "Florida plaintiffs") and defendant Blue Cross Blue Shield of Florida (BCBSF) operate in Florida. BCBSF

policies impose limits on the number of spinal manipulations that can be performed on a patient in a calendar year. The Florida plaintiffs contend that these limits violate a Florida state statute that prohibits discrimination against medical services provided by chiropractors, Section 627.419 of the Florida Code.

4.    Relief sought

Plaintiffs seek recovery of money they allege was improperly recouped and declaratory and injunctive relief to prevent defendants from engaging in these disputed practices going forward.

5.    Motion to dismiss

Defendants have moved to dismiss plaintiffs' RICO and ERISA claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. They have moved to dismiss the Florida state law claim because, they contend, the statute does not provide for a private right of action. They have also moved to dismiss all claims against certain defendants, alleging that the factual allegations in the complaint are too sparse to support a claim against these defendants. They have also moved to dismiss the claims of several individual plaintiffs on various procedural grounds. For the reasons stated below, the Court denies the motion in part and grants it in part.

**Discussion**

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, and Agr. Implement Workers of Am.*, 538 F.3d 583, 587 (7th Cir. 2008). Though Federal Rule of Civil

10

Procedure 8(a)(2) does not require a complaint to include "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

The Seventh Circuit recently noted that "the height of the pleading requirement is relative to circumstances." *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009). In complex cases like the RICO and ERISA claims at issue here, "a fuller set of factual allegations . . . may be necessary to show that the plaintiff's claim is not 'largely groundless.'" *Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008). When, as in this case, discovery would be time-consuming and expensive, "the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Id.* at 803-04. To be plausible, and thus survive a motion to dismiss, a complaint must include "enough fact to raise a reasonable expectation that discovery will reveal evidence" of defendants' liability. *Twombly*, 540 U.S. at 556.

## A.    RICO claims (counts 3, 4, and 5)

Plaintiffs allege that BCBSA and the BCBS entities participated in an enterprise (which they call the "recoupment enterprise") for the purpose of "creat[ing] a mechanism by which Defendants could enhance their profits by obtaining funds from providers . . . in a fashion designed to discourage opposition and avoid the obligations and duties Defendants otherwise were required to comply with." Compl. ¶ 527. They allege that

the defendants worked together through their respective anti-fraud departments and refund departments "to design and implement a fraudulent scheme to obtain millions of dollars from Plaintiffs and members of the Classes through improper recoupment demands and forced recoupment payments." *Id.* ¶ 433.

In count 3, plaintiffs allege that defendants engaged in mail and wire fraud in furtherance of the recoupment scheme, in violation of 18 U.S.C. § 1962(c). In count 4, they allege that defendants stole or embezzled from employee benefit plans in furtherance of the recoupment scheme, in violation of 18 U.S.C. § 1961(1)(B). In count 5, plaintiffs reassert the RICO allegations from counts 3 and 4 and seek declaratory and injunctive relief to enjoin the defendants from continuing to engage in the allegedly illegal practices. Defendants have moved to dismiss these claims on several grounds, which the Court considers in turn.

1.    Plausibility

Defendants devote a good deal of their brief in support of the motion to dismiss arguing that plaintiffs' RICO allegations are simply implausible and that the Court should dismiss them on those grounds. The defendants read too broadly the Supreme Court's cases on the "plausibility" requirement of federal pleading.

Defendants argue that "plaintiffs' RICO claims rest on the utterly implausible theory that the RICO Defendants are using anti-fraud efforts – in conjunction with major law enforcement agencies and many others throughout the industry – to perpetuate wide-ranging thievery from health care providers, effectuated through mail and wire fraud." Mem. in Supp. of Joint Mot. to Dismiss RICO Claims (hereinafter "Docket No. 127"), at 12. In so arguing, defendants erroneously attempt to expand the Supreme

Court's recent decisions in *Twombly* and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), to give a court broad and largely unmoored discretion to determine at the outset of a case whether defendants' version of events is "much more plausible" than plaintiffs'. Docket No. 127 at 12. *Twombly* and *Iqbal* do not establish the sort of broad plausibility test that defendants encourage here.

In *Twombly*, the Supreme Court held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, taken as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *Iqbal* instructs that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If a plaintiff is "armed with nothing more than conclusions," he is not entitled to discovery to attempt to discover facts that might support a purely speculative claim. *Id.*

At the motion to dismiss stage, however, the Court must accept the facts stated in the complaint as true and draw reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 555-56; *Newell Operating Co.*, 538 F.3d at 587. Defendants appear to read *Twombly* and *Iqbal* to suggest that a court making a plausibility determination should evaluate whether it is likely that a plaintiff will be able to prove the facts it alleges. This is incorrect. Though "a formulaic recitation of the elements of a cause of action" is insufficient to allow a plaintiff to survive a motion to dismiss, *Twombly*, 550 U.S. at 555, this "does not impose a probability requirement at the

pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation." *Id.* at 556. The Supreme Court has made it clear that "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.*

The plaintiffs in this case have made specific factual allegations they contend support an inference that defendants violated the RICO statute. These include allegations that defendants worked together through their anti-fraud and refund departments "to design and implement a fraudulent scheme" to "obtain millions of dollars" from plaintiffs through "improper recoupment demands." Compl. ¶ 433. They allege that defendants sent letters to individual plaintiffs demanding repayments that defendants knew to be false (*id.* ¶ 529), failed to provide an adequate appeal process to plaintiffs in an effort to obscure the nature of their actions (*id.* ¶ 531), and later forcibly recouped money to which they were not entitled (*id.* ¶ 536). Plaintiffs have alleged that defendants used computer programs and statistical modeling to identify easy targets for recoupment (*id.* ¶ 457) and that they calculated repayment amounts by extrapolating out from a small sample of claims without checking to see if individual claims were proper or not (*id.* ¶ 184). They allege that defendants withheld from plaintiffs key information, such as which patients' cases were being disputed, the dates of treatment, and the amounts billed, in an effort to prevent plaintiffs from bringing effective appeals. *Id.* ¶ 527. Taken as true, these factual allegations are sufficient to state a plausible claim.

2.      Required elements of a claim under § 1962(c)

Defendants next argue that plaintiffs' complaint fails to adequately plead the elements of a RICO violation under section 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). A claim under section 1962(c) requires a plaintiff to demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Viacom, Inc. v. Harbridge Merchant Servs, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). Defendants argue that plaintiffs have not adequately alleged the existence of an enterprise, that each defendant engaged in a pattern of racketeering activity, and that each defendant proximately caused injury to each plaintiff.

      *a.    Enterprise*

Defendants argue that plaintiffs' complaint does not sufficiently allege a cognizable enterprise and that in any event, plaintiffs have not alleged facts sufficient to suggest that the individual defendants were involved in its operation or management.

The RICO statute defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiffs' complaint alleges that defendants' enterprise, which plaintiffs call the "recoupment enterprise," was a so-called "association-in-fact" enterprise. An association-in-fact enterprise under RICO must have "at least three structural features: a purpose,

15

relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009). Such an enterprise need not have a hierarchical structure or chain of command, nor must its members have fixed roles, so long as it "function[s] as a continuing unit and remain[s] in existence long enough to pursue a course of conduct." *Id.* at 2245.

Defendants argue that when the BCBS entities recouped money from plaintiffs, they acted in their own interests. This, defendants argue, undermines plaintiffs' allegations of an enterprise and suggests even if an enterprise did exist, the individual defendants were not involved in its operation because they acted merely to benefit their own businesses. Defendants cite no case, however, suggesting that a claim of a RICO enterprise is defeated by a contention that the alleged participants were acting in their individual best interests. Plaintiffs have not alleged merely that "several individuals, independently and without coordination, engaged in a pattern of [RICO predicate acts]." *Boyle*, 129 S. Ct. at 2245 n.4. Rather, they allege that defendants' actions were coordinated at the national level, operated and managed at the regional level by the individual BCBS entities, and designed to engage in large-scale fraud against providers like the plaintiffs in a manner that effectively prevented challenge.

Specifically, plaintiffs allege that the defendants "work together through their respective 'Anti-Fraud Departments' or their 'Refund Departments' to design and implement a fraudulent scheme to obtain millions of dollars from plaintiffs . . . through improper recoupment demands and forced recoupment payments." Compl. ¶ 433. They allege that "BCBSA uses the NAFD [National Anti-Fraud Department] to oversee

and implement the activities of similar Anti-Fraud Departments in each of the BCBS Entities for purposes of unlawfully obtaining funds from Individual Plaintiffs and members of the Classes" (*id.* ¶ 435); BCBSA uses an NAFD "Strike Force" and other committees to coordinate efforts among the members of the recoupment enterprise to implement the recoupment scheme (*id.*); and the NAFD provides direction and support and facilitates information sharing to allow the BCBS entities to act consistently so the scheme functions effectively (*id.* ¶ 439). Plaintiffs further allege that defendants use the National Health Care Anti-Fraud Association (NHCAA), an otherwise legitimate entity, "as a vehicle for the communication, exchange, and dissemination of information necessary to effectuate Defendants' fraudulent recoupment scheme." *Id.* ¶ 442.

Taking these allegations together, and assuming them to be true as the Court must at this stage, plaintiffs go well beyond an allegation that defendants acted independently and without coordination. *Boyle*, 129 S. Ct. at 2245 n.4. The factual allegations contained in the plaintiffs' complaint are sufficient to satisfy *Boyle's* requirements of a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit them to pursue the enterprise's purpose. *Id.* at 2244. Further, the allegations that local BCBS entities operated and managed their part of the scheme through their regional anti-fraud departments sufficiently allege that the defendants participated in the operation or management of the enterprise.

> *b.* *Predicate acts and proximate cause*

Defendants argue that plaintiffs' complaint does not adequately allege a violation of section 1962(c) for two additional, related reasons: first, because plaintiffs have not

alleged that each defendant committed two predicate acts of racketeering; and second, because they have not alleged that each defendant's actions proximately caused harm to each plaintiff.

A "pattern of racketeering activity," as defined by the statute, "requires at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Plaintiffs' complaint alleges two different types of racketeering activity: mail and wire fraud (count 3) and theft from employee benefit plans (count 4).

Defendants argue that plaintiffs have failed to allege that each defendant engaged in a pattern of racketeering activity. At most, they contend, each plaintiff has alleged one predicate act by its local BCBS entity. They further assert that plaintiffs have not alleged any predicate acts at all by those defendants that did not have provider agreements with any of the individual plaintiffs. Therefore, they argue, plaintiffs have not alleged facts sufficient to allege that any defendant engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

Plaintiffs contend that they need not allege two predicate acts of racketeering activity by each defendant, only by the enterprise as a whole. Docket No. 141 at 14. This would be true if the plaintiffs' claim was for a RICO conspiracy under section 1962(d). *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001). The complaint in this case, however, alleges a substantive RICO violation under section 1962(c), not a RICO conspiracy under section 1962(d). As mentioned above, section 1962(c) makes it illegal "for *any person* employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (emphasis

18

added).  A defendant may be found liable under section 1962(c), therefore, only if he

himself engages in a pattern of racketeering activity.  *DeFalco v. Bernas*, 244 F.3d 286,

306 (2d Cir. 2001); *see also Jennings v. Emry*, 910 F.2d 1434, 1439 (7th Cir. 1990)

(assuming without expressly finding that a section 1962(c) claim requires allegations of

two predicate acts by each defendant).

The complaint alleges that each time a defendant sent a recoupment letter or

forcibly withheld payment from an employee benefit plan, it committed a RICO

predicate act.  The complaint provides fairly detailed factual allegations about the letters

sent by the BCBS entities that had provider agreements with individual plaintiffs, and

the complaint's allegations about the recoupment disputes describe multiple letters from

these BCBS entities to individual plaintiffs.  The Court will assume that this is sufficient,

at this stage, to allege two or more predicate acts of racketeering activity by the BCBS

entities that sent the recoupment letters and forcibly withheld payments – that is, the

local BCBS entities with which plaintiffs had provider agreements.

Plaintiffs include in their RICO claims several BCBS entities with which no

individual plaintiff had a provider agreement.[2]  Plaintiffs have not adequately alleged

two predicate acts of racketeering activity by each of these defendants.  Plaintiffs

contend that "through the BlueCard program, each RICO Defendant routinely acts not

only on behalf of itself . . . but also on behalf of other members of the Recoupment

---

[2] These are: Blue Cross and Blue Shield of Georgia, Blue Cross and Blue Shield of Alabama, CareFirst, Blue Cross and Blue Shield of North Carolina, Arkansas Blue Cross and Blue Shield, Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Massachusetts, Blue Cross and Blue Shield of South Carolina, and Wellmark.

Enterprise." Docket No. 141 at 14. The complaint, however, contains no allegation that any of these "other members of the Recoupment Enterprise" engaged in mail fraud, wire fraud, or employee benefit theft. The closest plaintiffs come is the assertion in their response brief that the BCBS entities that did those things did so "on behalf of" the other entities. The complaint's allegations are insufficient to set forth a pattern of racketeering activity by any defendant that did not have a provider agreement with an individual plaintiff.

Even if the individual plaintiffs have adequately alleged at least two predicate acts by each local BCBS entity that had a contract with an individual plaintiff, their complaint still has a substantial proximate cause problem. A defendant is liable under RICO only for those actions that proximately cause a plaintiff's injury. *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 265-66 (1992). Proximate cause "demand[s] . . . some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. Section 1962(c), under which plaintiffs bring their RICO claims, "forbids conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). Any compensable injury flowing from a violation of section 1962(c) is thus "the harm caused by predicate acts." *Id.* at 457 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)).

Defendants argue that the complaint fails to allege facts sufficient to support a claim that each defendant has proximately caused injury to each plaintiff. Defendants contend that the complaint contains "no allegations establishing that each Individual Plaintiff was proximately harmed by the alleged RICO violations committed by any one

20

of the RICO Defendants except the alleged violation by the one RICO defendant . . . with which it has a contract."  Docket No. 127 at 19.  Therefore, defendants argue, each individual plaintiff can assert a section 1962(c) claim only against the defendant that actually harmed it by demanding recoupment or withholding funds.

The Court agrees.  The complaint as written contains no allegations that any plaintiff was injured by any defendant other than that plaintiff's local BCBS entity.  This calls into question the basis upon which any particular plaintiff may assert a substantive RICO claim under section 1962(c) against defendants that did nothing to harm that plaintiff.

Plaintiffs contend that the defendants worked together to advance the recoupment scheme and that the various BCBS entities were thus "inextricably intertwined" with each other.  Docket No. 141 at 14.  Therefore, plaintiffs argue, the defendants are collectively liable for plaintiffs' injuries, regardless of whether a particular defendant's actions actually caused an injury to an individual plaintiff.  *Id*.

Though this might be sufficient had plaintiffs asserted a claim of RICO conspiracy under section 1962(d), it is insufficient to sustain a substantive RICO claim under section 1962(c) by any particular plaintiff against the non-participating BCBS entity.  Even assuming a plaintiff may sue a defendant under section 1962(c) for aiding and abetting a RICO violation, plaintiffs' "intertwining" allegations are insufficient to support such a claim.  *See, e.g., In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996).

For these reasons, under the complaint's allegations in their current form, all plaintiffs may not lump together all defendants in a single section 1962(c) claim.  The

Court therefore grants the motion to dismiss the RICO claims (counts 3, 4 and 5).

For certain of the predicate acts in count 4, plaintiffs allege that defendants stole from employee benefit plans when they forcibly recouped funds from plaintiffs, in violation of 18 U.S.C. § 664. Defendants contend that section 664 requires proof of an evil motive. Docket No. 127 at 21. They argue that because plaintiffs have failed to allege an evil motive, they cannot include these as predicate acts under RICO. Bceause the Court has determined that plaintiffs' RICO claims, including those in count 4, fail on other grounds, it does not address the "evil motive" argument. The Court likewise does not address at this time the other arguments defendants have made in favor of dismissal of the RICO claims.

## B.  ERISA claims (counts 1, 2 and 7)

Plaintiffs assert three claims under ERISA. In count 1, they seek to recover plan benefits and other relief under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In count 2, they allege that defendants failed to provide full and fair review of benefits claims as required by ERISA, and seek relief under section 502(a)(3), 29 U.S.C. § 1132(a)(3). In count 7, they seek to enjoin defendants from engaging in future recoupment of benefit payments without following ERISA-mandated processes.

Defendants move to dismiss all of plaintiffs' ERISA claims. They argue that count 1 should be dismissed on the grounds that BCBS entities are not proper ERISA defendants, plaintiffs have failed to allege a violation of any specific ERISA plan, and they have not exhausted available administrative remedies. They move to dismiss counts 2 and 3 on the ground that these claims are essentially the same as those in count 1 and should be dismissed for the same reasons. They also move to dismiss

claims against several particular defendants on the ground that plaintiffs have failed to adequately allege ERISA violations by those defendants.

       1.      Motion to dismiss count 1

In count 1, plaintiffs bring a claim to recover benefits under ERISA section 502(a)(1)(B). That section provides that "a civil action may be brought by a participant or beneficiary [of an ERISA plan] to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Plaintiffs allege that "to the extent that BCBS Entity Defendants have determined that charges submitted for reimbursement by Plaintiffs and the members of the ERISA Class are no longer Covered Services under its health care plans, such a finding is an 'adverse benefit determination' under ERISA." Compl. ¶ 504. They allege that defendants failed to disclose the adverse benefit determinations to BCBS insureds and the individual plaintiffs and did not comply with ERISA's notice and appeal requirements for adverse benefits determinations. *Id.* ¶ 506-07. They seek unpaid and withheld benefits and withdrawal of all claims for recision. *Id.* ¶ 160. They also seek "declaratory and injunctive relief related to enforcement of plan terms, and to clarify their rights to future benefits." *Id*.

Defendants raise three arguments in support of their motion to dismiss count 1. First, they argue that the defendants are not proper defendants. Second, they contend that plaintiffs have failed to state a claim because they have not alleged a violation of any particular ERISA plan. Third, they argue that plaintiffs' claim is not ripe because they have not exhausted available administrative remedies.

Defendants argue that they are not ERISA plans and therefore cannot be sued under ERISA.  Defs.' Mem. in Supp. of Mot. to Dismiss Claims under ERISA (hereinafter "Docket No. 133") at 5 (citing *Nuema, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001)).  They contend that "[a]t most, Plaintiffs allege that the Blue Defendants are ERISA 'plan administrators' [and] because an ERISA plan administrator is not a proper defendant in an action for benefits," the Court should dismiss count 1 of the complaint.  *Id.* at 6.

The Seventh Circuit has not been as strict in its identification of proper ERISA defendants as the defendants suggest.  *Nuema*, the case cited by the defendants, relied on the court's earlier holding in *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996).  In *Jass*, the court upheld a district court's dismissal of a claim by a patient, Jass, against an individual nurse named Margulis.  The court held that the claim was "properly dismissed because Jass sued Margulis in an individual capacity, and 'ERISA permits suits to recover benefits only against the Plan as an entity . . . .'" *Id*. (citing 29 U.S.C. § 1132(d)(2)).

The court's citation to the statute is instructive.  Section 1132(d)(2) (the cited section) states that "any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity, and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."  In the statute, the clause "shall be enforceable only against the plan as an entity" modifies "any money judgment . . .

against an employee benefit plan."  Read carefully, this states only that in cases seeking money judgment against a plan, only the entity, not an individual employee of the entity, may be held liable.

The court held in *Jass* that a plaintiff may not recover under ERISA against an individual nurse but may recover only against the plan for which she worked.  This is consistent with section 1132(d)(2)'s mandate that money judgments against employee benefit plans may not be enforced against individual employees.  The statute does not, however, mandate the conclusion that ERISA actions for benefits may be brought only against plans and not against other related entities such as plan administrators and insurers.

Indeed, though *Jass* has been cited for the broader interpretation the defendants urge here, courts have been somewhat looser in its application.  The Seventh Circuit and other courts in this district have permitted suits against ERISA administrators (including insurers) when such entities are "closely intertwined" with the plan itself. *Mein v. Carus*, 241 F.3d 581, 584 (7th Cir. 2001); *see also Penrose v. Hartford Life and Accident Ins. Co.*, No. 02 C 2541, 2003 WL 21801214 (N.D. Ill. Aug. 4, 2003); *Madaffari v. Meetrocall*, No. 02 C 4201, 2004 WL 1557966 (N.D. Ill. July 6, 2004).

In this case, plaintiffs' allegation is that it was the defendant BCBS entities that had the power to make decisions about whether particular medical services were covered and how much to reimburse providers.  Further, the decision whether to attempt to recoup previously-paid benefits was entirely in the hands of the BCBS entities.  Though the insurance coverage may have been provided by an employee

benefit plan, it appears from plaintiffs' allegations that the BCBS entities had the *sole* authority to make the decisions that give rise to the plaintiffs' claims. They are therefore clearly intertwined with the plans themselves. The Court concludes that the plaintiffs have alleged facts that indicate that the BCBS entities are appropriate defendants on the ERISA claims alleged here.

### b. Failure to identify specific ERISA plans

The defendants also argue that the Court should dismiss plaintiffs' ERISA claims because the plaintiffs have failed to allege any facts showing that the terms of any ERISA plan were violated. The defendants note that the complaint fails to identify "even a *single* ERISA plan, a *single* plan participant who did not receive benefits or a *single* plan provision that was violated by the Blue defendants." Docket No. 133 at 7 (emphasis in original). As a result, they argue, the complaint fails to state a claim for relief under ERISA because it has not identified which plans or participants were harmed. *Id.* (citing *Twombly*, 550 U.S. at 559, and *Iqbal*, 129 S. Ct. at 1949).

This argument might carry more weight were it not for the fact that plaintiffs address it in their complaint. They specifically attribute this claimed weakness in the complaint to defendants' improper actions. Plaintiffs allege in both their complaint and their memorandum in response to defendants' motion that they are unable to identify with greater specificity which plans and terms were violated because the defendants purposefully withheld this information. Plaintiffs' claims stem in large part from their allegation that defendants refused to tell them which patients and plans were affected by the repayment demands in an effort to frustrate any attempt to appeal the determination.

The Court finds that plaintiffs have sufficiently alleged that their inability to identify more specifically which employee benefit plans and subscribers were affected was the result of defendants' improper behavior. *See*, *e.g.*, *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (excusing lack of particularity in pleading when incarcerated plaintiff alleged he was denied access to legal materials which would allow him to pursue a legitimate challenge to his conviction).[3] This is sufficient to excuse their failure to identify individual plans.

### c.   Exhaustion requirement

An ERISA plaintiff must exhaust available internal plan remedies before filing suit in federal court to challenge a denial of benefits. *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002). If, however, the plaintiff does not have meaningful access to review procedures, or if pursuing internal remedies would be futile, then the exhaustion requirement is excused. *Stark v. PPM America, Inc.*, 354 F.3d 666, 671 (7th Cir. 2004).

Defendants argue that count 1 must be dismissed because plaintiffs have failed to exhaust internal plan remedies. The crux of plaintiffs' ERISA claims, however, is the allegation that defendants made adverse benefit determinations without providing proper notice or access to review procedures under ERISA. Compl. ¶¶ 507, 515. For that reason, and because the Court must take as true the facts alleged by plaintiffs, the

---

[3] In *Nuema*, the court held that similar allegations of improper conduct that obscured the identity of the plan at issue also weighed in favor of permitting an entity other than the plan to be named as a defendant. *Nuema*, 259 F.3d at 872.

plaintiffs' complaint asserts a sufficient basis to excuse the exhaustion requirement.[4]

2.      Section 502(a)(3) claim (count 2)

In count 2, plaintiffs reassert the allegations from count 1 and argue that the

defendants' actions also constitute a failure to provide a "full and fair review" of denied

claims as required by 29 U.S.C. § 1133(2).  Plaintiffs seek "injunctive and declaratory

relief to remedy BCBS Entity Defendants' continuing violation of these provisions" under

section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  Compl. ¶ 520.  Section 502(a)(3)

provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A)

to enjoin any act or practice which violates any provision of this subchapter or the terms

of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such

violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

29 U.S.C. § 1132(a)(3).

Section 502(a)(3) is a "catchall" provision that provides "appropriate equitable

relief for injuries caused by violations that § 502 does not elsewhere adequately

remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  Therefore, if a plaintiff

brings a claim for relief under section 502(a)(3) that is available under a different part of

section 502, a court may dismiss the claim under section 502(a)(3).  *See Mondry v. Am.*

*Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) ("a majority of circuits are of the

view that if relief is available to a plan participant under subsection (a)(1)(B), then that

---

[4] In section II(C) of their brief (Docket No. 133), defendants argue that ERISA
claims against several of the BCBS entities should be dismissed because plaintiffs
have failed to make specific allegations about those entities and thus have not shown
exhaustion of internal remedies.  The exhaustion analysis engaged in above applies to
all defendants.

relief is *un* available under subsection (a)(3).  Although we have not had occasion to consider that question, [plaintiff] has given us no reason to depart from the holdings of those circuits.") (emphasis in original).

Defendants argue that plaintiffs' claim in count 2 is, in fact, the same as count 1, which plaintiffs raised under section 502(a)(1)(B).  All the relief sought in count 2, they contend, is available under section 502(a)(1)(B).  Therefore, they argue, the Court should dismiss count 2.  Plaintiffs argue that count 1 is a claim for money damages for the improperly recouped benefits, whereas count 2 is a claim for injunctive and declaratory relief that is not available to them under section 502(a)(1)(B).

Section 502(a)(1)(B) allows a plaintiff "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Count 2 requests that the Court enjoin the defendants from recouping benefits against any member of the putative class without first providing a "full and fair review" as required by ERISA.  Compl. ¶ 520.

The Court does not see count 2 as duplicative of count 1.  Though count 2 does involve ERISA rights, it seeks to enforce a review process that is mandated by the statute itself, not by the terms of subscribers' individual plans.  Count 2 is therefore better characterized as a claim "to enjoin any act or practice which violates any provision of this subchapter . . . or to obtain other appropriate equitable relief" as described in section 502(a)(3).  It does not, in the Court's view, merely state a claim for relief that is available under a different subsection of 502.  The Court concludes, therefore, that plaintiffs may seek relief under the "catch-all" provision of section 502(a)(3).

3.      Other equitable relief (count 7)

In count 7, plaintiffs "seek appropriate declaratory and injunctive relief to enjoin BCBS Entity Defendants from pursuing their effort to coerce recoupment and, further, to order BCBS Entity defendants to return any funds they have received or withheld from Individual Plaintiffs and members of the Classes as a result of their recoupment efforts."  Compl. ¶ 572.  Defendants argue that this is not a separate claim but rather is merely a request for another remedy in conjunction with plaintiffs' allegations in count 1, and should therefore be dismissed.  Defendants may be right and it may have been more appropriate for plaintiffs to include this request for relief as part of count 1.  For the time being, however, defendants are not harmed by this apparent technical defect. The Court declines to dismiss the request for injunctive relief.

4.      Assignment of rights

In section II(A) of their brief, defendants argue that the Court lacks subject matter jurisdiction over plaintiffs' ERISA claims to the extent that assignments of rights are not permitted under any of the applicable ERISA plans.  Docket No. 133 at 13-15.  Under 29 U.S.C. § 1132(a)(1)(B), only a "participant" in or a "beneficiary" of a plan is entitled to file suit to recover under ERISA.  The statute defines "beneficiary" as "a person designated by a participant . . . who is or may become entitled to a benefit" under the plan.  29 U.S.C. § 1002(8).  The Seventh Circuit has held that for jurisdictional purposes, "participants" and "beneficiaries" should be construed to mean "anyone with a colorable claim to benefits."  *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991).

Plaintiffs claim to be beneficiaries as defined by ERISA.  They contend this is so

30

because "the standard practice of Individual Plaintiffs is to have each of the patients sign an assignment of benefits form pursuant to which Individual Plaintiffs are authorized to file claims with and receive payments directly from Defendants, and to pursue actions against them, if necessary, to ensure receipt of such payments." Compl. ¶ 421.

Defendants contend that plaintiffs are neither participants nor beneficiaries of ERISA plans. Many BCBS entities include in their ERISA plans and contracts specific prohibitions on assignment of benefits. These provisions, defendants argue, make any assignment of benefits a violation of the terms of a patient's insurance plan and therefore invalid. Specifically, defendants contend that "based on Plaintiffs' allegations, The Regence Group has identified the specific Regence claim at issue and the governing ERISA plan under which the claim was submitted. The ERISA plan contains an express prohibition against assignment of benefits."[5] Docket No. 133, at 15. Therefore, they argue, Dr. Miggins, the plaintiff who has a provider agreement with Regence Group, is not a beneficiary under ERISA because any assignment of benefits to him was invalid, and he therefore "does not have a colorable claim for benefits." *Id.*

The court in *Kennedy*, though, made it clear that "subject matter jurisdiction depends on an arguable claim, not on success." *Kennedy*, 924 F.2d at 700. The fact that a plaintiff may not be able to recover based on the assignment provisions of the

_____

[5] Defendants argue that most ERISA plans administered by the defendant BCBS entities contain prohibitions against assignment, but they are unable to name them specifically because plaintiffs have "failed to identify a single plan under which they purport to sue." Defs.' Mem. at 15. As discussed above, the Court has determined that this failure to identify particular ERISA plans does not defeat plaintiffs' claim at this stage.

ERISA contracts at issue does not necessarily divest this Court of jurisdiction over the claim. "Only if the language of the plan is so clear that any claim as an assignee must be frivolous is jurisdiction lacking." *Id.*

Plaintiffs note that the Regence plan cited by defendants authorizes providers to receive payments directly from Regence. Docket No. 142 at 29. They contend that Dr. Miggins was, in fact, directly paid by Regence under the terms of this plan. *Id.* The Seventh Circuit ruled in *Kennedy* that "[t]he possibility of direct payment is enough to establish subject-matter jurisdiction." *Kennedy*, 924 F.2d at 701. The Court follows this guidance and determines that at this stage in the litigation, it is not "so clear that any claim as an assignee must be frivolous." *Id.* at 700.

5.      Other grounds for dismissal of ERISA claims

In section II(B) of their brief, defendants make several other arguments that are essentially variations on arguments made elsewhere in their papers. Defendants contend that plaintiffs have failed to make any "substantive factual allegations" against six BCBS entities (Blue Cross and Blue Shield of Arkansas, Blue Cross and Blue Sheild of Georgia, Blue Cross and Blue Shield of Kansas City, Blue Cross Blue Shield of Massachusetts, Blue Cross Blue Shield of South Carolina, and Wellmark, Inc.). Docket No. 133 at 16. They also argue that plaintiffs' allegations against five additional defendants (Carefirst, Inc., Excellus Blue Cross and Blue Shield, Blue Shield of California, Blue Cross and Blue Shield of North Carolina, and Blue Cross and Blue Shield of Tennessee) are too scant to be actionable. They finally argue that the plaintiffs' allegations against Blue Cross and Blue Shield of Michigan and Blue Cross and Blue Shield of Alabama do not state a claim for relief because plaintiffs do not

specifically allege that these entities themselves improperly recouped funds. Defendants argue that the ERISA claims against all of these defendants should be dismissed because of these purported factual shortcomings.

Plaintiffs argue that though the individual plaintiffs do not have contracts with all of these entities, and though they may not have specifically alleged incidents of ERISA-violative behavior for each, "the plaintiffs nevertheless . . . have valid ERISA claims against them because, through the BlueCard Program, retroactive Adverse Benefit Determinations were made by other BCBS entity Defendants on behalf of or as agents of" the thirteen BCBS entities with which individual plaintiffs did have contracts. Pls.' Resp. to Defs.' Mot. to Dismiss ERISA claims (Docket No. 142) at 30. Further, as discussed above, plaintiffs have explained that they are not in a position to know exactly which plans were implicated by the repayment demands, because defendants withheld this information. It stands to reason, therefore, that plaintiffs cannot be expected to identify precisely at this stage of the case which particular BCBS entities were responsible for particular benefit determinations.

The Court finds that plaintiffs have alleged sufficient facts to support ERISA claims against their local BCBS entities as well as other BCBS entities they contend were involved in the decision to deny benefits or recoup funds. For this reason, the Court denies the defendants' motion to dismiss the ERISA claims on the ground that they have not made specific allegations against all defendants.

6.    Plaintiffs' judicial estoppel argument against Wellpoint

After briefing was completed on the motions to dismiss in this case, plaintiffs cited as supplemental authority a decision recently issued in the Eastern District of

33

Kentucky, *Porter v. Anthem Health Plans of Ky, Inc.*, 2010 U.S. Dist. LEXIS 25791 (E.D. Ky. Mar. 18, 2010).  One of the defendants in the present case, WellPoint, Inc., was a defendant in that case under the name Anthem Blue Cross and Blue Shield.  Plaintiffs argue that in the *Porter* case, WellPoint took a position that was contrary to one it takes here and that it should therefore be estopped from asserting the contrary position in this case.  In the *Porter* case, plaintiffs contend, WellPoint successfully argued to the court that a claim substantially similar to the one raised here was a valid ERISA claim.  Therefore, plaintiffs contend, WellPoint should be estopped from arguing here that plaintiffs have failed to state a valid ERISA claim.  Because the Court has concluded that plaintiffs' ERISA claims may proceed against all defendants, including WellPoint, it need not reach plaintiffs' judicial estoppel argument.

C.     **Violation of Florida statute (count 6)**

In count 6 of the complaint, plaintiffs Dwyer and the Florida Chiropractic Association (FCA) allege that Blue Cross and Blue Shield of Florida (BCBSF) violated Section 627.419 of the Florida Insurance Equality Laws.  BCBSF policies limit coverage for certain chiropractic services by covering only a single physical medical modality or procedure code per patient per day and limiting the number of spinal manipulations that are covered in a calendar year.

Florida Statute section 627.419(4) states:

Notwithstanding any other provision of law, when any health insurance policy, health care services plan, or other contract provides for the payment for medical expense benefits or procedures, such policy, plan, or contract shall be construed to include payment to a chiropractic physician who provides the medical service benefits or procedures which are within the scope of a chiropractic physician's license.  Any limitation or condition placed upon payment to, or upon services,

diagnosis, or treatment by, any licensed physician shall apply equally to all licensed physicians, without unfair discrimination to the usual and customary treatment procedures of any class of physicians.

FLA. STAT. § 627.419(4) (2001).  Plaintiffs allege that the BCBSF policies and

reimbursement practices "discriminate against policyholders who choose chiropractic

treatments, by unfairly limiting payments for the treatments usually and customarily

afforded by chiropractors."  Compl. ¶ 485.

BCBSF has moved to dismiss this claim (Docket No. 125).  It argues that the

Florida statute does not provide for a private right of action.  Further, it argues that the

statute only applies to "physicians," and "chiropractors like Dwyer are not considered

licensed 'physicians' for purposes of the statute."  *Id.* at 1.

To support its argument that section 627.419(4) does not supply a private right of

action, BCBSF cites *Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195, 198 (11th

Cir. 1992).  In *Swerhun*, the Eleventh Circuit stated that "[s]ection 627.419's plain

language does not establish a private right of action, and we will not infer one."  *Id.*

Under Florida law, whether a private right of action exists for violation of a statute is a

matter of legislative intent.  *Murthy v. N. Sinha Corp.*, 644 So. 2d 983 (Fla. 1994).

Absent evidence of express intent by the legislature to create a private right of action,

such a right is not implied.  *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d

842, 852 (Fla. 2003).  There is nothing in the text of section 627.419(4) or the rest of

section 627.419 indicating directly that the state legislature intended to permit a private

right of action against an insurer for discriminating against chiropractic physicians.

Plaintiffs correctly note, however, that at least one Florida court has allowed a

claim to be brought by a private party under section 627.419(4). In *Weldon v. All Am. Life Ins. Co.*, 605 So. 2d 911 (Fla. App. 1992), a Florida appellate court affirmed the findings of a trial court in a case in which the plaintiff had asserted she was damaged by a violation of section 627.419(4). Neither party in that case appears to have raised the question of whether section 627.419(4) allowed a private right of action, and the court did not address the point.

Count 6 of the plaintiffs' complaint does not raise issues substantially different from those involved in the other claims. Allowing this claim to proceed will not require substantial additional discovery. Given the relatively unsettled state of Florida law on the question of whether section 627.419(4) provides a private right of action, the Court denies BCBSF's motion to dismiss without prejudice to reassertion at the summary judgment stage.

**D.    Procedural and standing arguments for dismissal**

In addition to their arguments to dismiss the plaintiffs' claims on substantive grounds, defendants have also moved to dismiss certain plaintiffs and defendants for lack of standing, failure to state a claim, and based on the doctrine of accord and satisfaction.[6]  The Court now turns to these arguments.

1.    Standing of association plaintiffs

Five of the plaintiffs in this case are professional associations representing their members, who are chiropractors. Defendants argue that these association plaintiffs

_____

[6] Defendants have also moved to compel arbitration and stay proceedings with respect to certain plaintiffs. The Court considers the arbitration issue in a separate decision.

lack standing to sue under Article III of the United States Constitution.

To satisfy the "case or controversy" standing requirement under Article III, section 2 of the Constitution, a plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). An association may satisfy these elements by asserting claims that arise from injuries it sustained itself. *See, e.g., Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 n.11 (1979). An association may also pursue claims solely as a representative of its members if its members would otherwise have standing to sue in their own right; the interests it seeks to protect are germane to the organization's purpose; and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The association plaintiffs in this case claim to have both kinds of standing. They contend that they were directly injured by defendants' activities and also that they have standing to seek relief on behalf of their members.

a.      *Individual standing*

Associations can sue on their own behalf for injuries they have actually sustained. *Warth v. Seldin*, 422 U.S. 490, 511 (1975). If an organization alleges "concrete and demonstrable injury to the organizations activities – with the consequent drain on the organization's resources," it has standing to sue. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). If, however, the injury alleged is "simply a setback

to the organization's abstract social interests," then the organization does not have standing in its own right. *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 749 (1972)).

In *Plotkin v. Ryan*, 239 F.3d 882, 886 (7th Cir. 2001), the Seventh Circuit rejected a claim of independent standing by a nonprofit group that was dedicated to fighting government fraud. The court concluded that "good intentions are not enough for federal standing," and "ordinary expenditures as part of an organization's purpose do not constitute the necessary injury-in-fact required for standing." *Id*. On the other hand, the Supreme Court in *Havens* concluded that a housing advocacy group had established individual standing when it alleged that its ability to provide counseling and referral services for low- and moderate-income homeseekers had been "perceptibly impaired" when it was forced to divert resources away from those activities to fight defendants' actions. *Havens*, 455 U.S. at 379.

Determining whether an association's claims give it independent standing, therefore, hinges on its allegations in the particular case. If the association alleges injuries that amount to "ordinary expenditures," *Plotkin*, 239 F.3d at 886, or a simple setback to "abstract social interests," *Havens*, 455 U.S. at 379, it has not alleged facts sufficient to demonstrate standing. If, however, the association alleges a "perceptible impair[ment]" of its activities resulting from it having to divert resources to address defendants' actions, it has independent standing. *Id.*

The association plaintiffs allege that they were directly harmed by defendants' wrongful conduct. The complaint alleges that:

> Association Plaintiffs have individual standing as they have been injured by Defendants' wrongful conduct as alleged herein. They have expended

38

> considerable time and resources helping their members deal with issues
> concerning Defendants' improper chiropractic post-payment audits and
> recoupment efforts, including their forced recoupment through improper
> withholding of unrelated payments to apply toward the alleged overpayments.

Compl. ¶ 33.

The complaint describes the work of association plaintiffs as follows: "as part of their work, Association Plaintiffs assist members who were subjected to improper or overzealous audits by insurance companies, seek to negotiate with insurers in an effort to advance the interest of chiropractors, and work with legislators and regulators with respect to chiropractic legislation and regulations." *Id.* ¶ 32. The association plaintiffs claim they were injured when they had to expend time and money assisting their members in dealing with defendants' allegedly improper practices. By their own description, however, this is a part of their ordinary work. *Id.* It is not something that has forced them to divert resources away from their ordinary work, as was the case in *Havens*. The Court concludes that the association plaintiffs' claims of individual injury present circumstances more like *Plotkin* than *Havens*. They have failed to plead facts sufficient to establish independent standing.

### b. Representational standing

The association plaintiffs also assert representative standing on behalf of their members. As indicated earlier, an association may have representational standing if its members would otherwise have standing to sue in their own right; the interests it seeks to protect are germane to the organization's purpose; and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt*, 432 U.S. at 343. The parties do not dispute that the association plaintiffs satisfy

the first two elements of this test.  Defendants argue, however, that the association plaintiffs do not satisfy the third element of the test.  They contend that "participation of each Individual Plaintiff . . . plainly would be required here."  Defs.' Mem. in Support of Rule 12(b)(1) and 12(b)(6) Mot. to Dismiss for Lack of Standing and Failure to State a Claim at 6.

Plaintiffs argue that the association plaintiffs "are challenging the standardized practices of the BCBS Entity Defendants of first paying for services covered, and then making a retroactive Adverse Benefit Determination and improperly recouping such benefits, without complying with the specific and express requirements under ERISA." Pls.' Resp. to Defs.' Mem. (hereinafter "Docket No. 148"), at 2.  Because they "seek declaratory and injunctive relief" and not damages, plaintiffs contend, participation of individual members is not required.

Whether an association can assert representational standing on behalf of its members "depends in substantial measure on the nature of the relief sought."  *Warth*, 422 U.S. at 515.  In cases seeking damages, injuries are "peculiar to the individual member concerned," and proving them requires individualized factual determinations. This would defeat associational standing.  *Id.* at 515-16.  When a claim raises a "pure question of law," however, an association "can litigate [the] case without the participation of those individual claimants," and the association has standing to pursue the claim.  *Int'l Union, United Auto., Aerospace, and Ag. Implement Workers of Am. v. Brock*, 477 U.S. 274, 288 (1986).

Defendants argue that to prevail on their ERISA claim, plaintiffs must establish that defendants improperly requested repayment and recouped funds from individual

medical professionals. Docket No. 130 at 5. This, they contend, is an individualized inquiry, and therefore the claim does not satisfy the third element of the *Hunt* test. It is true that to recover damages, individual plaintiffs will need to prove such elements as the existence of a contract, what services are covered, the terms of the relevant patient's insurance plan, and so on. Plaintiffs also raise other claims, however, that do not require such individualized fact-intensive inquiry. For example, plaintiffs allege that defendants violated ERISA by failing to provide a full and fair review of adverse benefit determinations, and seek to enjoin defendants from continuing this practice in the future. This ERISA claim does not depend on individualized determinations of the damage done to particular doctors. The claim therefore can be litigated without the involvement of the associations' individual members.

Though certain of the plaintiffs' claims, such as the ERISA claims seeking payment of damages, might not satisfy the third element of the *Hunt* test, the Court is satisfied that at least some of the plaintiffs' claims do present questions of law for which the association plaintiffs have standing. The parties briefed this issue very perfunctorily, and defendants did not distinguish among the plaintiffs' various claims in their arguments against association standing. Because the Court is satisfied that the association plaintiffs have representational standing on at least one of the claims, the Court will allow them to proceed as plaintiffs and will not at this time undertake the defendants' task of identifying which, if any, claims do not satisfy the third element of the *Hunt* test. Should the defendants wish to object to standing in a more detailed way with regard to specific claims, they may do so at the summary judgment stage.

2.  Standing of individual plaintiffs

Defendants also argue that individual plaintiffs lack standing because they alleged insufficient facts to state a claim against many of the BCBS entities named as defendants.  Docket No. 130 at 8-9.  The Court considered and rejected this argument in section B of this opinion.

3.  Accord and satisfaction

Drs. Reno and Gearhart have provider agreements with WellPoint (operating under the name Anthem).  In 2006, WellPoint conducted audits of both Reno and Gearhart's businesses, informed both doctors that they had been overpaid, and demanded that the doctors pay back the amounts overpaid.  Both doctors subsequently agreed to pay WellPoint lesser amounts to settle the disputes.

Dr. Leri has a provider agreement with Highmark.  In 2006, Highmark made a recoupment demand against Leri and informed him that he could contest his recoupment determination during a Medical Review Committee (MRC) hearing.  Leri participated in the MRC hearing, and the MRC upheld the recoupment demand.  Leri later agreed to settle with Highmark for an amount less than the recoupment amount.

Because Reno and Gearhart both paid WellPoint agreed-upon amounts to settle with WellPoint over the disputed overpayments, WellPoint has moved to dismiss their claims pursuant to Rule 12(b)(6) under the doctrine of accord and satisfaction. Highmark has made a similar motion with regard to Leri's claims.

Accord and satisfaction is an affirmative defense.  Fed. R. Civ. Proc. 8(c). Affirmative defenses are not typically appropriate to decide on a motion to dismiss for failure to state a claim, because a plaintiff is not required to anticipate potential

42

affirmative defenses in its complaint.  *See*, *e.g.*, *Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008).

In some cases, a plaintiff may plead himself out of court by alleging facts which "unwittingly on his part, demonstrate that he has no legal claim."  *Trevino v. Union Pac. R.R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990).  In the affirmative defense context, if the complaint itself definitively establishes the affirmative defense, a court may grant a Rule 12(b)(6) motion to dismiss on that ground.  *See, e.g.*, *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (motion to dismiss granted where complaint indisputably established by its own allegations that claim was time-barred).

That is not the case here.  Though the complaint establishes that Gearhart, Leri and Reno settled their disputes regarding the purported overpayments, it also alleges that they did so under duress because they were not able to effectively appeal due to defendants' improper actions.  Compl. ¶¶ 172, 200, 352.  Additionally, the plaintiffs' claims that seek to enjoin defendants from engaging in similar behavior in the future are at least arguably separate from any claims for money that Reno, Leri, and Gearhart settled with their local BCBS entities.  Gearhart, Leri, and Reno signed no release of any other claims they might have against defendants when they settled their repayment claims.  Docket No. 143 at 1.

Though defendants argue that the current claims are actually the same contract disputes masquerading as RICO and ERISA claims, granting the motion on that ground would require the Court to draw inferences in favor of the defendants, which is inappropriate on a motion to dismiss for failure to state a claim.  Because plaintiffs' complaint does not allege facts that definitively establish an affirmative defense to

43

"demonstrate that [they have] no legal claim," *Trevino*, 916 F.2d at 1234, the Court denies WellPoint and Highmark's motions to dismiss the claims of Leri, Reno, and Gearhart based on accord and satisfaction.

       4.      Claims of Leri and Askar

As discussed above, Leri has a provider agreement with Highmark. Another plaintiff, Askar, also has a provider agreement with Highmark. Both Leri and Askar practice in Pennsylvania. Under Pennsylvania law, "all matters, disputes, or controversies relating to the professional health services rendered by the health service doctors . . . shall be considered and determined only by health service doctors as selected in a manner prescribed in the bylaws of the professional health service corporation." 40 PA. CONS. STAT. § 6324(c) (2009). Highmark has moved to dismiss Leri and Askar's claims (Docket No. 131) because it contends the only forum available for them to resolve such disputes is the Medical Review Committee (MRC) provided for in Highmark's bylaws.

Under the Pennsylvania statute, Leri and Askar are "health service doctors" and Highmark is a "professional health service corporation." Pursuant to Highmark's bylaws, "[a]ll matters, disputes or controversies arising out of the relationship between [Highmark] and professional health care providers who render health services to [Highmark's] subscribers" are adjudicated by an MRC. Docket No. 131 at 2. The agreements Leri and Askar signed with Highmark incorporate by reference a document called Regulations for Participating Providers, which provides that "[a]ll matters, disputes or controversies relating to the services performed by participating providers . . . shall be considered, acted upon, disposed of and determined only by providers in the

44

manner provided by . . . the Bylaws of Highmark, Inc." *Id.*, Ex. 1C.

Highmark contends that "Askar's and Leri's claims fall squarely within the purview of Section 6324(c) and, therefore, must be exclusively adjudicated by the MRC." *Id.* at 3. Highmark argues that Pennsylvania courts have held the MRC to be the exclusive forum for dispute resolution "absent a showing that the provider's due process rights have been violated." *Id.* The Pennsylvania Supreme Court case defendants cite, however, did not rule that the MRC was intended to be the only forum for resolution of such disputes. *Rudolph v. Penn. Blue Shield*, 553 Pa. 9, 14, 717 A.2d 508, 510 (1998). The court in *Rudolph* concluded that because the panel that reviewed the plaintiff's claims had been made up of members of Blue Shield's board of directors, it was by definition "not impartial," and therefore "the doctor was entitled to some sort of review which could provide appropriate relief." *Id.* at 15, 717 A.2d at 511. The court noted that "it is less clear whether this forum of experts is intended to be the only forum. Neither the regulatory act nor the contract states that the medical review committee is the sole and exclusive forum." *Id.* at 14, 717 A.2d at 510. Having found that the panel at issue violated the plaintiff's right to due process, however, the court did not actually reach the question of whether the statute compels the conclusion that the MRC is the exclusive forum for disputes when there is no due process concern. *Id.*

Plaintiffs argue (as discussed above and in this Court's separate opinion on defendants' motions to compel arbitration) that their claims do not involve an interpretation of the plaintiffs' contracts with their individual providers but rather sound in RICO and ERISA. Though the Court has determined that the plaintiffs have failed to

allege sufficient facts to state a RICO claim, it has allowed the ERISA claim to proceed.

ERISA provides that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (the "preemption clause"). ERISA also provides, however, that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(a) (the "saving clause"). Putting these two provisions together, the Supreme Court has described the scheme of regulation as follows: "[i]f a state law relates to employee benefit plans, it is pre-empted. The savings clause excepts from the pre-emption clause laws that regulate insurance." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) (internal citations and quotations omitted).

Preemption is not limited to state laws specifically designed to affect employee benefit plans. *Shaw v. Delta Air Lines*, 463 U.S.85, 98 (1983). Rather, the preemption clause has "expansive sweep," and the phrase "relate to" is "given its broad common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase, if it has connection with or reference to such a plan." *Pilot Life Ins.*, 481 U.S. at 47 (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)).

Further, the Supreme Court has held that ERISA section 502(a) "set[s] forth a comprehensive civil enforcement scheme" that constitutes the exclusive remedies for enforcement of ERISA itself. *Id.*, 481 U.S. at 54. State laws that create additional or substitute remedies for violations of ERISA are pre-empted. *Id.* at 52.

The plaintiffs' ERISA claims arise from their allegation that defendants failed to comply with the statutory provisions under ERISA that require a full and fair review of adverse benefits determinations.  This amounts to a claim to enforce ERISA's statutory provisions, for which the civil enforcement scheme described in section 502(a) provides the exclusive remedy.  *Pilot Life Ins.*, 481 U.S. at 54.  Therefore, to the extent that Highpoint argues that Section 6324(c) of the Pennsylvania statute precludes federal court review of plaintiffs' ERISA claims, that argument fails.

Having found that the plaintiffs have alleged sufficient facts to allow their ERISA claims to proceed, and because section 502 provides the exclusive means for resolving disputes under ERISA to the preclusion of any state laws, the Court denies Highmark's motion to dismiss the claims of Levi and Askar.

5.      Motion to dismiss or stay the claims of Korsen and Barlow

Korsen is a chiropractic physician, and Barlow is a licensed occupational therapist.  Korsen and Barlow practice together in Rhode Island, and until recently they had a provider agreement with Blue Cross and Blue Shield of Rhode Island (BCBSRI).  BCBSRI demanded recoupment of over $400,000 of payments made for services that it alleges Korsen and Barlow billed using an improper billing code.  Korsen and Barlow and BCBSRI were involved in a lengthy dispute about their liability for these allegedly incorrect payments.  In April 2009, BCBSRI began to recoup the money by withholding payment for services Korsen and Barlow had provided to other BCBS insureds.

In June 2009, Korsen contacted the FBI and local news media to tell his story and complain about what he believed were illegal forced recoupments by BCBSRI.  After a local news show aired an interview with Korsen, BCBSRI sued Korsen in state

47

court in Rhode Island for breach of contract and fraud. BCBSRI later amended the complaint to add a defamation claim based on Korsen's public statements about the dispute. Shortly thereafter, Korsen and Barlow removed the lawsuit from state court to the federal district court in Rhode Island.

In August 2009, Korsen and Barlow filed answers and counterclaims, which included an ERISA claim similar to the one raised here. In that same month, BCBSRI filed a motion to remand the case to state court. On November 5, 2009, a magistrate judge recommended granting the motion to remand. The matter was argued before a district judge in January 2010 and is currently under advisement.

BCBSRI has moved to dismiss or stay the claims of Korsen and Barlow as duplicative of a parallel action already pending in another federal court (Docket No. 150). The Court already has determined that the ERISA claims of the putative class may proceed against the defendants, including BCBSRI. The ability of this case to proceed does not depend on the disposition of this motion by BCBSRI. Further, the issue of remand has been fully briefed and argued before the court in the District of Rhode Island since January of this year, and based on the magistrate judge's recommendation it seems possible that the Rhode Island case may shortly be remanded to state court, which would render BCBSRI's motion moot. The Court therefore declines to rule on this motion at this time, pending the decision of the court in Rhode Island on the motion to remand.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motion to dismiss [docket no. 126] in part, dismissing plaintiffs' RICO claims (counts 3, 4, and 5) but

declining to dismiss the ERISA claims.  The Court also declines to dismiss the claims of individual plaintiffs or against individual defendants [docket no. 126], with the following exceptions:  the Court dismisses the claims of association plaintiffs brought on their own behalf for lack of standing and defers judgment on the motion to dismiss the claims of Korsen and Barlow pending a decision by the District of Rhode Island on the motion to remand the parallel case to state court.  The Court denies without prejudice the motion to dismiss the claim under Florida law (count 6) [docket no. 125].

MATTHEW F. KENNELLY
United States District Judge

Date: May 17, 2010