IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA CHIROPRACTIC ASSOCIATION, NEW YORK CHIROPRACTIC COUNCIL, ASSOCIATION OF NEW JERSEY CHIROPRACTORS, FLORIDA CHIROPRACTIC ASSOCIATION and CALIFORNIA CHIROPRACTIC ASSOCIATION, on their own behalf and in a representational capacity on behalf of their members, and GREGORY T. KUHLMAN, D.C., JAY KORSEN, D.C., IAN BARLOW, KENDALL GEARHART, D.C., JEFFREY P. LERI, D.C., MICHELLE M. ASKAR, D.C., MARK BARNARD, D.C., BARRY A. WAHNER, D.C., ANTHONY FAVA, D.C., DAVID R. BARBER, D.C., RYAN S. FORD, D.C., LARRY MIGGINS, D.C., CASEY PAULSEN, D.C., DEAN RENNEKE, D.C., ANDREW RENO, D.C., PERI L. DWYER, D.C., RONALD L. YOUNG, D.C., and ERIC THOMPSON, D.C., on their own behalf and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 09 C 5619 |
| vs. | ) ) | |
| BLUE CROSS BLUE SHIELD ASSOCIATION, BLUE CROSS AND BLUE SHIELD OF RHODE ISLAND, BLUE CROSS AND BLUE SHIELD OF ALABAMA, ARKANSAS BLUE CROSS AND BLUE SHIELD, BLUE SHIELD OF CALIFORNIA, BLUE CROSS AND BLUE SHIELD OF FLORIDA, BLUE CROSS AND BLUE SHIELD OF GEORGIA, HEALTH CARE SERVICES CORPORATION, INDEPENDENCE BLUE CROSS, BLUE CROSS AND BLUE SHIELD OF KANSAS, CAREFIRST, INC., BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, BLUE CROSS AND BLUE SHIELD OF MICHIGAN, BLUE CROSS AND BLUE SHIELD OF MINNESOTA, BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, HORIZON BLUE CROSS AND BLUE SHIELD OF NEW JERSEY, EXCELLUS BLUE CROSS AND BLUE SHIELD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, HIGHMARK, INC., BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, BLUE CROSS AND BLUE SHIELD OF TENNESSEE, PREMERA BLUE CROSS, THE REGENCE GROUP, WELLMARK, INC., and WELLPOINT, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are chiropractic physicians who have provided services to members of health care plans insured or administered by the defendants, professional associations whose members are chiropractic physicians, and one subscriber to a health care plan.[1]  The defendants are Blue Cross and Blue Shield of America (BCBSA) and individual Blue Cross and Blue Shield entities (BCBS entities).  BCBSA is a national umbrella organization that facilitates the activities of individual BCBS entities.  Individual BCBS entities insure and administer health care plans to Blue Cross and Blue Shield customers (BCBS insureds) in various regions.

Plaintiffs allege that defendants improperly took money belonging to plaintiffs.  They allege that defendants would initially reimburse plaintiffs for services they provided to BCBS insureds and then sometime afterward would make a false or fraudulent determination that the payments had been in error and would demand repayment from

---

[1] The Court assumes familiarity with the facts of this case and will summarize them only briefly here.  A more detailed recounting of the facts can be found in the Court's May 17, 2010 decision.  *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

2

plaintiffs. If the plaintiffs refused to return the payment as demanded, defendants would force recoupment by withholding payment on other, unrelated claims for services plaintiffs provided to other BCBS insureds. The subscriber plaintiff, who recently intervened in the case, alleges that she was held liable for portions of a bill for services she received at a hospital after her insurer demanded recoupment from the chiropractic provider who treated her.

Plaintiffs filed their first amended complaint on November 16, 2009. In it, plaintiffs alleged that defendants' actions violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Employee Retirement Income Security Act (ERISA), as well as Florida state law. On May 17, 2010, the Court granted a motion by defendants to dismiss the RICO claims for failure to state a claim. On March 12, 2010, Katherine Hopkins moved to intervene as a class representative on behalf of a putative class of health care subscribers, a motion the Court granted on August 5, 2010.

Plaintiffs filed a second amended complaint (SAC) on June 29, 2010. The second amended complaint includes several of the same claims that were included in the first amended complaint, specifically, the RICO and ERISA claims. Plaintiffs have added a claim of RICO conspiracy and an ERISA claim on behalf of Hopkins and the putative class of subscribers she represents.

Defendants have filed an "omnibus motion to dismiss" the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This opinion addresses two of the grounds argued by defendants: their argument that the second amended complaint does not state a claim under RICO and their argument that Hopkins' ERISA claim against WellPoint is deficient. For the reasons stated below, the Court grants

defendants' motion.

## Discussion

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, and Agr. Implement Workers of Am.*, 538 F.3d 583, 587 (7th Cir. 2008). Though Federal Rule of Civil Procedure 8(a)(2) does not require a complaint to include "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

### A.   RICO allegations (counts 3, 4, 5 and 6)

Plaintiffs' second amended complaint includes RICO claims under 18 U.S.C. § 1962(c) and (d). They contend that defendants' repayment demands and forced recoupments are part of a nationwide fraudulent scheme by BCBSA and numerous BCBS entities to improperly obtain funds from health care providers, including the individual plaintiffs and members of the association plaintiffs' organizations. They contend that plaintiffs engaged in a pattern of racketeering activity that involved stealing money from employee benefit plans and using the mail to deliver false recoupment demands and benefit denials. Plaintiffs allege that via these acts, defendants participated in the conduct of an association-in-fact enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (counts 3 and 4). Plaintiffs also allege that defendants conspired to violate the RICO statute, in violation of 18 U.S.C. §

4

1962(d) (count 5). They seek declaratory and injunctive relief under 18 U.S.C. § 1964(a), which allows a court to enjoin violations of section 1962 (count 6).

### 1. Section 1962(c) claims

In a decision issued on May 17, 2010, the Court granted defendants' motion to dismiss plaintiffs' claims under RICO section 1962(c). The Court determined that plaintiffs had not alleged any acts of racketeering activity on the part of several defendants with which no individual plaintiff had a provider agreement and therefore could not maintain a 1962(c) claim against those defendants. The Court also ruled that although plaintiffs had sufficiently alleged that each remaining defendant engaged in at least two predicate acts of racketeering activity, the first amended complaint still presented a "substantial proximate cause problem." *Penn. Chiropractic Ass'n*, 2010 WL 1979569, at *10. As the Court noted, a defendant is liable under RICO only for those actions that proximately cause a plaintiff's injury. Plaintiffs' first amended complaint contained no allegations that any plaintiff was injured by any defendant other than that plaintiff's local BCBS entity. Though plaintiffs argued that the various defendants were "intertwined," the Court ruled that these allegations were insufficient to sustain a single section 1962(c) claim brought by all plaintiffs against all defendants. The Court concluded that plaintiffs could not "lump together all defendants in a single section 1962(c) claim" and therefore dismissed the plaintiffs' RICO claims. *Id.*, at *11.

In their second amended complaint, plaintiffs assert two RICO claims under section 1962(c) that are nearly identical to those they asserted in the first amended complaint: one based on allegations of mail and wire fraud (count 3); and one based on alleged theft from employee benefit plans (count 4).

The factual allegations in support of the mail and wire fraud claim in the second amended complaint are largely unchanged from the first amended complaint, as is the claim itself. Plaintiffs have made two changes, however: they have removed those defendants who did not provide services to any named plaintiffs; and have added a sentence to the claim stating that "[e]ach Individual Plaintiff brings the § 1962(c) claim solely against the § 1962(c) Defendant that issued a repayment demand and forcibly recouped funds from such Plaintiff on behalf of class members who were similarly damaged by that particular Defendant." SAC ¶ 506.

Defendants have moved to dismiss count 3. Even with the additional sentence, defendants argue, plaintiffs still improperly aggregate their various claims into a single count in the complaint against. Defendants also argue that the claim violates Federal Rule of Civil Procedure 10(b), which requires that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" if doing so would promote clarity. Fed. R. Civ. P. 10(b).

The Court agrees that the additional sentence stating that each plaintiff brings his claim only against that defendant that harmed him is insufficient to remedy the problem the Court identified when it dismissed this claim from the first amended complaint. The rest of count 3 refers to the plaintiffs and the defendants in collective terms, and the claim, as pleaded, is a single section 1962(c) claim by all RICO plaintiffs against all RICO defendants. As the Court ruled in its earlier opinion, a plaintiff might have individual section 1962(c) claims against the particular BCBS entities that sought recoupment or withheld payment from them, but they cannot aggregate these claims into a single omnibus claim within the complaint. In the second amended complaint,

the plaintiffs still treat the claims as one collective claim; they apparently seek to represent a single class (the "provider RICO class," SAC ¶ 472) against all the defendants named in that claim; and they appear to seek damages collectively. SAC ¶ 522. The addition of a single sentence purporting to clarify that each individual plaintiff seeks only to recover against the individual defendant that injured him does not correct this larger problem. If nothing else, plaintiffs have run afoul of Rule 10(b) by lumping ostensibly separate claims against separate defendants into a single claim. The Court therefore grants defendants' motion to dismiss the wire and mail fraud section 1962(c) claim (count 3).

Defendants have also moved to dismiss count 4, in which plaintiffs assert a claim under section 1962(c) based on alleged theft from employee benefit plans. This claim also appeared in (and was dismissed from) the first amended complaint. In the second amended complaint, plaintiffs have added a sentence stating that "[e]ach Individual Plaintiff brings this claim solely against the § 1962(c) Defendant that issued a repayment demand and forcibly recouped funds from such Plaintiff on behalf of class members who were similarly damaged by that particular Defendant." SAC ¶ 524. Defendants argue that this claim suffers the same infirmity as count 3 because it aggregates the multiple claims of many individual plaintiffs against many individual defendants. They also raise several other arguments for dismissal of this claim. The Court agrees that this claim has the same problem identified in count 3 and grants the motion to dismiss it on that ground without reaching the other grounds defendants have raised.

## 2. Section 1962(d) claim

In its May 17, 2010 decision granting the motion to dismiss the section 1962(c) claims, the Court noted that plaintiffs had not asserted a claim of a RICO conspiracy under 18 U.S.C. § 1962(d).[2]  *Penn. Chiropractic Ass'n*, 2010 WL 1979569, at *11.  In the second amended complaint, plaintiffs have included a new claim under that provision (count 5).  They allege that "[d]efendants conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the Recoupment Enterprise, through a pattern of racketeering activity.  The conspiracy to violate § 1962(c) constitutes a violation of § 1962(d)."  SAC ¶ 544.

To state a claim for conspiracy under section 1962(d), a plaintiff must allege that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and further agreed that someone would commit at least two predicate acts to accomplish those goals.  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998).  The evidence of an agreement need not be direct; an agreement "can be inferred from the circumstances."  *United States v. Useni*, 516 F.3d 634, 646 (7th Cir. 2008).  If a defendant "by his words or actions, objectively manifest[s] an agreement to participate, directly or indirectly, in the affairs of the enterprise, through the commission of two or more predicate crimes," then that defendant may be liable under section 1962(d).  *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 674 (7th Cir. 2005).

---

[2] "Though [an allegation that defendants' actions were 'inextricably intertwined' with each other] might be sufficient if plaintiffs asserted a claim of RICO conspiracy under 1962(d), it is insufficient to sustain a substantive RICO claim under 1962(c)." *Penn. Chiropractic Ass'n*, 2010 WL 1979569, at *11.

Like the first amended complaint, the second amended complaint includes allegations that defendants worked together to "design and implement a fraudulent scheme to obtain millions of dollars from plaintiffs . . . through improper recoupment demands and forced recoupment payments." SAC ¶ 414. Plaintiffs further allege that BCBSA oversaw the activities of the scheme and coordinated communication among the various BCBS entities. SAC ¶ 416.

The second amended complaint makes no mention, however, of any agreement among the various BCBS entities. Nor does it include any factual allegations from which one could infer that "each defendant agreed to maintain an interest" or "agreed that someone would commit at least two predicate acts." *Goren*, 156 F.3d at 732. The closest the second amended complaint gets to this is an allegation that "through these efforts [to create and run the National Anti Fraud Department,] the Recoupment Enterprise developed a strategy for manipulating the post payment audit or refund process to make false fraud claims against Individual Plaintiffs and Class members, and to make forced recoupments." SAC ¶ 421.

Count 5 states generally that "[d]efendants agreed to commit numerous predicate acts of 'racketeering activity.'" SAC ¶ 545. However, this conclusory assertion of an agreement is unsupported by any factual allegations in the complaint. In their memorandum in opposition to the motion to dismiss, plaintiffs argue that they have alleged "specific factual examples of how Defendants' agreement operated, such as using the National Anti-Fraud Department of the BCBSA ." Pls.' Mem. at 37. Plaintiffs make no allegations, however, about when such an agreement was made, who agreed to engage in two predicate acts, or any other details about the agreement.

9

Neither do plaintiffs offer any factual allegations that support an inference of an agreement from the circumstances. At most, plaintiffs allege that several different defendants engaged in a practice of recouping benefits that had been previously paid to providers and that they were able to communicate through the National Anti-Fraud Department of the umbrella BCBSA organization.

The Court acknowledges that under the notice pleading standard embodied in Federal Rule of Civil Procedure 8(a), a plaintiff is generally not required to make detailed factual allegations to support its claims. The Seventh Circuit recently noted, however, that "the height of the pleading requirement is relative to circumstances." *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009). For complex claims like the RICO claims at issue here, "a fuller set of factual allegations . . . may be necessary to show that the plaintiff's claim is not 'largely groundless.'" *Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008). When, as in this case, discovery would be unusually time-consuming and expensive, "the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Id.* at 803-04.

The Court concludes that the factual allegations in the second amended complaint are too thin to support a claim of a RICO conspiracy. To put it simply, plaintiffs have failed to allege any facts from which one can plausibly infer the existence of an agreement.[3] If a complaint "fail[s] to allege any facts indicating an agreement by

---

[3] It is conceivable that plaintiffs may be able to allege additional and sufficient factual detail now, or it may be that they cannot do so before conducting further discovery on the remaining claims. The Court will leave it to plaintiffs in the first instance to determine whether and when to attempt further development.

the defendants as to which roles they would play in the enterprise or any agreement by the defendants that someone would commit two specific predicate acts on behalf of the enterprise," dismissal is appropriate. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 785 (7th Cir. 1999) (internal quotation omitted). The Court therefore grants defendants' motion to dismiss the RICO conspiracy claim (count 5).

### 3. Count 6

Because the Court has dismissed all of the RICO claims in the second amended complaint, it also dismisses count 6, in which plaintiffs seek declaratory and injunctive relief based on the alleged RICO violations.

## B. Hopkins' ERISA claims

Defendant WellPoint, Inc. has moved to dismiss the ERISA claims asserted by Hopkins, the subscriber plaintiff who intervened in the case in August, for failure to state a claim.[4] Hopkins claims that she received services for which her insurer paid but that two years later she received a bill from the hospital that had treated her, informing her that her insurer had recouped the money it had paid on her claims, making her liable for the balance. The insurance company that handled Hopkins' claims was Community Insurance Company, d/b/a Anthem Blue Cross and Blue Shield (Anthem), an Ohio insurance company that is a wholly-owned subsidiary of WellPoint.

WellPoint argues that it is simply a holding company that owns Anthem. It argues that it cannot be held liable for any ERISA violations by Anthem because parent

---

[4] All defendants also moved separately to dismiss Hopkins' RICO claims (docket no. 259), but because the Court has already dismissed all RICO claims in the second amended complaint, it need not address that motion.

companies are not liable for the liabilities of their subsidiaries unless there is a basis for piercing the corporate veil. WellPoint maintains that Hopkins has not alleged any basis that would allow for piercing the corporate veil in this case. WellPoint's Mem. (docket no. 262) at 4 (citing *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)).

Hopkins argues that WellPoint is judicially estopped from making this argument. In previous motions before this Court, WellPoint has sought to enforce arbitration agreements entered into by its subsidiaries, including several Anthem affiliates. This, Hopkins contends, demonstrates that WellPoint has admitted that it controls Anthem. Hopkins argues that WellPoint cannot seek to step into its subsidiaries' shoes to enforce arbitration agreements when doing so would benefit the company, and then seek to avoid liability on other occasions by claiming it is merely a parent company not liable for the actions of its subsidiaries. Hopkins further argues that her claims sufficiently allege that WellPoint controls Anthem's policies and practices to such an extent that WellPoint should be treated as an ERISA fiduciary and therefore an appropriate defendant in Hopkins' ERISA claims.

### 1. Judicial estoppel

Hopkins argues that WellPoint is estopped from arguing that as a parent company it cannot be held liable for the actions of its subsidiary, Anthem. Earlier in this litigation, defendants moved to compel arbitration with regard to the claims of several plaintiffs who had signed arbitration agreements with their local BCBS entities. Several of the plaintiffs who were required to arbitrate their claims as a result of that motion had arbitration agreements with affiliates of Anthem Blue Cross and Blue Shield, all

12

subsidiaries of WellPoint. They had not named the subsidiaries as defendants; it was WellPoint that sought to enforce the arbitration agreements. In order for WellPoint to seek enforcement of the arbitration agreements of its subsidiaries, Hopkins contends, it had to persuade the Court that it was interchangeable with Anthem and that Anthem was merely a d/b/a for WellPoint. Because defendants prevailed on their motion to compel arbitration with regard to several plaintiffs affiliated with Anthem, Hopkins argues, WellPoint should not be able to argue now that it is a separate entity from the Anthem provider in Ohio that recouped payments it had originally made for Hopkins' medical treatment.

To evaluate whether a party is judicially estopped from making an argument, a court considers three factors: whether the party's later position was "clearly inconsistent" with its earlier position; whether the party against whom the estoppel is asserted succeeded in persuading the court in the earlier proceeding; and whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

Applying these factors, the Court concludes that WellPoint is not judicially estopped from making its argument. In a separate opinion regarding the arbitration issue, also issued on May 17, 2010, the Court ruled that certain plaintiffs must arbitrate their claims based on arbitration agreements they had signed with certain providers, including several Anthem providers. The Court acknowledges that in that decision, it may have been too casual in its references to WellPoint and Anthem. The Court did not, however, make a finding that WellPoint was the same as Anthem for purposes of

13

evaluating ERISA claims, nor did its decision depend on such a finding.  Rather, the Court noted that "a non-signatory to an agreement to arbitrate can compel arbitration when a signatory's claims are grounded in or intertwined with the claims under the agreement that subjects the signatory to arbitration." *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, --- F. Supp. 2d ----, No. 09 C 5619, 2010 WL 1979440 at *9 (N.D. Ill. May 17, 2010).  The Court ruled that plaintiffs who were compelled to arbitrate must do so with regard to all defendants, not just those with whom it had signed arbitration agreements, because "by plaintiffs' own description of their case, their claims against non-signatory defendants are intertwined with their claims against signatory defendants." *Id.*

The Court made no finding about whether WellPoint was a signatory to an arbitration agreement or merely a non-signatory party seeking to enforce such an agreement, but it is clear that the Court did not make an express finding that WellPoint was the same entity as Anthem.  In short, the Court did not adopt WellPoint's allegedly inconsistent position, which is one of the factors a court must examine in determining whether to apply judicial estoppel.  Further, the issues are not the same in both motions.  In the first motion, the issue was the applicability of arbitration agreements, including to claims against non-signatory defendants.  Here, the issue is the status of WellPoint as a parent corporation of a health care provider for purposes of determining who is a proper defendant under ERISA.  The Court concludes that WellPoint is not estopped from arguing that it is insulated from liability as a parent company.

2. **WellPoint as defendant**

The Court turns next to the substance of WellPoint's argument:  its contention

14

that as a parent company, it is not liable for any ERISA violations committed by Anthem.

The parties' arguments about whether WellPoint may be named as a defendant for Hopkins' ERISA claims are like ships passing in the night. WellPoint maintains that it can be liable only if Hopkins has grounds for piercing the corporate veil, which it argues she does not. Hopkins ignores the veil-piercing discussion and argues that WellPoint's actions show that it is an ERISA fiduciary with regard to the Anthem plans and therefore an appropriate defendant.

Hopkins has cited no case or statutory provision that stands for the proposition that mere status as an ERISA fiduciary of a plan makes one an appropriate defendant in an action, like Hopkins', that arises under section 532(a) of ERISA, 11 U.S.C. § 1132(a). Section 532(a) says that a plain participant like Hopkins may sue for various types of relief, but it does not say that a participant may sue all plan fiduciaries simply by virtue of that status.[5] Hopkins' claim amounts to a claim for improper denial of benefits; to be a proper defendant the fiduciary must have, at a minimum, played some role in the denial.

That does not end the inquiry, however. As the Court noted in its May 17 decision on the motion to dismiss the first amended complaint, the Seventh Circuit has permitted suits against ERISA administrators and insurers (not just the plans themselves) when such entities are "closely intertwined" with the plan itself. The Court

---

[5] A separate provision of ERISA does establish that actions may be brought against ERISA fiduciaries for breach of fiduciary duty, but Hopkins does not seek relief under that section. 29 U.S.C. § 1132(l).

15

ruled that the plaintiffs in this case could proceed against the BCBS entities because plaintiffs alleged that the BCBS entities had the sole authority to make the decisions that gave rise to plaintiffs' claims and thus the BCBS entities were intertwined with the plans.  In their discussions of why the Court should treat WellPoint as an ERISA fiduciary, plaintiffs argue that WellPoint exercised discretionary authority respecting management of the Anthem plan and therefore should be treated as controlling Anthem.  The Court therefore proceeds to evaluate these allegations to determine whether WellPoint is intertwined with the plan and played some role with the challenged benefit denial such that it may be an appropriate defendant on Hopkins' claim.

Hopkins argues in her memorandum in opposition to the motion to dismiss that WellPoint "controls Anthem's operations with regard to the management of its health care plans," Pls.' Mem. at 7.  She is substantially more circumspect in the complaint itself, however, stating only that WellPoint is "the nation's largest health benefit's company" and that it "insures or administers plans" in several states, including Ohio.  SAC ¶ 76.  She further alleges that "WellPoint *or its affiliates* pursued post-payment audits and improper recoupments," but she does not state which entity was in charge of decision-making with regard to recoupments and audits within Ohio.  *Id*. (emphasis added).  There are no other factual allegations in the complaint that clarify the relationship or suggest that WellPoint had total control over Anthem in Ohio or other involvement in the challenged conduct.

Plaintiffs cannot amend their complaint through their brief in opposition to the motion to dismiss.  *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).  The Court therefore limits its analysis to the allegations actually contained in the second

amended complaint. The Court concludes that those allegations are insufficient to support a claim that WellPoint was the primary decision-maker or was otherwise intertwined with Anthem in Ohio, where the damage to Hopkins allegedly occurred.

The Court reaches the same conclusion when it considers WellPoint's arguments about a parent company's liability for a subsidiary's actions. WellPoint could be an appropriate defendant as the parent company of its subsidiary Anthem if there were a justification for piercing the corporate veil. Hopkins has made no argument in this regard, relying instead on her assertion that WellPoint is an ERISA fiduciary and thus an appropriate defendant. Based on case law from both Ohio and the Seventh Circuit, a parent corporation must have complete control over the subsidiary in order for veil-piercing to be appropriate. *See, e.g., Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, 306 Fed. Appx. 273, 280 (6th Cir. 2009) (applying Ohio law); *United States v. MYR Group, Inc.*, 361 F.3d 364 (7th Cir. 2004). Because the Court has determined that Hopkins has not alleged that WellPoint exercised complete control over Anthem, this case, at least in its current form, does not present a situation where the parent company may be sued for the alleged wrongs of its subsidiary.

The Court acknowledges, however, that its earlier decisions may have been confusing in treating Anthem and WellPoint as interchangeable, and did not put plaintiffs on adequate notice that WellPoint may not be the appropriate defendant for some of their claims. The Court therefore gives Hopkins leave to amend her complaint either to allege with more specificity the relationship between WellPoint and the Ohio Anthem entity or WellPoint's direct involvement in the alleged conduct, and/or to name the appropriate Anthem entity as a defendant. The Court also notes that its ruling does

17

not alter its earlier denial of the motion to dismiss the ERISA claims of other plaintiffs in the first amended complaint, including their claims against WellPoint.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motion to dismiss (docket no. 226). Plaintiffs RICO claims (counts 3, 4, 5, and 6) are dismissed for failure to state a claim. Plaintiff Hopkins' claims against defendant WellPoint in counts 1, 2, 3, and 7 of the second amended complaint are likewise dismissed.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 6, 2010