# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PENNSYLVANIA CHIROPRACTIC ASSOCIATION, et al., | ) ) ) |
| Plaintiffs, | ) ) Case No. 09 C 5619 |
| vs. | ) ) ) |
| BLUE CROSS BLUE SHIELD ASSOCIATION, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are chiropractic physicians and an occupational therapist who have provided services to members of health care plans insured or administered by the defendants, professional associations whose members are chiropractic physicians, a residential treatment facility, and one subscriber to a health care plan.[1] The defendants are Blue Cross and Blue Shield of America (BCBSA) and individual Blue Cross and Blue Shield entities (BCBS entities). BCBSA is a national umbrella organization that facilitates the activities of individual BCBS entities. Individual BCBS entities insure and administer health care plans to Blue Cross and Blue Shield customers (BCBS insureds) in various regions.

---

[1] The Court assumes familiarity with the plaintiffs' allegations in this case and will summarize them only briefly here. A more detailed recounting of the plaintiffs' allegations can be found in the Court's May 17, 2010 decision. *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

Plaintiffs allege that defendants improperly took money belonging to plaintiffs. They allege that defendants would initially reimburse plaintiffs for services they provided to BCBS insureds and then sometime afterward would make a false or fraudulent determination that the payments had been in error and would demand repayment from plaintiffs. If plaintiffs refused to return the payment as demanded, defendants would force recoupment by withholding payment on other, unrelated claims for services plaintiffs provided to other BCBS insureds. The subscriber plaintiff, Katherine Hopkins, who recently intervened in the case, alleges that she was held liable for portions of a bill for services she received at a hospital after her insurer demanded recoupment from the chiropractic provider who treated her.

Plaintiffs filed their first amended complaint on November 16, 2009. In it, plaintiffs alleged that defendants' actions violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Employee Retirement Income Security Act (ERISA), as well as Florida state law. On May 17, 2010, the Court granted a motion by defendants to dismiss the RICO claims for failure to state a claim.

Plaintiffs filed a second amended complaint on June 29, 2010. The second amended complaint reasserted the RICO and ERISA claims from the first amended complaint. Plaintiffs added a claim of RICO conspiracy and an ERISA claim on behalf of Hopkins and the putative class of subscribers she represents. The Court granted a motion by defendants to dismiss the RICO claims and Hopkins' ERISA claim against WellPoint, Inc., a BCBS entity.

On July 27, 2010, defendants filed a motion to dismiss the second amended complaint on various grounds pursuant to Federal Rule of Civil Procedure 12(b)(6).

This decision addresses defendants' motion to dismiss the claims asserted by plaintiff Dr. Peri Dwyer and associational plaintiffs Florida Chiropractic Association (FCA) and International Chiropractors Association (ICA), or, in the alternative, to compel arbitration. For the reasons stated below, the Court denies the motions.

## Discussion

**1.  Motion regarding Dwyer and FCA**

Defendants move to dismiss Dwyer and FCA's claims, or, in the alternative, compel arbitration of those claims, on the ground that Dwyer and FCA members entered into mandatory arbitration agreements with defendant Blue Cross and Blue Shield of Florida, Inc. (BCBSF). In response, Dwyer and FCA assert that defendants forfeited their right to arbitration.

The Federal Arbitration Act (FAA) declares that as a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a presumption in favor of arbitrability: "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

"A party may waive a contractual right to arbitrate expressly or implicitly." *Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 562 (7th Cir. 2008) (citation omitted). To determine whether a party has waived arbitration, courts "examine the totality of the circumstances and determine whether . . . the party . . . has acted inconsistently with the right to arbitrate." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir.

2004) (internal citation omitted). "Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision – 'did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'" *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (emphasis removed) (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)).

Plaintiffs assert that defendants waived their right to arbitration by waiting nearly eight months to request arbitration and by, in the interim, filing comprehensive motions to dismiss Dwyer and FCA's claims on the merits. The Court first considers the issue of defendants' delay.

"[L]engthy delay can lead to an implicit waiver of arbitration." *Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) (citation omitted). In *Cabinetree*, the Seventh Circuit held that a party waived its right to arbitrate when it removed a case to federal court and waited eight months before requesting arbitration. *Cabinetree of Wis., Inc.*, 50 F.3d at 391. The Court reasoned:

> There is no plausible interpretation of the reason for the delay except that [defendant] initially decided to litigate its dispute with [plaintiff] in the federal district court, and that later, . . . [defendant] changed its mind and decided it would be better off in arbitration. Neither in its briefs nor at oral argument did [defendant] give any reason for its delay in filing the stay besides needing time "to weigh its options." That is the worst possible reason for delay. It amounts to saying that [defendant] wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration.
>
> Selection of a forum in which to resolve legal disputes should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution. Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of

4

> them to move promptly for arbitration is powerful evidence that they made their election – against arbitration. Except in extraordinary circumstances not here presented, they should be bound by their election.

*Id.*

As in *Cabinetree*, defendants' delay provides powerful evidence that they elected to proceed in a judicial forum. The first amended complaint added Dwyer and FCA as plaintiffs on November 16, 2009. Four of the other defendants moved this Court to compel additional plaintiffs to arbitrate their claims as early as December 31, 2009. Nonetheless, defendants waited nearly eight months after the filing of the first amended complaint to seek arbitration of Dwyer and FCA's claims.

BCBSF acknowledges that it was aware of its right to pursue arbitration by December 2009 and contends that it waited until July 2010 to file the present motion because of "uncertainty" in the law regarding class arbitration. Defs.' Reply Br. in Support of Mot. to Dismiss or Alt. Compel Arb. at 5-6, 9. In explanation, BCBSF cites the Ninth Circuit's decision in *Shroyer v. New Cingular Wireless Service*, 498 F.3d 976 (9th Cir. 2007), which held that a class arbitration waiver provision was unconscionable under California law and that the FAA did not render invalid a court's refusal to enforce the provision. *Id.* at 992-93. BCBSF claims to have filed the present motion after the Supreme Court clarified in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775 (emphasis in original).

As a preliminary matter, this Court disagrees that Seventh Circuit law on the availability of class arbitrations was uncertain prior to *Stolt-Nielsen*. To the contrary, it

5

was quite clear, and it was favorable to the defendants.  *See Champ v. Seigel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995) (holding that "section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter").  More importantly, anticipation of favorable new legal authority does not authorize a party to delay the decision of whether to pursue a judicial or arbitral forum.  Instead, the party must "make the earliest feasible determination of whether to proceed judicially or by arbitration," *Ernst & Young LLP*, 304 F.3d at 756, given the state of the law when the suit is filed.

Defendants' citation to *Cabinetree* is unavailing.  In *Cabinetree*, the Seventh Circuit identified several circumstances that may render a case "abnormal" such that a party's invocation of judicial process should not be construed as a waiver.  *Id.*  First, a party may have legitimate "doubts about arbitrability, and fear that should the doubts be resolved adversely the statute of limitations might have run."  *Id.*  Second, "[t]he shape of the case might so alter as a result of unexpected developments during discovery or otherwise."  *Id.*  Neither circumstance applies here.  Defendants acknowledge repeatedly that they were aware of their right to pursue arbitration by December 2009, and they do not cite any unexpected developments to justify their delay.

The Court turns next to the impact of defendants' filing of motions asking this Court to dismiss the claims of the plaintiffs, including Dwyer and FCA.  The Seventh Circuit "has explicitly held that simply moving to dismiss a case does not waive one's right to arbitrate."  *Halim*, 516 F.3d at 562.  Courts nonetheless "do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning the suit in favor of arbitration."  *Welborn Clinic*, 301 F.3d at 637.  Accordingly, the

Seventh Circuit has held that the filing of a dispositive motion may support a finding of waiver. *See, e.g.*, *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589-91 (7th Cir. 1992) (defendant waived arbitration by waiting ten months to request arbitration and filing a motion to dismiss the case on the merits because "[a] party may not normally submit a claim for resolution on one forum and then, when it is disappointed with the result in that forum, seek another forum"); *Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 747 (7th Cir. 2007) (defendant's "motion for summary judgment, which said nothing about venue or arbitration, was an implicit waiver of any argument for dismissing on either of those grounds").

The Court agrees with Dwyer and FCA that defendants "acted inconsistently with the right to arbitrate" by asking the Court to dismiss Dwyer and FCA's claims on the merits. Defendants filed a motion to dismiss Dwyer and FCA's RICO and ERISA claims and sought to dismiss FCA for lack of standing. BCBSF also sought dismissal of plaintiffs' Florida law-based claims. It was only after this Court returned unfavorable rulings on defendants' motions to dismiss the ERISA and Florida law claims that defendants filed the present motion. The Court concludes that this conduct, in combination with defendants' delay, amounted to a waiver of their right to arbitrate.

The cases defendants cite in support of their position are distinguishable. First, in *Leff v. Deutsche Bank A.G.*, No. 08 C 733, 2009 WL 1380819 (N.D. Ill. May 14, 2009), the court held that litigants did not waive arbitration when they moved to dismiss a case "prior to receiving the discovery that alerted them to the arbitration agreements." *Id.* at *3. In this case, by contrast, defendants admit that they were aware of the right to

7

arbitrate at the time they filed their motions to dismiss. Second, in *National Loan Exchange, Inc. v. LR Receivables Corp.*, No. 08 C 527, 2009 WL 466459 (S.D. Ill. Feb. 25, 2009), the court held that defendants did not waive arbitration when they filed a "perfunctory, easily disposed-of challenge to the merits of Plaintiffs' claims" and sought to compel arbitration within several months of receiving service of the lawsuit. *Id.* at *10. In this case, by contrast, defendants' motions to dismiss were comprehensive rather than "perfunctory," and they waited nearly eight months before requesting arbitration.

Defendants argue that they did not waive the right to arbitrate Dwyer and FCA's claims because no prejudice to Dwyer and FCA resulted from their actions. In support, they cite *Horwitz, Schakner & Associates, Inc. v. Soleski*, No. 87 C 9789, 1989 WL 96511 (N.D. Ill. Aug. 11, 1989), for the proposition that the filing of a motion to dismiss does not result in waiver when it causes no prejudice to the opposing party. That case, however, was decided, prior to the Seventh Circuit's decision in *St. Mary's Medical Center of Evansville, Inc.*, which clarified that "where it is clear that a party has foregone its right to arbitrate, a court may find waiver even if that decision did not prejudice the non-defaulting party." *St. Mary's Med. Ctr. of Evansville, Inc.*, 969 F.2d at 590; *see also Cabinetree of Wis., Inc.*, 50 F.3d at 390 ("To establish a waiver of a contractual right to arbitrate, a party need not show that it would be prejudiced if the stay were granted and arbitration ensued.").

For these reasons, the Court denies defendants' motion to dismiss or compel arbitration of Dwyer and FCA's claims.

**2. Motion regarding ICA**

ICA is a professional association representing a membership of chiropractors. Defendants argue that ICA lacks standing to sue under Article III of the United States Constitution and, in the alternative, move to compel arbitration of ICA's claims.

The "case or controversy" standing requirement under Article III, section 2 of the Constitution requires a plaintiff to establish a cognizable injury that is causally related to the alleged conduct of the defendant and redressable by judicial action. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). An association may satisfy these elements by asserting claims that arise from injuries it sustained itself. *See, e.g.*, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 n.11 (1979). Alternatively, an association may pursue claims as a representative of its members if the members would otherwise have standing to sue in their own right; the interests the association seeks to protect are germane to the organization's purpose; and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). In this case, ICA asserts standing solely as a representative of its members.

The parties do not dispute that ICA satisfies the first two elements of the *Hunt* test. Defendants argue, however, that ICA fails to satisfy the third element of the test because its claims require the participation of individual members in the lawsuit. Specifically, defendants contend that some of ICA's members signed provider agreements with mandatory arbitration provisions and that to adjudicate ICA's claims, the Court will have to determine which members are bound by those provisions.

9

ICA counters that enforcement of any mandatory arbitration provisions signed by its members would violate an ERISA regulation, 29 C.F.R. § 2560.503-1. Subsection (c) of that regulation states:

> The claims procedures of a group health plan will be deemed to be reasonable only if . . .
>
> (4) The claims procedures do not contain any provision for the mandatory arbitration of adverse benefit determinations, except to the extent that the plan or procedures provide that:
>
> (I) The arbitration is conducted as one of the two appeals described in paragraph (c)(2) of this section and in accordance with the requirements applicable to such appeals; and
>
> (ii) The claimant is not precluded from challenging the decision under section 502(a) of the Act or other applicable law.

*Id.* § 2560.503-1(c).

The regulation applies to "employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries (hereinafter referred to as claimants)." 29 C.F.R. § 2560.503-1(a); *see also* 29 U.S.C. § 1132(a)(1)(B). A "beneficiary" is "a person designated by a participant . . . who is or may become entitled to a benefit" under the plan. 29 U.S.C. § 1002(8). A health care provider satisfies the definition of a "beneficiary" if the provider has obtained a valid and enforceable assignment from a plan participant. *DeBartolo v. Health & Welfare Dept. of Const. & Gen. Laborers' Dist. Council*, No. 09 C 0039, 2010 WL 3273922, at *3 (N.D. Ill. Aug. 17, 2010); *see also Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). ICA alleges that its member-providers received assignments from plan participants and that they thus qualify as "beneficiaries" for purposes of the regulation.

Defendants have failed to respond this argument. "The failure to develop an argument constitutes a waiver." *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (citing *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004)); *see also Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) (noting that it is not the duty of the courts to construct parties' legal arguments for them). Defendants have thus forfeited any argument that the arbitration provisions are enforceable.

For this reason, adjudication of ICA's claims will not require the individual participation of its members. The Court will not have to determine which ICA members are bound by arbitration provisions in provider agreements, because any such arbitration provisions are unenforceable in the present circumstances under section 2560.503-1(c). ICA therefore satisfies the third element of the *Hunt* test and has standing to bring its claims.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion to dismiss or compel arbitration as to plaintiffs Dwyer, FCA, and ICA [docket no. 226].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 20, 2011