IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PENNSYLVANIA CHIROPRACTIC ASSOCIATION, NEW YORK CHIROPRACTIC COUNCIL, et al., | )<br>)<br>) |
| Plaintiffs, | )     Case No. 09 C 5619 |
| vs. | )<br>) |
| BLUE CROSS BLUE SHIELD ASSOCIATION, et al., | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are chiropractic physicians, an occupational therapist, and a clinical social worker/trauma specialist who have provided services to members of health care plans insured or administered by the defendants; professional associations whose members are chiropractic physicians; a residential treatment facility; and a subscriber to a health care plan.[1] The defendants are Blue Cross and Blue Shield of America (BCBSA) and individual Blue Cross and Blue Shield entities (BCBS entities). BCBSA is a national umbrella organization that facilitates the activities of individual BCBS entities. Individual BCBS entities insure and administer health care

---

[1] The Court assumes familiarity with the plaintiffs' allegations in this case and will summarize them only briefly here. A more detailed recounting of the plaintiffs' allegations can be found in the Court's May 17, 2010 decision. *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

1

plans to Blue Cross and Blue Shield customers (BCBS insureds) in various regions.

Plaintiffs allege that defendants improperly took money belonging to plaintiffs. They allege that defendants would initially reimburse plaintiffs for services they provided to BCBS insureds and then sometime afterward would make a false or fraudulent determination that the payments had been in error and would demand repayment from plaintiffs. If plaintiffs refused to return the payment as demanded, defendants would force recoupment by withholding payment on other, unrelated claims for services plaintiffs provided to other BCBS insureds. The subscriber plaintiff, Katherine Hopkins, alleges that she was held liable for portions of a bill for services she received at a hospital after her insurer demanded recoupment from the chiropractic provider who treated her.

Plaintiffs filed their first amended complaint on November 16, 2009. In the complaint, plaintiffs alleged that defendants' actions violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Employee Retirement Income Security Act (ERISA), as well as state law. On May 17, 2010, the Court granted a motion by defendants to dismiss the RICO claims for failure to state a claim.

Plaintiffs filed a second amended complaint on June 29, 2010. The second amended complaint reasserted the RICO and ERISA claims from the first amended complaint. Plaintiffs added a claim of RICO conspiracy and an ERISA claim on behalf of Hopkins and the putative class of subscribers she represents. The Court dismissed the RICO claims as well as Hopkins' ERISA claim against WellPoint, Inc., a BCBS entity.

Plaintiffs filed a third amended complaint on January 20, 2011 and a corrected

third amended complaint on January 27, 2011. The corrected third amended complaint amended Hopkins' ERISA claims and added defendants with regard to those claims. With leave from the Court, plaintiffs filed a fourth amended complaint on February 17, 2011, in which they added plaintiff Susanna Wood, added defendants that are wholly-owned subsidiaries of WellPoint, Inc., altered the proposed class definition, and added further detail regarding particular recoupments.

On July 27, 2010, defendant The Regence Group (Regence) filed counterclaims against plaintiff Larry Miggins and a third party complaint against Miggins & Miggins, Inc. (together, Miggins), alleging breach of contract and unjust enrichment. Regence's claims arose from its provider agreement with Miggins. Regence alleged that Miggins had failed to charge and make reasonable attempts to collect coinsurance payments, submitted claims and obtained reimbursement using incorrect diagnosis codes and modifiers, and submitted claims and obtained reimbursement for services not "medically necessary" as defined in the provider agreement and otherwise not covered under patients' subscriber agreements.

On January 21, 2011, the Court granted a motion by Miggins to dismiss the counterclaims and third party claims. The Court reasoned:

> 4. Even after *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and its progeny, federal courts follow a notice-pleading regime under which a plaintiff (here, Regence) need provide only enough detail to give the defendant (here, Miggins) fair notice of what the claim is and the grounds on which it rests. *See, e.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). In complex cases, however, a fuller set of factual allegations may be necessary. *See, e.g.*, *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).
>
> 5. Under ordinary circumstances, the Court likely would not require a party making a breach of contract claim to identify the contractual terms on which it relies; alleging the nature of the breach would be enough. In this case, however,

> Regence's claim is premised not on one or a small number of contracts. Rather, it relies in significant part on a large number of underlying contracts - the subscriber agreements. And, as the Court has indicated, the claim may be preempted in whole or in part, depending on the nature of the alleged breaches of the provider agreement and what underlying subscriber agreements are involved. These factors together require further detail before the Court can conclude whether, and to what extent, Regence has stated a non-preempted claim.
>
> 6. The same considerations apply to Regence's unjust enrichment claim, which likewise references patient subscriber agreements.
>
> 7. For these reasons, the Court grants Miggins' motion to dismiss Regence's counterclaim for failure to state a claim. . . . In any amended pleading, Regence will be required to identify the particular provisions in the provider agreement that it contends Miggins breached, as well as the underlying subscriber agreements at issue. This will enable Miggins to assess, and the Court to determine if asked, the extent to which Regence's claim is preempted by ERISA.

*Pa. Chiropractic Ass'n v. BCBS Ass'n*, No. 09 C 5619, 2011 WL 219828, at *1-2 (N.D. Ill. Jan. 21, 2011).

Regence subsequently filed an amended counterclaim and third party complaint in which it reasserted its claims relating to Miggins' alleged failure to collect coinsurance payments from patients and abandoned all other claims against Miggins. Miggins has moved to dismiss the amended counterclaim and third party complaint.

## Discussion

Miggins moves to dismiss Regence's claims on two grounds: ERISA preemption and failure to state a claim. The Court addresses each ground in turn.

**A.  ERISA preemption**

ERISA provides for two types of preemption: complete preemption under section 502(e) and conflict, or express, preemption under section 514. *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Varco*, 338 F.3d 680, 688

4

n.5 (7th Cir. 2003) (citation omitted).  Miggins contends that Regence's claims are expressly preempted under section 514(a).

Section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The touchstone of the express preemption inquiry is congressional intent. *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 774 (7th Cir. 2002).  Express preemption claims thus turn on the text of section 514(a) and, if necessary, its structure and purpose.  *Id.*  If ERISA expressly preempts a state law cause of action, the state law claim must be dismissed.

The Supreme Court has held that "[a] state law 'relates to' a benefit plan in the normal sense of the phrase, if it has connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (citing *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)).  The Court has acknowledged the difficulty of interpreting the "relates to" language, however, stating that courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995).

ERISA's purpose is to "to promote the interests of employees and their beneficiaries in employee benefit plans, . . . and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted).  Congress enacted section 514(a) to "ensure

that plans and plan sponsors would be subject to a uniform body of benefits law."
*Travelers Ins. Co.*, 514 U.S. at 656-57 (internal quotation marks and citation omitted).

The Supreme Court has stated that a state law has a "connection with" or "reference to" an employee benefit plan if:

> it (1) "mandates employee benefit structures or their administration"; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA.

*Trustees of the AFTRA Health Fund*, 303 F.3d at 774 (internal punctuation marks and citations omitted). A state law acts as an alternative enforcement mechanism to ERISA if the plan's existence "is a critical element of a state-law cause of action," such that "the state law at issue relie[s], for its very operation, on a direct and unequivocal nexus with ERISA plans." *Id.* at 776, 778 (internal quotation marks and citations omitted).

When a claim implicates a traditional area of state regulation, the defendant bears "the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *Id.* at 775. The "mere fact that States have traditionally regulated" an area, however, does not insulate a claim from conflict preemption "if allowing the claim to go forward would thwart the statutory objectives of ERISA." *Id.* (citation omitted).

As the Court explained earlier, Regence's breach of contract and unjust enrichment claims assert that Miggins failed to charge and make reasonable attempts to collect coinsurance payments. The Seventh Circuit has not yet considered whether ERISA expressly preempts an insurer's claims against a provider for failing to charge and collect coinsurance in accordance with a provider contract. Other courts have

recognized, however, that ERISA typically does not preempt "state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries and the beneficiaries." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1469 (4th Cir. 1996) (internal punctuation marks and citation omitted); *see also Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co.*, 215 F.3d 136, 141 (1st Cir. 2000); *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521-22 (9th Cir. 1993); *Airparts Co., Inc. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir. 1994). For that reason, courts have held that ERISA does not preempt state law claims by traditional ERISA entities against third parties, and vice versa. *See, e.g.*, *LeBlanc v. Cahill*, 153 F.3d 134, 138 (4th Cir. 1998) (ERISA does not preempt "a state common law cause of action for fraud, pressed by a pension plan subject to ERISA, against a third party who is neither a fiduciary nor a party in interest with respect to the plan"); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990); *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176-77 (5th Cir. 1994).

In *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999), the Ninth Circuit held that ERISA did not expressly preempt claims by health care providers against an insurance company for breach of provider agreements and violation of implied covenants associated with those agreements. *Id.* at 1052-54. The court reasoned that the providers' claims did not "relate to" any ERISA plans because they did not involve construction of the terms of ERISA plans; did not encroach upon the relationship between beneficiaries and plans;

7

and concerned the insurer's obligations to participating physicians rather than as a plan fiduciary. *Id.* The court also determined that Congress's purpose in enacting the preemption clause was not implicated because the claims arose from independent contracts and because the state law did not "create an alternative enforcement mechanism for securing benefits under the terms of ERISA-covered plans." *Id.* at 1054.

This Court reaches the same conclusion regarding Regence's coinsurance claims against Miggins. First, the claims do not require construction of the terms of ERISA plans. Instead, the claims arise from a provider agreement and do not rely on a direct and unequivocal nexus with any ERISA plans. Regence's pursuit of these claims therefore would not disrupt the national uniformity Congress intended with respect to ERISA plans. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). Second, the claims do not encroach upon the relationship between traditional ERISA entities. Assuming that Regence acted as a plan fiduciary, *see* 29 U.S.C. § 1002(21)(A), the counterclaim defendants, as health care providers, are not traditional ERISA entities. *See, e.g.*, *Memorial Hosp. Sys.*, 904 F.2d at 250 (hospitals and providers are not traditional ERISA plan entities unless they act as assignees of benefits). Regence's claims concern the obligations of providers to a plan insurer, rather than a fiduciary's obligations to plan participants and beneficiaries. The Court concludes that Regence's claims involving coinsurance do not "relate to" ERISA plans such that they are expressly preempted under section 514(a).

The Court draws additional support from *Horizon Blue Cross Blue Shield of New Jersey v. East Brunswick Surgery Center*, 623 F. Supp. 2d 568 (D.N.J. 2009). There, a

district court considered whether ERISA preempted the state law claims of an insurer against a provider and related entities. *Id.* at 571. The provider had formerly entered into a contract with the insurer to treat the insurer's subscribers as a "participating" provider under terms set by the contract. *Id.* The insurer alleged that, among other things, the provider waived coinsurance and deductible payments after terminating the provider agreement to induce the insurer's subscribers to use its services. *Id.* at 571-72. The court held that ERISA did not completely preempt the claims, reasoning:

> As a purely factual matter, there is an appreciable difference between a health provider *seeking* reimbursement on behalf of plan participants based on ERISA benefit plans as opposed to a health care plan, in sole furtherance of its own business interests, seeking to protect its contractual agreements with in-network providers. . . . Here, what is critical to Plaintiff's claims is not what benefits the plan participants were entitled to under their ERISA plans but the relationship between Plaintiff and its out-of-network and in-network providers. . . . In pursuing these claims, Plaintiff does not seek to deny or control benefits as a fiduciary but rather, to protect the integrity of its two-tiered provider system.

*Id.* at 577. Though *Horizon* was decided based on complete preemption rather than express preemption, the Court finds its analysis applicable to the claims in this case. The Court concludes that ERISA does not expressly preempt Regence's breach of contract and unjust enrichment claims involving coinsurance payments.

**B. Failure to state a claim**

Miggins also moves to dismiss Regence's claims for failure to state a claim. When considering a motion to dismiss a complaint, the Court accepts the facts alleged in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the

9

pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). Rule 8(a) imposes three requirements:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The amount of detail required in a pleading depends on the context of the claim. *Id.* In complex cases, "a fuller set of factual allegations . . . may be necessary to show that the plaintiff's claim is not largely groundless." *Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008) (internal quotation marks and citation omitted); *see also Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009) (claims alleging "a vast, encompassing conspiracy" require increased factual specificity). In contrast, a "straight-forward breach of contract claim" requires a lower degree of factual specificity to state a plausible claim for relief. *Bilek v. Am. Home Mortg. Servicing*, No. 07 C 4147, 2010 WL 2836976, at *3 (N.D. Ill. July 15, 2010).

Miggins first argues that Regence fails to plead a sufficient factual basis for its claims. Regence's factual allegations regarding the coinsurance payments consist of the following:

> 7. Larry Miggins and Miggins & Miggins have breached the Chiropractor Agreement by failing to charge and failing to make reasonable attempts to collect coinsurance, deductibles, and/or co-payments from patients.
>
> 8. For example, on several occasions in or around June 2009, an individual enrolled in a health benefit plan insured by Regence visiting Miggins & Miggin's [sic] office for treatment. On information and belief, Miggins & Miggins failed to

> collect the proper co-payment from this individual.
>
> 9. A different individual enrolled in a health benefit plan insured by Regence visited Miggins & MIggins's offices for treatment on 26 different dates of service between January 14, 2009, and April 8, 2009. On information and belief, for all 26 dates of services, Miggins & Miggins collected only $50.00 from this individual - less than one sixth of the amount that Miggins & Miggins should have collected in co-payments alone.
>
> 10. Through the actions described above, Larry Miggins and Miggins & Miggins have breached the Chiropractor Agreement . . .
>
> 11. . . . To the extent Larry Miggins and Miggins & Miggins have failed to charge or collect those amounts as required, Larry Miggins and Miggins & Miggins have been unjustly enriched by Regence.

As Miggins observes, Regence fails to allege, for example, the number of patients implicated, the patients' names, or their dates of service.

The Court defers determination of whether to dismiss Regence's claims on this basis and directs Regence to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Regence's counterclaim gives give two "examples" but provides no indication of whether the universe of patients or visits at issue is two, twenty, or two thousand. Nor does it indicate the time frame involved. It is likely, depending on the number of patients and visits at issue, that the counterclaim will involve significant factual complexity. Given these factors, the Court is unwilling to require Miggins to plow ahead without having a better sense of the magnitude of what it is claimed to have done.

The more definite statement that Regence files needs to provide a far better indication of the number of patients and patient visits involved and the time frame(s) at issue. The Court defers ruling on this aspect of the motion to dismiss until it sees the more definite statement that Regence files.

As a second basis for dismissal, Miggins contends that Regence has failed to plead proper claims for unjust enrichment in the alternative to its contract claims. The Court disagrees. "[A] party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2002); *see also Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*, No. 08 C 5556, 2009 WL 981384, at *4 (N.D. Ill. Apr. 13, 2009) ("Until the Court determines that the parties entered into a valid contract, . . . [plaintiff] may plead breach of contract and unjust enrichment in the alternative."). The Court therefore declines to dismiss the unjust enrichment claim on this ground.

## Conclusion

For the foregoing reasons, the Court denies in part the counterclaim defendants' motion to dismiss the counterclaim of The Regence Group [docket no. 381]. The Court orders Regence to file, by May 12, 2011, a second amended counterclaim and third party complaint containing a more definite statement as described in this decision. The motion is entered and continued to May 19, 2011, at 9:30 a.m. Only counsel for Regence and Miggins need appear on that date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 28, 2011