**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA CHIROPRACTIC ASSOCIATION, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **Case No. 09 C 5619** |
| | ) | |
| **BLUE CROSS BLUE SHIELD ASSOCIATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are chiropractic physicians, an occupational therapist, and a clinical social worker/trauma specialist who have provided services to members of health care plans insured or administered by the defendants; professional associations whose members are chiropractic physicians; a residential treatment facility; and a subscriber to a health care plan.[1] The defendants are Blue Cross and Blue Shield of America (BCBSA) and individual Blue Cross and Blue Shield entities (BCBS entities). BCBSA is a national umbrella organization that facilitates the activities of individual BCBS entities. Individual BCBS entities insure and administer health care

---

[1] The Court assumes familiarity with the plaintiffs' allegations in this case and will summarize them only briefly here. A more detailed recounting of the plaintiffs' allegations can be found in the Court's May 17, 2010 decision. *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

plans to Blue Cross and Blue Shield customers (BCBS insureds) in various regions.

Plaintiffs allege that defendants improperly took money belonging to plaintiffs. They allege that defendants would initially reimburse the provider plaintiffs for medical services they provided to BCBS insureds. Sometime afterward, plaintiffs allege, defendants would make a false or fraudulent determination that the payments had been in error. Defendants then would demand that individual plaintiffs repay the supposedly overpaid amounts immediately. If plaintiffs refused to return the payments, defendants would forcibly recoup the amounts they sought by withholding payment on other, unrelated claims for services plaintiffs provided to other BCBS insureds. The subscriber plaintiff, Katherine Hopkins, alleges that she was held liable for portions of a bill for services she received at Miami Valley Hospital after her insurer, Anthem Ohio, demanded recoupment from the chiropractic provider who treated her.

Plaintiffs allege further that when defendants made these repayment demands, they typically did not provide adequate information regarding available review procedures. Plaintiffs allege that defendants sometimes failed to offer any appeal process at all. When an appeal process was available, plaintiffs allege, defendants refused to provide details about which patients, claims, and plans were claimed to be the subject of overpayment or "effectively ignored" plaintiffs' appeals. Fourth Am. Compl. ¶ 18. Plaintiffs contend that this conduct deprived them of their right to a "full and fair review" under section 503 of ERISA, 29 U.S.C. § 1133.

Plaintiffs sue on behalf of themselves and, in the case of association plaintiffs, on behalf of their members. They also sue on behalf of a putative class of similarly-situated individual plaintiffs.

Plaintiffs filed their first amended complaint on November 16, 2009. In that complaint, plaintiffs alleged that defendants' actions violated the Racketeer Influenced and Corrupt Organizations Act (RICO), the Employee Retirement Income Security Act (ERISA), and Florida law. On May 17, 2010, the Court granted a motion by defendants to dismiss the RICO claims for failure to state a claim. *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

Plaintiffs filed a second amended complaint on June 29, 2010. The second amended complaint reasserted the RICO and ERISA claims from the first amended complaint. Plaintiffs added a claim of RICO conspiracy and an ERISA claim on behalf of Hopkins and the putative class of subscribers she represents. The Court dismissed the RICO claims as well as Hopkins' ERISA claim against WellPoint, Inc., a BCBS entity. *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 3940694 (N.D. Ill. Oct. 6, 2010).

Plaintiffs filed a third amended complaint on January 20, 2011 and a corrected third amended complaint on January 27, 2011. The corrected third amended complaint amended Hopkins' ERISA claims and added defendants with regard to those claims.

With leave from the Court, plaintiffs filed a fourth amended complaint on February 17, 2011, in which they added plaintiff Susanna Wood and defendants that are wholly-owned subsidiaries of WellPoint, Inc., altered the proposed class definition, and added further detail regarding particular recoupments.

Plaintiffs assert their ERISA claims in three counts in the fourth amended complaint. In count one, plaintiffs seek to recover the unpaid benefits they allege

3

defendants improperly recouped, pursuant to section 502(a)(1)(B) of ERISA. *See* Fourth Am. Compl. ¶¶ 507-17. That provision permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In counts two and four, plaintiffs request injunctive and other equitable relief under section 502(a)(3) of ERISA. *Id.* ¶¶ 518-25, 531-35. That provision authorizes a plan participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).

In count three, certain plaintiffs allege violations of section 627.419 of the Florida Code.[2] *Id.* ¶¶ 526-30. Plaintiffs Florida Chiropractic Association and Dr. Peri Dwyer (the "Florida plaintiffs") bring this claim against defendant Blue Cross Blue Shield of Florida (BCBSF). BCBSF policies cover only a single physical medical modality or procedure code per patient per day and a limited number of spinal manipulations per

---

[2] Section 627.419 states:

Notwithstanding any other provision of law, when any health insurance policy, health care services plan, or other contract provides for the payment for medical expense benefits or procedures, such policy, plan, or contract shall be construed to include payment to a chiropractic physician who provides the medical service benefits or procedures which are within the scope of a chiropractic physician's license. Any limitation or condition placed upon payment to, or upon services, diagnosis, or treatment by, any licensed physician shall apply equally to all licensed physicians, without unfair discrimination to the usual and customary treatment procedures of any class of physicians.

calendar year. The Florida plaintiffs contend that these limits discriminate against medical services provided by chiropractors in violation of section 627.419. They seek to recover withheld benefits and request an injunction against future violations.

Plaintiffs have moved to certify the case as a class action pursuant to Federal Rule of Civil Procedure 23. They ask the Court to certify three classes. First, they request certification of a Provider Class consisting of:

> [a]ll health care providers who, from six years prior to the filing date of this action to the class certification order date ("ERISA Class Period"), provided health care services to patients insured under health care plans governed by ERISA and insured or administered by Defendants and who, after having received payments from Defendants, were subjected to retroactive requests for repayment of all or a portion of such payments or had subsequent payments withheld as an offset against the amount allegedly owed.

Pls.' Notice of Mot. to Certify Class (dkt. no. 461) at 1. Second, plaintiffs request certification of a Subscriber Class, defined as:

> [a]ll health care subscribers who, from six years prior to the filing date of this action to the class certification order date ("ERISA Class Period"), received health care services under health care plans governed by ERISA and insured or administered by Defendant WellPoint and who, after having received benefits, either directly or through payments to their providers, were either subjected to retroactive requests for repayment of all or a portion of such payments or had subsequent payments withheld as an offset against the amount allegedly owed, or were balance billed by their providers for amounts that had been subject to repayment demands or offsets.

*Id.* at 1-2. Finally, plaintiffs request certification of a Florida Chiropractic Discrimination Class. Plaintiff Dwyer serves as the representative for this putative class. The class definition includes:

> [a]ll Doctors of Chiropractic in the state of Florida who, from six years prior to the filing date of this action to the class certification order date ("Chiropractic Discrimination Class Period") provided health care services

to patients insured under ERISA health care plans insured or administered by BCBS entities and who, after having treated patients for more than 26 visits, were denied payment or who, after having provided more than one physical therapy modality on the same date as chiropractic manipulation, were denied reimbursement based on a determination that the services were not Covered Services.

*Id.* at 3. Defendants oppose certification on the ground that plaintiffs do not satisfy the requirements of Rule 23.

On September 20, 2011, Judge Federico A. Moreno entered an order in *Love v. Blue Cross & Blue Shield Ass'n*, No. 03 C 21206 (S.D. Fla.), in which he granted a defense motion to enforce an injunction against Dr. Gregory Kuhlman, a plaintiff in this case. Judge Moreno's order requires Dr. Kuhlman to withdraw all of his claims in this action against the BCBS defendants with which he settled his claims in the *Love* litigation. It also requires plaintiffs to "cease prosecution of all claims asserted on behalf of *Love* class members." Docket no. 544. Plaintiffs then moved for voluntary dismissal without prejudice of Kuhlman's claims. Defendants interposed no objection to that request but contended this was insufficient to comply with Judge Moreno's order. After further skirmishing both here and before Judge Moreno, plaintiffs modified the proposed definition of each of the proposed classes as follows:

Plaintiffs exclude from the definitions all members of the settlement classes in *Love v. Blue Cross Blue Shield Ass'n*, No. 03-21296-CV (S.D. Fla.) (including a separate settlement with Defendant Highmark, Inc.), *Shane v. Humana, Inc.*, Master File No. 00-1334 (S.D. Fla.) (to the extent the settlement involves Defendants WellPoint, Inc. and Blue Cross Blue Shield of Georgia), *Dolan v. Excellus, Inc.*, No. 9768-01 (Monroe County, N.Y.), or *Medical Society of the State of New York v. Excellus, Inc.*, No. 9769-01 (Monroe County, N.Y.), as applicable to the particular Defendants in this action that were settling defendants in each such case.

Pls.' Notice of Amendment to Proposed Provider Classes (dkt. no. 549) at 2 (filed Oct.

6

17, 2011). Plaintiffs represent, and defendants do not dispute, that these developments do not eliminate any of the proposed class representatives other than Kuhlman.

## Discussion

A court may certify a case as a class action if the party seeking certification meets all the requirements of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b). Rule 23(a) requires the party seeking certification to demonstrate that the class is so numerous that joinder of all members is impracticable (numerosity); there are questions of law or fact common to the proposed class (commonality); the class representative's claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4).

Rule 23(b) sets forth four circumstances under which a class action may be maintained. *See* Fed. R. Civ. P. 23(b). Rule 23(b)(1)(A) permits class certification if separate actions by or against individual class members would create a risk of "varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(B) permits class certification if separate actions by or against individual class members would, as a practical matter, be dispositive of the interests of nonparty class members or substantially impair or impede their ability to protect their interests. Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Finally,

7

Rule 23(b)(3) permits class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."

Plaintiffs bear the burden of proving they are entitled to class certification. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citation omitted). The Court is not limited to the allegations in plaintiffs' complaint when assessing whether to certify a class but instead "should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). *See generally Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

## I. Provider Class

Plaintiffs allege that the Provider Class satisfies the threshold requirements of Rule 23(a) and seek certification of that class pursuant to Rules 23(b)(3), 23(b)(1)(A), and 23(b)(2). Defendants concede that the Provider Class satisfies Rule 23(a)'s numerosity requirement but dispute plaintiffs' remaining arguments. Defendants also contend that the Provider Class is overly broad and therefore not ascertainable. The Court begins its analysis with Rule 23(b) because it finds that issue dispositive.

### A. Rule 23(b)(3) certification

As the Court explained earlier, it may certify a class under Rule 23(b)(3) if common questions predominate over individual factual and legal questions and a class action provides a superior vehicle for adjudication of the plaintiffs' claims.

The predominance criterion "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). In essence, the Court must determine "whether plaintiffs can, through individualized cases, offer proof on a class-wide basis." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 329 (N.D. Ill. 2010) (citation omitted); *see also Ross v. RBS Citizens, N.A.*, No. 09 C 5685, 2010 WL 3980113, at *6 (N. D. Ill. Oct. 8, 2010) ("Plaintiffs need . . . show that common proof will predominate with respect to their claims."). To put it another way, plaintiffs must show "that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members." *Driver v. Apple Illinois, LLC*, 265 F.R.D. 293, 303 (N.D. Ill. 2010). The predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement, under which a plaintiff must establish simply that common issues exist. *Amchem Prods., Inc.*, 521 U.S. at 623-24.

Plaintiffs' central argument is that a common question exists regarding whether defendants violated ERISA through "uniform policies in making repayment demands." *See* Pls.' Br. in Support of Class Certification at 39. Plaintiffs argue that this question will predominate the litigation. They also contend that a number of additional common questions exist regarding whether ERISA applies to defendants' recoupments, the existence of an exhaustion requirement under ERISA, the liability of host and home plans for out-of-state recoupments associated with the Blue Card program, the standard of review applicable to defendants' benefit determinations, and the appropriate remedy for defendants' alleged ERISA violations. *See* Fourth Am. Compl.

9

¶ 500.

Defendants disagree. They counter that to succeed, each plaintiff must prove with respect to each challenged recoupment that: (1) the applicable plan was an ERISA-governed plan; (2) the plan participant was financially liable for the recoupment such that it qualified as an "adverse benefit determination" under ERISA; (3) the plaintiff had a right to enforce, through a valid assignment, the plan participant's rights under ERISA to collect benefits; (4) the plaintiff had a right to enforce, through designation as the plan participant's duly appointed "authorized representative," the plan participant's rights under ERISA to notice and review; (5) the defendants failed to provide notice and review that complied with ERISA; (6) the defendants' affirmative defenses fail; and (7) the recoupment was invalid. According to defendants, each of these issues involves an individualized inquiry. The individual questions, defendants argue, predominate over any common questions.

### 1.    Issues regarding assignments of benefits

Defendants contend that among other individual issues, individual questions regarding assignments of benefits will predominate the litigation. They argue that at least some plaintiffs did not receive assignments from plan participants for each claim subject to a recoupment demand and that at least some of the assignments that plaintiffs did receive were invalid under the terms of the particular plans at issue.

Section 503 of ERISA applies to "claims for benefits by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a); *see also* 29 U.S.C. § 1132(a)(1). ERISA defines "beneficiary" to include a person designated by a plan participant to receive her benefits. *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991).

Subject matter jurisdiction exists under ERISA if the plaintiff has a colorable claim to benefits: "[t]he possibility of direct payment is enough to establish subject matter jurisdiction." *Id.* at 700-01.

Plaintiffs seem to contend that the threshold jurisdictional question regarding their entitlement to sue is the end of the inquiry for class certification purposes. They argue that whether any particular plaintiff or class member has a valid assignment for a particular claim will arise, if at all, only at an advanced stage of the litigation, after the Court has ordered class-wide relief. Pls.' Reply Mem. in Support of Mot. for Class Certification at 15. Plaintiffs argue that "[f]or a class to be certified . . ., the Class Members are not required to prove an entitlement to 'collect,' but only to assert common issues; the question of 'collection' arises only after a finding on the merits." *Id.* at 15.

It is not quite that simple. Though the threshold jurisdictional inquiry likely is a common question, the Court is required to assess not whether jurisdiction can be proved in common, but whether liability is a common issue. Proving a plan's liability to an assignee under section 502 involves more than establishing that subject matter jurisdiction exists.

ERISA does not prohibit a participant from assigning a claim for health and welfare benefits, but it also does not preclude a health and welfare plan from prohibiting assignments. *Moylan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002). A number of the plans at issue in this case contained anti-assignment provisions. *See* Defs.' Ex. 2 at 50-56. Defendants rely on these provisions to contend that many, though likely not all, of the assignments that plaintiffs took are unenforceable

11

and do not confer plan beneficiary status entitling plaintiffs to ERISA-prescribed appeal procedures.

Plaintiffs contend that the defendants whose plans contained anti-assignment provisions waived them by dealing directly with plaintiffs as service providers. But defendants argue that they paid plaintiffs directly pursuant to contractual provisions in their provider agreements and the underlying plan documents, not in reliance on assignments. And at least some of the plans at issue expressly reserved for defendants the right to make direct payments to in-network health providers, while simultaneously prohibiting plan participants from assigning their rights to benefits. *See id.* at 51-55. Though there is no controlling authority on the point – indeed there is little authority at all – there is law supporting the proposition that direct payment to a provider does not waive reliance on a plan's anti-assignment provision if the plan also authorizes direct payment. *See Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06 C 0462, 2007 WL 4570323, at *4 (D.N.J. Dec. 26, 2007) (direct payments to providers do "not constitute a waiver if authorized under the [insurance] plans at issue"); *Zhou v. Guardian Life Ins. Co. of Am.*, No. 01 C 4816, 2001 WL 1631868, at *2 (N.D. Ill. Dec. 17, 2001) (same); *Renfrew Ctr. v. Blue Cross & Blue Shield of Central N.Y., Inc.*, No. 94 C 1527, 1997 WL 204309, at *4 (N.D.N.Y. Apr. 10, 1997) (insurer's "retention of discretion to make direct payment is in no way inconsistent with disallowing patient assignment").

A plan can waive its right to enforce an anti-assignment provision by engaging in conduct inconsistent with the provision. *See, e.g., Glen Ridge Surgicenter, LLC v.*

12

*Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 08 C 6160, 2009 WL 3233427, at *5
(D.N.J. Sept. 30, 2009) ("Although Horizon's direct payments to GRS would not
constitute a waiver [of anti-assignment provisions] if authorized under the Horizon plans
at issue, the Complaint alleges a course of conduct beyond direct reimbursement for
medical services."); *Gregory Surgical Servs., LLC*, 2007 WL 4570323, at *4. The Court
is unpersuaded, however, that the waiver inquiry is susceptible to determination on a
class-wide basis given the large number of different plans involved. It is highly likely
that different plans conducted dealings with providers and participants in different ways
– just as they appear to have had different practices regarding challenges and appeals
by providers. Plaintiffs have not shown otherwise.

Plaintiffs also contend that by making recoupment claims under ERISA,
defendants have waived any argument that ERISA does not apply. There is certainly
authority that if a plan sues under ERISA to recoup plan funds paid out to a non-
participant, the non-participant may raise ERISA issues in defense of the suit. *See,
e.g., Longaberger Co. v. Kolt*, 586 F.3d 459, 468-71 (6th Cir. 2009). But in such cases,
the plan itself has invoked ERISA. In the present case, the suit was filed not by a plan
but by plaintiffs as recipients of plan funds. Plaintiffs offer no evidence that the
defendants expressly invoked ERISA in recouping or attempting to recoup the
payments at issue. And the plans' mere demand for recoupment, without more, does
not amount to an invocation of ERISA. The Seventh Circuit has made it clear that a
plan may invoke common law, and not exclusively ERISA, in attempting to recoup plan
funds that it contends were improperly paid out. *See Trustees of AFTRA Health Fund*

13

*v. Biondi*, 303 F.3d 765 (7th Cir. 2002).

Although plaintiffs have asserted generalized waiver arguments that apply in common to all of the defendants, for the reasons just described the Court cannot say that determination of those issues is likely to be a significant focus of the litigation. Rather, it is considerably more likely that determination of the issue of waiver will require the Court to determine whether a particular defendant's course of conduct is inconsistent with enforcement of the anti-assignment term of a particular benefit plan. This cannot be accomplished on a class-wide basis via class claims that include not only all of the provider plaintiffs but also all of the defendants.

### 2. Nature and extent of review / appeal of recoupments

Plaintiffs argue that the main focus of their proof of liability involves a common practice or policy among the defendants of failing to provide ERISA-compliant procedures for review of recoupments. Defendants contend that this, too, is an individualized issue.

"ERISA sets certain minimum requirements for procedures and notification when a plan administrator denies a claim for benefits." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992). It mandates that:

> [i]n accordance with regulations of the Secretary, every employee benefit plan shall –
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

14

29 U.S.C. § 1133. "Adequate notice" of an adverse benefit determination includes notice of "[t]he specific reason or reasons for the adverse determination"; "[r]eference to the specific plan provisions on which the determination is based"; "[a] description of any additional material or information necessary for the claimant to perfect the claim"; "[a] description of the plan's review procedures . . . , including a statement of the claimant's right to bring a civil action under section 502(a) of the Act"; and a statement describing any "internal rule, guideline, protocol, or other similar criterion . . . relied upon in making the adverse benefit determination." 29 C.F.R. § 2560.503-1(g). A "reasonable opportunity . . . for a full and fair review" affords claimants "at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination"; "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits"; "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits" upon request; and "a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h); *see also id.* (setting forth additional requirements for group health plans and plans providing disability benefits).

There is no question that the standard under ERISA for notice and review, as described above, is common to the class. But it is insufficient for the Court to stop right there, as plaintiffs appear to suggest. Establishing liability requires plaintiffs to prove not just the applicable standard but also that defendants violated it. That is not necessarily a cut-and-dried question. "In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient." *Halpin*, 962 F.2d at 690;

*see also Ponsetti v. GE Pension Plan*, 614 F.3d 684, 693 (7th Cir. 2010) (same).

The mere fact that many defendants denied that ERISA applied to the recoupments or refused to call their review procedures "ERISA appeals" does not establish that they engaged in common practices such that liability can be determined on a class-wide basis. It stands to reason that the issue of substantial compliance turns on what (if any) procedures defendants provided, not what they chose to call those procedures. Plaintiffs cite no authority suggesting otherwise.

Plaintiffs' own complaint appears to undercut their contention that defendants engaged in uniform or near-uniform misconduct. In it, plaintiffs charge that different defendants failed to adequately disclose the basis for repayment demands; failed to disclose copies of plan materials upon plaintiffs' request; failed to provide notice of appeal rights; provided inadequate notice of appeal rights; failed to offer appeals; offered cursory, non-compliant appeals; and/or ignored plaintiffs' participation during more comprehensive appeals. *Compare, e.g.*, Fourth Am. Compl. ¶¶ 106-68 (allegations of plaintiffs Korsen and Barlow) *with id.* ¶¶ 169-97 (allegations of plaintiff Leri). In addition, plaintiffs appear to concede that some defendants provided the class representatives with at least some opportunity to appeal the challenged recoupments, though they contend these opportunities were inadequate under ERISA.

Plaintiffs rely on two sources in support of their contention that defendants engaged in uniform misconduct in violation of ERISA. First, plaintiffs' expert, Dr. Steven Foreman, opined that defendants' recoupment processes were "nearly identical." *See* Pls.' Ex. 22 at 15. Dr. Foreman, however, was referring primarily to defendants' processes for identifying potential overpayments, not the notice and review procedures

16

they utilized when executing the challenged recoupments. *Id.* at 15-18. Proof of liability in this case necessarily is focused primarily on the process by which defendants accomplished the recoupments rather than on how they zeroed in on particular opportunities for recoupment. Dr. Foreman's report cites no evidence to support the proposition that defendants utilized uniform notice and review procedures.

Second, plaintiffs rely on a summary of deposition excerpts in which they identify admissions from various representatives of defendants regarding ERISA non-compliance. *See* Pls.' Ex. 24 at 1-23. Yet the exhibit describes varied conduct. It reflects that some defendants provided no appeal rights whatsoever, others provided cursory appeals, and still others offered multi-level appeals. Likewise, the exhibit suggests that some defendants advised plaintiffs of their appeal rights, others gave no notice, and still others provided notice that was inadequate. Plaintiffs' exhibit thus refutes, rather than supports, their contention that there was a common class-wide practice. This is not terribly surprising, given the fact that plaintiffs challenge the conduct of over twenty different BCBS entities.

The Court concludes that individual issues regarding whether and how each defendant substantially complied with ERISA's notice and review requirements likely will consume a great deal of the Court's attention.[3] To be sure, common questions exist

---

[3] The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes* suggests that plaintiffs' failure to establish that all of the defendants engaged in a common course of misconduct may also defeat their ability to satisfy the less demanding commonality requirement of Rule 23(a). To establish commonality, plaintiffs must establish that common questions exist. Fed. R. Civ. P. 23(a). The Court held in *Wal-Mart Stores* that a putative class of plaintiffs failed to satisfy this standard, reasoning:

(continued...)

regarding whether ERISA governs defendants' recoupment efforts at all – for example, whether the recoupments qualify as "adverse benefit determinations" governed by ERISA. Moreover, it may very well be true that all of the defendants' procedures violated ERISA in some way. Nonetheless, plaintiffs have not shown that the class is "sufficiently cohesive" to warrant adjudication by representation, *Amchem Prods., Inc.*, 521 U.S. at 623-24, or that they will be able to offer proof of defendants' violations on a class-wide basis. *See Schmidt*, 268 F.R.D. at 329; *Ross*, 2010 WL 3980113, at *6. *See generally Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158-59 & n.15 (1982) (reversing district court's certification of a class because plaintiffs failed to show that defendants engaged in a uniform policy or practice of discrimination).

### 3. Summary

It is likely that the two issues the Court has just addressed – whether plaintiffs are entitled to invoke ERISA and, if so, whether defendants' practices comport with ERISA's requirements – will be the major focus of the litigation. Plaintiffs have failed to persuade the Court that either of these issues are susceptible of determination on a

---

[3](...continued)
Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways – by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor.

*Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551.

class-wide basis. As a result, the Court need not address the parties' arguments regarding whether other significant issues are common or individual issues. The Court concludes that plaintiffs have failed to show that common issues predominate over individualized issues. For this reason, the Court need not deal with Rule 23(b)(3)'s superiority requirement or the requirements of Rule 23(a) with regard to the proposed Provider Class.

Plaintiffs propose as an alternative that the Court certify a series of classes, each consisting of those providers that were the subject of recoupments by a particular defendant. There is at least some chance that this would avoid the problems the Court has just discussed. In particular, the issues of waiver of a particular plan's anti-assignment term and a particular plan's procedures for review and appeal of recoupment determinations may be susceptible of common determination on a plan-by-plan basis. But although plaintiffs' current motion raises this as a possibility, it does so only in cursory fashion, without significant discussion. The Court will not consider this alternative unless and until plaintiffs take the time and effort to address it fully and defendants have the opportunity to do the same.

### B. Rule 23(b)(1)(A) certification

Plaintiffs next assert that the Provider Class satisfies Rule 23(b)(1)(A), which applies if separate actions by or against individual class members would risk establishing incompatible standards of conduct for the party opposing the class. "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using

19

water as against downriver owners)." *Amchem Products, Inc.*, 521 U.S. at 614 (citation and internal quotation marks omitted) (cited with approval in *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2558 n.11). This part of Rule 23 "is concerned with the risk of inconsistent or varying adjudications that might establish incompatible standards of conduct for the defendant." *Spano v. The Boeing Co.*, 633 F.3d 574, 588 (7th Cir. 2011).

Plaintiffs contend that separate adjudications would result in incompatible standards of conduct for defendants because they would "expos[e] Defendants to multiple lawsuits for uniform misconduct." Pls.' Br. in Support of Class Certification at 36. The premise of this argument, however, is flawed. As the Court discussed in the previous section, plaintiffs' contention that all of the BCBS entities in this suit engaged in "uniform misconduct" of the sort contemplated by Rule 23(b)(1)(A) is not supported by the record. Though there are certainly similarities, as well as overlap, in how different BCBS entities dealt with the possibility of provider challenges to recoupment determinations, they did not all deal with this in a way that can fairly be described as "uniform." And as discussed in the previous section, though ERISA and its governing regulations prescribe certain procedures for benefit denials, the law does not appear to require lock-step compliance. Rather, substantial compliance is sufficient. The analysis of whether a particular BCBS entity's procedures substantially comply with ERISA (assuming ERISA applies) likely will differ from the analysis of whether a different BCBS entity's procedures substantially comply. Given these circumstances, plaintiffs have not established the predicate for certification of an all-plaintiffs, all-defendants class under Rule 23(b)(1)(A).

The Court might view certification under this part of Rule 23 differently were

20

plaintiffs requesting certification of defendant-by-defendant classes. But as the Court has discussed, plaintiffs have not yet pursued that point adequately in a way that permits the Court to make a reasoned assessment of whether certification would be permissible and appropriate.

## C.    Rule 23(b)(2) certification

Finally, plaintiffs contend that they are entitled to certification of the Provider Class under Rule 23(b)(2). Rule 23(b)(2) certification is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has clarified that:

> [t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart Stores, Inc.*, 131 S. Ct. at 2557 (citations and internal quotation marks omitted). Plaintiffs argue that they qualify for Rule 23(b)(2) certification because they challenge defendants' uniform misconduct and because the recovery of damages in an ERISA action constitutes equitable relief.

The fact that monetary relief may be characterized as equitable "is irrelevant. The Rule does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments." *Id.* at 2560. What is significant for this purpose is that plaintiffs

seek, among other things, monetary relief. This would not defeat certification under Rule 23(b)(2) were the request for monetary relief "merely incidental to the grant of an injunction or declaratory relief: 'incidental' in the sense of requiring only a mechanical computation." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 825 (7th Cir. 2011); *see also Wal-Mart Stores, Inc.*, 131 S. Ct. at 2560. The Court is not persuaded, based on the present record, that this is the case regarding the monetary relief that plaintiffs request.

In addition, and perhaps more importantly, plaintiffs have failed to persuade the Court that they seek an injunctive or declaratory remedy that is of an "indivisible nature." At a minimum, it is likely that, if plaintiffs prevailed, any injunctive relief to which they might be entitled would differ on a plan-by-plan basis.

### D. Conclusion

Because plaintiffs have failed to establish that the proposed Provider Class qualifies for class certification under any of the provisions of Rule 23(b), the Court denies certification of that class. It therefore need not address whether the class is ascertainable and whether it satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

## II. Florida Chiropractic Discrimination Class

The claims of the proposed Florida Chiropractic Discrimination Class involve certain practices of a single Blue Cross entity, Blue Cross Blue Shield Florida (BCBSF). In 2007, BCBSF rewrote its billing guidelines for chiropractic physicians. The rewrite included something called the single modality project, which limited chiropractic

physicians' reimbursement to one physical therapy modality on the same day a patient received chiropractic manipulation. Plaintiffs allege that this in effect required the patient to return to the physician's office the next day for additional modalities – in other words, to visit the office twice for treatment the patient otherwise would have received in a single visit. Because patients' insurance policies typically limit the number of physician visits for which they are covered, the effect of BCBSF's new policy, plaintiffs allege, was to reduce the amount of care for which patients were covered and, in turn, to reduce the amount that chiropractic physicians were reimbursed by BCBSF. The policy also precluded full reimbursement if the chiropractor exceeded the "one physical therapy modality" limitation.

Plaintiffs allege that BCBSF's changed practice violated section 627.419 of the Florida Code, which provides in relevant part that "[a]ny limitation or condition placed upon payment to, or upon services, diagnosis, or treatment by, any licensed physician shall apply equally to all licensed physicians, without unfair discrimination to the usual and customary treatment procedures of any class of physicians," including chiropractors. According to plaintiffs, the imposition of the single modality rule unfairly discriminated against the usual and customary treatment procedures of chiropractors as compared with other classes of physicians.

Plaintiff Peri Dwyer, the proposed representative for this class, is an in-network provider for BCBSF. She seeks to represent a class – actually two subclasses – of Florida chiropractors (1) who, after having treated patients for more than twenty-six visits, were denied payment, or (2) who, after having provided more than one physical therapy modality on the same date as chiropractic manipulation, were denied

23

reimbursement on the ground that the services were not covered by the patient's insurance. Dwyer seeks certification under Rules 23(b)(1)(A) and 23(b)(2) and not under Rule 23(b)(3).

Defendants oppose plaintiffs' motion on three grounds. First, they argue that the proposed class is not ascertainable and that, in any event, identification of class members would be a time-consuming and individualized task. Second, defendants argue that Dwyer's claim is atypical because she is subject to particularized defenses not applicable to the class as a whole. Third, defendants argue that the proposed class does not meet the requirements of Rules 23(b)(1)(A) or 23(b)(2).

Defendants argue in a footnote that plaintiffs have not shown that the class meets Rule 23(a)'s numerosity requirement. The objection is insufficiently developed to warrant discussion.[4] In addition, defendants do not contend that the proposed class fails to meet the commonality and adequacy of representation requirements of Rule 23(a). They have thus effectively conceded that the class meets these requirements. As a result, the Court focuses its discussion on the three points defendants have

---

[4] In any event, defendants' objection is lacking in merit. It is true that plaintiffs have not been able at this point to identify the number of chiropractors who are members of the class as defined, but that is not dispositive under the circumstances. "[P]laintiffs are not required to specify the exact number of persons in the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). But although plaintiffs "cannot rely on conclusory allegations that joinder is impractical or speculation as to the size of the class in order to prove numerosity," *id.*, a court may rely on common sense assumptions in determining whether the numerosity requirement is met. *See, e.g., Reed v. Advocate Health Care*, 268 F.R.D. 573, 578 (N.D. Ill. 2009). Given BCBSF's estimate of the cost savings that would result from the change to its chiropractic billing guidelines (between $3 million and $8.5 million per year) and the average amount of the individual modality charge ($50 to $75), common sense reflects that the number of chiropractors affected by the change far exceeds the minimum necessary to meet Rule 23's numerosity requirement.

raised.

## A.    Ascertainability of the class

Defendants argue that the definition of the proposed class is overly broad because it supposedly includes all sorts of providers, not just chiropractors, from all fifty states, not just Florida.  They also argue that the class definition is flawed because it does not link the class definition to the reimbursement limitations that plaintiffs challenge as improperly discriminatory.

These arguments are entirely lacking in merit.  Defendants evidently misread the proposed class definition.  As plaintiffs point out, the class definition proposed in their motion expressly limits the class to Florida chiropractors.  It likewise expressly limits the class to chiropractors affected by the twenty-six visit limitation or the single modality restriction.

Defendants also contend that determining who is a class member would have to be done on a chiropractor-by-chiropractor basis and would unduly difficult and time-consuming.  In this regard, defendants cite the Seventh Circuit's decision in *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), in which the court stated that a plaintiff seeking class certification must show "that the class is indeed identifiable as a class" and that the class definition "must be definite enough that the class can be ascertained." *Id.* at 513.

Plaintiffs' proposed class definition unquestionably meets these requirements. The proposed class in *Oshana* was insufficiently definite because the claims of the class required the plaintiffs to prove deception that caused damage, yet the class

25

definition by its terms included persons who had not been deceived and thus could not prove causation of any injury. *Id.* at 513-14. The class definition proposed by plaintiffs in the present case suffers from no such infirmity. It defines the class as including only those affected by the particular allegedly unlawful practices at issue.

Defendants' real argument seems to be that class membership must be determined on an individual basis and that this will be time-consuming and difficult. Of course class membership must be determined for each proposed member; how could it be otherwise? *Oshana* imposes no prohibition on class certification simply because the court will be required to determine who is as a class member. In any event, it is overwhelmingly likely that any given chiropractor's membership can be determined without undue effort, by reference to documents, specifically, contracts with in-network providers containing BCBSF's revised chiropractic billing guidelines and entries within BCBSF's data processing system reflecting claim denials based on the limitations at issue.

Finally, defendants contend that the class includes chiropractors who suffered no actual injury. They note that in at least some instances, chiropractors denied reimbursement for a particular visit or procedure would have billed their patients for the balance due and would have been paid. If this happens, defendants argue, the provider is no worse off and lacks standing to sue.

The Court seriously doubts that this is a legitimate "standing" argument. Though it is true that any chiropractor denied reimbursement in a particular instance might seek to have the patient pay the balance, the certainty and timing of payment is unquestionably affected. In addition, the likely combined effect of BCBSF's practices,

in at least some instances, would be to reduce the total number of procedures provided by a chiropractor to a given patient and thus the overall amount of money the chiropractor can bill and collect. These are sufficient injuries to confer standing to sue even if the chiropractor ultimately may collect the full amount he or she bills to a given patient.

## B. Typicality

Rule 23(a)'s typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotation marks and citation omitted). "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (internal quotation marks and citation omitted). The concern is that the class representative will be "distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *Id.* (internal quotation marks and citation omitted).

Defendants' first argument regarding typicality is that the class includes all sorts of providers and all sorts of Blue Cross entities. That argument is flawed for the reasons discussed earlier; defendants based the argument on a misunderstanding of the class definition that plaintiffs propose. Contrary to defendant's argument, the proposed class is limited such that it includes only Florida chiropractors and is focused

27

on reimbursement denials occasioned by the challenged changes in BCBSF's billing guidelines.

Defendants also contend that Dwyer is subject to unique defenses. They argue that despite the fact that her provider agreement with BCBSF barred her from billing patients for the balance of their bills that was not reimbursed by the insurer, she did so nonetheless. Defendants have made no effort, however, to explain how this is a defense to liability (as opposed to, perhaps, a factor affecting the relief to which she might be entitled). In any event, defendants have overstated Dwyer's deposition testimony. She stated that she sometimes balance-bills patients, not that she always does so. Documents reflect that Dwyer was denied insurance reimbursements, and she testified that she was ninety percent certain that she had, in fact, suffered a financial loss. The fact that she might have suffered less of an injury than some other potential class members does not undercut typicality. In any event, there is no reason to believe that this "defense," if that is what it is, does not affect numerous class members.

For these reasons, the Court concludes that plaintiffs have satisfied Rule 23(a)'s typicality requirement.

### C.      Rule 23(b)(1)(A) and 23(b)(2)

Because plaintiffs have met Rule 23(a)'s requirements with regard to the Florida Chiropractic Discrimination Class, the Court turns to Rule 23(b) and addresses first plaintiffs' request to certify the class under Rule 23(b)(2). Plaintiffs request both injunctive relief and damages on their claim under Florida law.

Because plaintiffs challenge a standardized practice by BCBSF, this is a

situation in which "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2557. But Rule 23(b)(2) certification, which does not allow prospective class members an opportunity to opt out of the litigation, tends to be disfavored in cases like this one in which monetary relief is a significant component of the requested relief. *See Randall*, 637 F.3d at 825-26; *see generally Wal-Mart Stores, Inc.*, 131 S. Ct. at 2557 (Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."), 2560 (leaving open the possibility that claims involving "incidental" monetary relief may be certified under Rule 23(b)(2)).

Contrary to plaintiffs' argument, the monetary relief they seek is not, in the Court's view, "mechanically computable." *Randall*, 637 F.3d at at 826. It would require not simply identifying patient visits for which reimbursement was denied, but also examining whether the particular class member had received payment for that particular visit from the patient (if so, it was the patient who suffered the loss, not the physician). For this reason, the Court concludes that the class cannot appropriately be certified under Rule 23(b)(2).

Plaintiffs contend that the Florida Chiropractic Discrimination Class satisfies Rule 23(b)(1)(A) because separate actions by individual class members would risk establishing incompatible standards of conduct for the defendants. As indicated earlier, Rule 23(b)(1)(A) is intended for cases "where the party is obliged by law to treat the members of the class alike . . . " *Amchem Products, Inc.*, 521 U.S. at 614.

This is certainly a situation in which the insurer is required to treat members of the class alike: the Florida statute on which plaintiffs base their claim imposes a non-

29

discrimination requirement.  That said, though it is a close question, the Court is unpersuaded that Rule 23(b)(1)(A) permits certification of the proposed Florida Chiropractic Discrimination Class.  The key factor in this regard is the one the Court just cited in declining to certify the class under Rule 23(b)(2), namely, the fact that damages are a significant part of the relief requested and cannot simply be determined on a formulaic basis.  Given these circumstances, the interest of individual class members in maintaining control over their own claims – which, because Rule 23(b)(1)(A) does not permit opt-outs, they would be unable to do if the Court certifies the class – outweighs the interest in obtaining a single adjudication regarding whether BCBSF's billing guidelines violate Florida law.

For these reasons, the Court denies plaintiffs' request to certify the proposed Florida Chiropractic Discrimination Class.

## III.  Subscriber Class

Finally, plaintiffs move for certification of a Subscriber Class represented by Hopkins.  Defendants oppose certification on the ground that Hopkins is not a typical class member because she does not satisfy the class definition.  They provide evidence that Hopkins was billed only for the deductible and co-insurance that she owed; she was never balance-billed any additional amount due to Anthem Ohio's recoupment from provider Miami Valley Hospital of a duplicate payment; and the recoupment did not affect the amount Hopkins owed.  The Court defers consideration of plaintiffs' motion for certification of the Subscriber Class pending resolution of WellPoint's motion for summary judgment regarding Hopkins.

## IV.     Motions to exclude expert reports

Because the Court has denied or deferred certification of plaintiff's proposed classes, it need not address defendants' motion to exclude Dr. Foreman's expert report and opinions.  For their part, plaintiffs have moved to exclude the expert reports and opinions of Brian Flood and Dr. Eric Gaier.  As plaintiffs themselves concede, "[d]efendants do not rely upon them in opposing the class motion."  Pls.' Reply Br. in Support of Class Certification at 39 n.37.  The Court nonetheless denies plaintiffs' motion.  The Court agrees with defendants that Flood and Gaier are sufficiently qualified, that they do not impermissibly assert legal conclusions, and that Gaier's opinions are sufficiently reliable.

### Conclusion

For the reasons stated above, the Court denies plaintiffs' motion for certification of the Provider and Florida Chiropractic Discrimination Classes and defers consideration of plaintiffs' motion for certification of the Subscriber Class [dkt. no. 460]. In addition, the claims of plaintiff Gregory Kuhlman are voluntarily dismissed without prejudice.  The Court terminates defendant's motion to cite supplemental authority [dkt. no. 539], their motion for leave to file response [dkt. no. 541], and several documents incorrectly docketed as motions [dkt. nos. 551, 552 & 553].  The Court will set the next status hearing once it rules on the motion for summary judgment concerning the claims of plaintiff Katherine Hopkins.

s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date:  December 28, 2011