**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA CHIROPRACTIC ASSOCIATION,** | ) | |
| **NEW YORK CHIROPRACTIC COUNCIL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 09 C 5619** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **BLUE CROSS BLUE SHIELD ASSOCIATION,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are medical professionals, associations, and facilities, as well as Katherine Hopkins, an individual subscriber.[1] The defendants are Blue Cross and Blue Shield Association and individual Blue Cross and Blue Shield entities, including WellPoint, Inc. and Community Insurance Company d/b/a Anthem Ohio (Anthem Ohio). The plaintiffs other than Hopkins generally allege that defendants initially reimbursed them for services they provided to BCBS insureds and then sometime afterward would make a false or fraudulent determination that the payments had been in error and would demand repayment.

---

[1] The Court assumes familiarity with the plaintiffs' allegations in this case. A more detailed recounting of the plaintiffs' allegations can be found in the Court's May 17, 2010 decision. *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

Hopkins claims that she received medical services at Miami Valley Hospital (MVH) for which her insurer, Anthem Ohio, paid. Two years later, however, Hopkins received a bill from MVH informing her that Anthem Ohio had recouped funds it had paid to the hospital, making her liable for the balance.

In plaintiffs' fourth amended complaint, Hopkins asserts claims under the Employee Retirement Income Security Act (ERISA) and for injunctive relief against WellPoint and Anthem Ohio, arguing that they used improper procedures in recouping funds from MVH. The Court previously dismissed Hopkins' claims for prospective equitable relief based on her admission that she is "no longer a participant or beneficiary in her former employer's health plan" and her statement that she would seek relief only "with regard to pre-existing repayment demands and recoupments, and defers to other Plaintiffs for an injunction applicable to Defendants' future misconduct." Order of April 27, 2011 (dkt. no. 486); *see also* April 28, 2011 Tr. at 7.

Anthem Ohio and WellPoint have moved for summary judgment on Hopkins' remaining claims. For the reasons stated below, the Court grants the motion.

## Background

As of September 2007, Hopkins was insured through her employer, Queen City Reprographics, under an Anthem Ohio policy. The policy had an annual member deductible of $500 for in-network care and a co-payment requirement of twenty percent for most covered services. Hopkins left Queen City in 2008 and is no longer covered under Anthem Ohio's plan.

On September 9, 2007, Hopkins was taken by ambulance to MVH and was treated there. On October 12, 2007, Anthem Ohio made separate payments of

2

$876.88 and $476.88 to MVH based on what it later claimed were duplicate claims by MVH for Hopkins' treatment. On July 30, 2008, an Anthem Ohio vendor sent a letter to MVH regarding Hopkins' treatment, entitled "Request for refund of overpayment," that requested "remittance in full" of $876.88. Def. Ex. I. The letter included two tables. The first stated in part:

| Amount Due: | $876.88 |
|---|---|
| Reason: | duplicate payment |
| Patient Name: | KATHERINE HOPKINS |
| Date(s) of Service: | September 09, 2007 |
| Total Charges: | $2,514.00 |
| Total Paid: | $876.88 |
| Payee Name: | MIAMI VALLEY HOSPITAL |

*Id*. The letter then indicated that the "calculations" underlying the request were based on the following information (reproduced in part):

| | Date of Services | Charge | Allowed | Patient Liability | Benefit |
|---|---|---|---|---|---|
| **ACTUAL:** | 9/09/07 | $2,514.00 | $1,096.10 | $219.22 | $876.88 |
| **RECALCULATED:** | 9/09/07 | $2,514.00 | $1,096.10 | $619.22 | $476.88 |

*Id*. Anthem Ohio did not notify Hopkins that this letter had been sent.

On June 16, 2009, MVH paid $876.88 to defendants in response to the recoupment demand. On or around November 12, 2009, Hopkins received a letter from a collection agency stating that she owed a balance of $619.22 to MVH. Hopkins testified at her deposition that this was the first time she was notified that "Miami Valley

3

Hospital had a balance due and owing from" her. Hopkins Dep. 85:23-86:2. She testified further that she contacted the collection agency and Anthem Ohio upon receipt of this letter to obtain information regarding what, if anything, she owed. She has provided letters she sent to MVH in November 2009 and to Anthem Ohio in January 2010 requesting documentation regarding her balance. Anthem Ohio responded with a notice indicating that it was "unable to process documents" because Hopkins had not provided her account identification number. Pl.'s Ex. 3.

Hopkins asserts two claims under ERISA. In count one, she seeks unpaid benefits and interest, repayment of any amounts wrongfully paid or withheld, and declaratory and injunctive relief enforcing the terms of the plan. She brings this claim under section 502(a)(1)(B) of ERISA, which states, "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Hopkins further contends that she was denied her right to a "full and fair review" of all claims denied, including notice and an opportunity to appeal. *Id*. § 1133. She brings count two under ERISA section 502(a)(3), which states,

A civil action may be brought by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

(B) to obtain other appropriate equitable relief

(i) to redress such violations or

(ii) to enforce any provisions of this subchapter or the terms of the plan.

4

*Id*. § 1132(a)(3).

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.,* 550 F. 3d 605, 609 (7th Cir. 2008).

Hopkins' argument focuses on "what ***procedures*** an insurer must apply when seeking to recover an overpayment of benefits issued under ERISA health care plans." Pl.'s Resp. at 3 (emphasis in original). She claims that defendants violated ERISA by seeking recoupment from MVH without providing her notice or an opportunity to appeal their decision to do so. She contends that MVH "balance billed" her "as a direct result of Defendants [sic] recoupment of benefits on her claim without complying with the processes mandated under ERISA. As such, Defendants deprived Hopkins the opportunity to challenge their recalculation of her benefits and the resulting increase in her liability to MVH." *Id*. at 4-5. She asks the Court for an order that will "return the parties to the position they were in before Defendants recouped any funds – through restitution of all payments that had been improperly recouped or otherwise recovered." Pl.'s Resp. at 12.

5

Defendants argue that they are entitled to summary judgment on Hopkins' remaining claims for several reasons. Their primary argument is that their request for repayment from MVH had no effect on Hopkins' financial liability because MVH's bill to Hopkins was based only on her deductible and co-payment obligations, amounts she owed under her Anthem Ohio policy. They argue that because the $619.22 that MVH billed Hopkins reflects the amount she actually owed, she is not entitled to any benefits under her plan beyond those she has already received. They also contend that Hopkins is not entitled to equitable relief against Anthem Ohio because "as a matter of law, she cannot transform a claim for benefits into a claim for equitable relief," Def.'s Mem. at 3, and that restitution would be improper because Hopkins was financially obligated to pay her deductible and co-payment regardless of the recoupment from MVH.

## A.    Evidence

As a threshold matter, Hopkins argues that defendants may not rely on any evidence outside the so-called "administrative record" – the information available to Anthem Ohio at the time it decided to recoup. When reviewing "a Plan Administrator's decisions regarding benefits," a court applies deferential review if "the plan establishes [that the administrator] had discretionary authority" to make those decisions. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004) (citation and internal quotation marks omitted). "[D]eferential review of an administrative decision means review on the administrative record." *Id*.

Defendants do not dispute that this is a correct statement of the standard. They

6

argue, however, that the rule applies only to "a court's deferential review of a <u>benefits</u> determination under Section 502(a)(1)(B)," and that Hopkins is making another kind of claim. Def.'s Reply at 13 (emphasis in original). They point out that Hopkins has expressly stated that "[s]he does not seek 'benefits'" but rather seeks equitable relief in the form of restitution. Pl.'s Resp. at 12. Hopkins asks the Court "not . . . to adjudicate the underlying claims for the repayment demands, but to adjudicate the issue of Defendants' compliance with ERISA and allow for equitable relief – a return to the *status quo*." *Id*. at 10-11.

Although *Vallone* refers to the "standard of review of a Plan Administrator's decisions regarding benefits," it does not expressly state the point argued by defendants: that claims not directly seeking "benefits" are not subject to the administrative-record requirement. Nonetheless, the Court agrees that it may properly consider additional evidence. *Vallone* and the decisions Hopkins cites in her response were based on determinations by a plan administrator that a claimant was not entitled to a certain benefit (such as long-term disability benefits or payment for a particular medical procedure) or a change in the underlying terms of a plan. Hopkins' claim, by contrast, is based on defendants' recoupment of a duplicate payment they determined they had made based on a hospital's billing procedures.

This claim is fundamentally different from those in the cases Hopkins cites, each of which involved a claim in which a court was asked to review the substance of the underlying decision by the plan administrator. Such review is, in a "discretionary authority" case, logically limited in scope to the information available to the decision maker, because a court examines whether there is "reasoning in the record to support"

7

the decision.  *See Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003).  In this case, by contrast, Hopkins concedes that she is not asking for review of the underlying decision or the information that led to it.  She is challenging defendants' process, not their reasoning.  The Court concludes that it is not limited to the evidence that was available to defendants at the time they requested repayment from MVH.

**B.    Standing**

Defendants contend that they are entitled to summary judgment for three separate but related reasons:  Hopkins lacks standing; the recoupment was not an "adverse benefit determination" entitling her to notice and a hearing; and she is not otherwise entitled to equitable relief.  Hopkins argues that she has a colorable claim under ERISA because defendants' recoupment was the sole reason she received a bill from MVH, and that this decision was, therefore, a "*termination* of benefits that were being paid," entitling her to equitable relief.  Pl.'s Resp. at 12 (emphasis in original).

In order to have standing to sue under sections 502(a)(1)(B) or 502(a)(3), a plaintiff must qualify as a "participant," a "beneficiary," or a "fiduciary."  Defendants argue that Hopkins cannot qualify as a "participant" under sections 502(a)(1)(B) or 502(a)(3), and Hopkins does not argue that any other category would apply to her.  A "participant" is defined as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization."  29 U.S.C. § 1002(7).

A former employee who is no longer covered under a benefit plan may qualify as a participant if she has "a reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (citations and internal quotation marks omitted). The Seventh Circuit has noted that "[t]he requirement of a colorable claim is not a stringent one." *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996). It has also stated, however, that "vested benefits" under *Firestone* means "that the former employee had to have an entitlement – had to show that had it not been for the trustees' breach . . . he would have been entitled to greater benefits than he received." *Harzewski v. Guidant Corp.*, 489 F.3d 799, 806 (7th Cir. 2007).

Defendants focus their argument on what they contend is an unequivocal admission by Hopkins in her deposition that MVH's balance bill reflected her deductible and co-payment obligations. Defendants contend that Hopkins can have no claim for benefits, vested or otherwise, because she has already received everything due to her under her Anthem Ohio policy. They argue that regardless of whether or not she had received notice of the recoupment request, she would not have been "entitled to greater benefits." *See id.* Hopkins disputes that her testimony constituted an admission, contending that it instead was merely an acknowledgment of what a particular document showed.

A reasonable fact finder could find that, as Hopkins argues, the recoupment was what "caused" MVH to balance bill Hopkins, meaning that MVH would not have billed Hopkins absent the recoupment. This might have been because Anthem Ohio's duplicate payment had covered the amount MVH would have sought from Hopkins, or

9

perhaps because MVH had simply neglected to take account of Hopkins' deductible and co-payment obligations until the recoupment led it to reexamine her bill.

Despite this, there is no evidence from which a reasonable fact finder could find that the balance bill reflects anything other than money that Hopkins did, in fact, owe after Anthem Ohio paid all the benefits due under the insurance policy. Hopkins argues in her brief that this remains a disputed issue of fact, but she offers no evidence from which a reasonable fact finder could find that the $619.22 she was billed represented anything other than her $500 deductible plus twenty percent of the remaining cost of her $1,096.10 hospitalization (twenty percent of $596.10, or $119.22). In short, there is no evidence from which a reasonable fact finder could find that Hopkins' actual obligation under her Anthem Ohio policy was increased or changed by the recoupment. Though one might question why it took Anthem Ohio and MVH two years to resolve the issue, no reasonable fact finder could find that Anthem Ohio made a determination regarding her eligibility for benefits or a decision regarding plan management that negatively affected the amount of money available to her under the plan.

Hopkins argues that the word "Recalculated" on the recoupment letter indicates that Anthem Ohio made a new decision regarding the amount that she owed. *See* Def. Ex. I. This suggestion, however, does not constitute evidence from which a reasonable fact finder could find that this occurred. The evidence shows that she was billed twice for $1,096.10 on the same day in 2007. The "patient amount" listed for the first billing was $619.22, reflecting the calculations the Court explained above. The "patient amount" listed for the second billing was $219.22, which is twenty percent of $1,096.10. The most logical explanation for this calculation is that it failed to take into account

10

Hopkins' $500 deductible. There is no evidence from which a fact finder could conclude that the second payment was anything other than, as defendants argue, "the liability Hopkins would have had if the second claim submitted by MVH to Anthem Ohio had not been a duplicate claim, but rather a claim for additional services/benefits." Def.'s Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 4. There is no other evidence that Anthem made, as a precursor to its recoupment request, a new determination regarding the benefits to which Hopkins was entitled.

Hopkins' claim therefore does not rise to the status of a colorable claim to vested benefits. Hopkins has not provided any evidence from which a reasonable fact finder could find that she would have been entitled to greater benefits from Anthem Ohio absent its decision to recoup – only that MVH's bill for the amount she truly owed the hospital under the terms of her insurance policy might never have been issued. Hopkins cites a previous decision of this Court that indicated the "colorable claim" requirement from *Firestone* may be construed liberally. *See Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878, 887 (N. D. Ill. 2007) (citing *Firestone*, 498 U.S. at 117). That decision, however, dealt with the question of causation, reflecting that a fact finder, when possible, should resolve the question of whether a defendant's actions actually had the effect on a plaintiff's benefits or plan that the plaintiff claims. It does not suggest that a claim like Hopkins' is a colorable claim to vested benefits. The Seventh Circuit's subsequent pronouncement that a claimant must make a showing of "entitle[ment] to greater benefits than he received" confirms this. *Harzewski*, 489 F.3d at 806.

Defendants' two additional arguments further underscore this point. Defendants

11

argue that they were not obligated to give Hopkins advance notice or a right to appeal, under 29 U.S.C. § 1133, which establishes those requirements for "any participant or beneficiary whose claim for benefits under the plan has been denied." Regulations promulgated under the section establish that these rights apply when there has been an "adverse benefit determination," defined as

> a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-l(m)(4).

Although a reasonable fact finder could find that Anthem Ohio's recoupment decision had some financial effect on Hopkins, the decision was not a "denial, reduction, termination, or failure to provide a benefit" under the plain meaning of those terms. Additionally, the regulation's references to "eligibility," "utilization review," and "failure to cover an item or service" indicate that "adverse benefit determinations" are akin to the types of decisions discussed earlier – substantive decisions regarding a plaintiff's rights under a particular plan. Anthem Ohio's decision would have qualified as a termination, denial, or reduction of benefits, as Hopkins argues, if it had amounted to a decision not to pay a benefit that was arguably due and owing. For the reasons the Court has discussed, however, there is no evidence that Anthem Ohio's decision was anything of the kind.

Hopkins also argues that the fact that she lacked an opportunity to challenge

12

Anthem Ohio's decision to recoup amounted to a denial of administrative process that was inherently harmful, regardless of whether the process would have resulted in any change to what she owed or was billed. She claims that she has a right to an injunction to alleviate this harm under the Supreme Court's recent decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011). In that case, the Court determined that a district court's "reformation" of the terms of a healthcare plan "in order to remedy the false or misleading information CIGNA provided" was not authorized under section 502(a)(1)(B). *Id*. at 1879. The Court ruled, however, that the district court's remedies were "within the scope of the term 'appropriate equitable relief' in § 502(a)(3). *Id*. at 1880. The Court went on to say that, because ERISA does not specify the standard for determining harm, "any requirement of harm must come from the law of equity." *Id*. at 1881. The Court stated that "just as a court of equity would not surcharge a trustee for a nonexistent harm, a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm – proved (under the default rule for civil cases) by a preponderance of the evidence." *Id*. (internal citation omitted). For the reasons this Court has already stated, it concludes that there is no evidence from which a reasonable fact finder could find that Hopkins has experienced "actual harm" because there is no evidence that she was billed for anything other than what she actually owed to MVH under the terms of her insurance policy.

**Conclusion**

For the foregoing reasons, the Court grants defendants Anthem Ohio and WellPoint's motion for summary judgment on the remaining claims of plaintiff Katherine

13

Hopkins [docket no. 497].

MATTHEW F. KENNELLY
United States District Judge

Date: January 23, 2011