**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PENNSYLVANIA CHIROPRACTIC ASSOCIATION, et al.,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **No. 09 C 5619** |
| **BLUE CROSS BLUE SHIELD ASSOCIATION, et al.,** ) ) ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiffs have sued defendants for violations of the Employee Retirement Income Security Act (ERISA). The plaintiffs' claims include claims by associations of chiropractors against health care plans named as defendants. Both the association plaintiffs and the defendants have moved for summary judgment on the association plaintiffs' claims. For the reasons stated below, the Court denies both sides' motions.

**Background**

**1. Parties**

The plaintiffs are chiropractic associations (association plaintiffs) that claim to represent the interests of their members, who are individual chiropractors. The association plaintiffs include the Pennsylvania Chiropractic Association (PCA), the Florida Chiropractic Association (FCA), and the International Chiropractic Association (ICA). The defendants are Blue Cross and Blue Shield of America (BCBSA) and a

number of Blue Cross and Blue Shield entities (BCBS entities).  BCBSA is a national

umbrella organization that facilitates the activities of individual BCBS entities, which

insure and administer health care plans for Blue Cross and Blue Shield members

(BCBS insureds) in various regions.  These entities include Independence Blue Cross

(IBC), Blue Cross Blue Shield of Florida (BCBSF), Anthem Blue Cross Blue Shield

(Anthem), WellPoint, Inc. (WellPoint), and Blue Cross and Blue Shield of Rhode Island

(BCBSRI).

The association plaintiffs assert claims on behalf of their members, several

individual chiropractors who provided medical services to Blue Cross and Blue Shield

plan participants.  Some of the individually named plaintiffs are also members of the

associations, specifically, Barry Wahner, D.C., who provided services to IBC members;

Peri  Dwyer, D.C., who provided services to BCBSF members; Andrew Reno, D.C., who

provided services to Anthem and WellPoint members, and Jay  Korsen, D.C., who

provided services to BCBSRI members.  The BCBS entities would compensate the

individual chiropractors for the services they provided to BCBS insureds by issuing them

payments under the terms and conditions of the insureds' health care plans.

## 2.    Procedural history

Both the association plaintiffs and individual chiropractors have sued BCBSA and

BCBS entities.  They contend that after the defendants paid the chiropractors for

services they had provided to BCBS insureds, they later unilaterally determined that the

payments were erroneous and demanded that the chiropractors return the payments.[1]

---

[1] A more detailed account of the plaintiffs' contentions can be found in the Court's May
17, 2010 decision.   *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* No. 09 C
5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

Plaintiffs contend that if the chiropractors did not acquiesce, the BCBS entities would recoup the amounts they claimed by withholding payment on other, unrelated claims for services that the chiropractors had provided to BCBS insureds. Plaintiffs allege that the BCBS entities demanded repayment without specifying which patients, claims, and/or health care plans the supposedly erroneous payments concerned and without providing adequate information about available review procedures. Plaintiffs further allege that some of the BCBS entities lacked any review procedures at all or did not respond to the chiropractors' attempts to challenge the entities' determinations. Plaintiffs claim that the defendants' conduct deprived them of their right to a "full and fair review" under ERISA. 29 U.S.C. § 1133.

On November 16, 2009, plaintiffs filed a first amended complaint, claiming that the BCBSA and BCBS entities violated the Racketeer Influenced and Corrupt Organizations Act (RICO), ERISA, and Florida law. On May 17, 2010, the Court granted defendants' motion to dismiss the RICO claims and denied their motion to dismiss the ERISA claims. *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010).

On June 29, 2010, plaintiffs filed a second amended complaint in which they reasserted their RICO and ERISA claims and added a RICO conspiracy claim and an ERISA claim by a BCBS plan participant, Katherine Hopkins, on behalf of a putative class of BCBS subscribers. The Court dismissed the amended RICO claims as well as Hopkins' ERISA claim. *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* No. 09 C 5619, 2010 WL 3940694 (N.D. Ill. Oct. 6, 2010). In January 2011, plaintiffs filed a third amended complaint, in which they modified Hopkins' ERISA claims and added

defendants regarding those claims.  The Court ultimately granted summary judgment in defendants' favor against Hopkins.  *See Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2012 WL 182213 (N.D. Ill. Jan. 23, 2012).

On February 17, 2011, plaintiffs filed the current version of their complaint, namely their fourth amended complaint, in which they assert ERISA claims in three counts.  In count one, they seek to recover unpaid benefits that they contend the BCBS entities unlawfully recouped pursuant to section 502 (a)(1)(B) of ERISA.  This provision of the statute allows a participant or beneficiary of a plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In counts two and four, plaintiffs request injunctive and other equitable relief under section 502(a)(3) of ERISA.  This provision allows a participant, beneficiary, or fiduciary of a plan to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  In count three, certain of the plaintiffs allege that BCBSA and the BCBS entities violated section 627.419 of the Florida Code, which prohibits insurance providers from discriminating against chiropractors.

On March 11, 2011, the association plaintiffs and individual plaintiffs asked the Court to certify three classes.  These included a class of health care providers from whom BCBS entities sought repayments, a class of health care subscribers from whom

WellPoint sought repayments and certain health care providers sought additional payments (due to the repayment demands the providers were facing), and a class of Florida chiropractors from whom BCBS entities withheld payments in certain circumstances.  On December 28, 2011, the Court denied class certification.  *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* No. 09 C 5619, 2011 WL 6819081 (N.D. Ill. Dec. 28, 2011).  The association plaintiffs and individual chiropractors then asked the Court to certify a number of smaller classes.  The Court denied these requests as well.  *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* 286 F.R.D. 355 (N.D. Ill. 2012).

**Discussion**

Defendants have moved for summary judgment on the claims of the association plaintiffs, arguing that they lack standing to sue.  Defendants also seek summary judgment regarding the association plaintiffs' claims for injunctive relief.  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

**1.	Standing**

An association has standing to bring suit on behalf of its members when:  1) the members would have standing to sue in their own right; 2) the association seeks to protect interests that are germane to its purpose; and 3) neither the claim asserted nor the relief requested requires individual members to participate in the lawsuit.  *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Defendants contend that the association plaintiffs fail to satisfy the third requirement of this test. Specifically, defendants argue that variations among health care plans and require the participation of individual chiropractors in the litigation.

Defendants' argument would be persuasive if the association plaintiffs were seeking certain types of monetary relief, for example, recovery of benefits recouped by BCBS entities. Were the association plaintiffs seeking to pursue claims of that sort, individual circumstances would matter significantly, and the participation of individual health care providers would almost certainly be required. But that is not the sort of relief the association plaintiffs are requesting. Rather, they seek only declaratory and injunctive relief. The difference matters:

> Whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.

*Warth v. Seldin*, 422 U.S. 490, 515 (1975).

In this case, the Court could grant the association plaintiffs injunctive relief that would benefit the individual chiropractors regardless of differences among health care plans. Defendants acknowledge that the association plaintiffs seek only declarative and injunctive relief. They maintain, however, that the question of whether defendants violated even a single association member's ERISA rights requires individualized proof on a number of subjects. These include whether the association member-chiropractor enjoyed rights under ERISA in the first place, along with subsidiary questions of the nature and validity of any assignments by patients; whether a given recoupment amounted to an adverse benefit determination under ERISA; and whether a particular

plan's procedures were ERISA-compliant.

Defendants' arguments misunderstand the nature of the association plaintiffs' claims. The association plaintiffs take issue not with any particular action or inaction by defendants. Rather, they challenge the defendants' general policies or procedures for reviewing and giving notice of adverse benefit determinations At this point, the association plaintiffs are not seeking to overturn any particular recoupment or benefit determination. Rather, they are seeking only prospective relief. Though the association plaintiffs intend to prove their claims, in part, with anecdotal testimony from individual chiropractors, that does not mean that the associations' claims for prospective relief turn on individual circumstances that will require the participation of individual association members. Rather, the associations challenge, and seek to change, the defendants' methodology, specifically, their alleged failure to provide ERISA-compliant notice and appeal rights even when the circumstances and the law require it. It remains to be seen, of course, whether the association plaintiffs will be able to establish a right to declaratory or injunctive relief. And it is possible that the evidence, and thus the outcome, may vary among the various BCBS entities named as defendants. But given the nature of the relief requested, and just as importantly the nature of the relief that is not requested, the Court finds that the participation of individual association members in the lawsuit is unnecessary. *See, e.g., Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 601-03 (7th Cir. 1993); *see also, e.g., Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1305-06 (11th Cir. 2010); *Penn. Psychiatric Ass'n v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002).

For these reasons, the Court concludes that the association plaintiffs have

standing and therefore denies defendants' request for summary judgment on this basis.

## 2.    Appropriate relief

The defendants have also moved for summary judgment on the ground that the Court is unable to grant the injunctive relief that the association plaintiffs seek. Defendants say that what the association plaintiffs are asking for amounts to an injunction not to violate ERISA.  They contend this is an overly broad and unwieldy form of injunctive relief, making it inappropriate.  The defendants are entitled to summary judgment on this ground only if there is no circumstance in which the Court could grant the association plaintiffs an appropriate form of injunctive relief.

In *Smith v. Med. Benefits Admin. Group*, 639 F.3d 277 (7th Cir. 2011), a case involving alleged ERISA violations, the Seventh Circuit engaged in an extended discussion of the types of relief available under ERISA.  The court stated that ERISA authorizes a court, in an appropriate case, to require a plan to modify its procedures "so as to bring them into conformity with the governing regulations as well as its broader fiduciary obligations to plan participants."  *Id.* at 284.  The court went on to state that this "might be entirely [an] appropriate form[ ] of relief if . . . what happened to [the plaintiff] was not an isolated occurrence but was consistent with [the plan's] routine . . .  practices . . . ."  *Id.*

The declaratory and injunctive relief that the association plaintiffs are requesting in this case is essentially the type of injunctive relief that *Smith* authorizes.  Plaintiffs contend that each of the defendants is violating ERISA in a common way, specifically by "routinely refus[ing] to provide providers with ERISA due process rights even in situations where the provider qualifies as an ERISA beneficiary and the recoupment

constitutes an [a]dverse [b]enefit [d]etermination." Ass'n Pls.' Cross-Mot. for Summ. J. at 14. And there is at least some evidence supporting plaintiffs' contention that none of the defendants provides ERISA-compliant notice and appeal rights to providers who are subjected to "audits" and recoupment after payment is made. On the present record, the Court cannot say that there is no viable form of declaratory or injunctive relief that it could order. The Court therefore declines to grant summary judgment for defendants on this basis.

Defendants argue, though only in their reply brief, that the association plaintiffs are not entitled to declarative or injunctive relief against WellPoint, a holding company that owns and operates health insurance entities, including Anthem. Defendants contend that WellPoint does not participate in or have control over any decisions regarding the recoupment of benefits, including providing appellate review of such decisions. The association plaintiffs maintain that WellPoint is a proper target of their request for injunctive relief because it adopts recoupment practices for its health insurance entities and applies these practices itself, including demanding repayment of benefits from individual chiropractors.

Having reviewed the parties' submissions, the Court concludes that the nature and extent (if any) of WellPoint's participation in and control over decisions and processes regarding the recoupment of benefits remains genuinely disputed. The Court therefore declines to enter summary judgment in favor of WellPoint.

3. ERISA violations

The association plaintiffs have moved for summary judgment in their favor on their claim that the defendants' practices regarding post-payment demands for

repayment violate the associations' members' rights under ERISA to adequate notice and appeal. 29 U.S.C. § 1133.

ERISA's governing regulations provide that in the event of an adverse benefit determination, the plan administrator must provide a claimant written or electronic notice. The notice must state the specific reasons for the determination, identify the provisions of the plan on which the determination was based, describe any additional material or information necessary to perfect the claim and explain why it is necessary, describe available review procedures and their time limits, and notify the claimant of its right to bring a civil action under ERISA section 502(a). 29 C.F.R. § 2560.503-1(g)). The regulations also entitle each claimant to "a reasonable opportunity to appeal an Adverse Benefit Determination" and to receive a "full and fair review of the claim," along with information about any time limits on either. 29 C.F.R. § 2560.503-1(h)(1).

"In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient." *Halpin v. W.W. Grainger*, 962 F.2d 685, 690 (7th Cir.1992). "The inquiry into whether [denial] procedures substantially complied with the demands of [ERISA] is fact-intensive and guided by the question of whether the beneficiary was provided with a statement of reasons that allows a clear and precise understanding of the grounds for the administrator's position sufficient to permit effective review." *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 693 (7th Cir. 2010).

The association plaintiffs contend that the defendants routinely inform the associations' members of retroactive adverse benefit determinations without providing the reasons for the determination, without identifying the plan provisions on which the determination is based, and without any reference to what additional material or

information is required to perfect the claim and why, available review procedures, or applicable time limits. The association plaintiffs also contend that certain BCBS entities do not offer any appeal procedures at all. If plaintiffs are correct, defendants' practices do not substantially comply with ERISA, because they provide neither an explanation for a retroactive benefit denial or an adequate opportunity to challenge the denial.

The association plaintiffs are not, however, entitled to summary judgment. They base their motion on what they characterize as "the undisputed facts that WellPoint, IBC, BCBSF and BCBSRI have each adopted uniform practices with regard to its post-payment audits and repayment demand policies which ignore ERISA entirely, and fail to substantially comply with ERISA's procedural requirements . . . ." Fourth Am. Compl. at 25-26. But a closer look reveals that disputes remain regarding what each entity's policies or approaches are.

The Court will illustrate this with an example. In contending that BCBSRI treats adverse benefit determinations in a way that fails to substantially comply with ERISA, the association plaintiffs rely in part on the deposition of BCBSRI employee Doreen Paola. During her deposition, Paola stated that at least one department of BCBSRI sends claimants that have received an adverse benefit determination of the type at issue here a standard letter that asks the claimant to reach out to BCBSRI about options for repayment within ten days of its receipt. Paola also stated that this department does not have a policy regarding appeals of adverse benefit determination decisions. For their part, defendants point to an affidavit submitted by Paola to argue that the notices that they provide to claimants vary based on the circumstances surrounding the recoupment and include information on how and when a claimant can

contest the decision. Defendants also argue, based on Paola's declaration, that they have three formal appeal procedures that apply in these situations.

In this situation, genuine factual disputes remain about the manner in which BCBSRI treats adverse benefit determinations of the type at issue in this case. And though this is just one illustration, similar issues exist regarding the other defendants. For these reasons, the Court denies the association plaintiffs' cross-motion for summary judgment.

## Conclusion

For the foregoing reasons, the Court denies both the association plaintiffs' and various defendants' motions for summary judgment regarding the claims of the association plaintiffs [docket nos. 759 and 789].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  November 7, 2013