# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PENNSYLVANIA CHIROPRACTIC ASSOCIATION, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )  No. 09 C 5619<br>) |
| BLUE CROSS BLUE SHIELD ASSOCIATION, et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After a bench trial on December 2, 3, and 4, 2013, the Court found in favor of the Pennsylvania Chiropractic Association (PCA) on its ERISA claims against Independence Blue Cross (IBC). *See Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2014 WL 1276585 (N.D. Ill. Mar. 28, 2014). The Court also concluded that PCA is entitled to an appropriate permanent injunction and directed the parties to brief "the question of the precise contours the injunction should take." *Id.* at *18. PCA has now submitted a proposed permanent injunction, which requires IBC to provide ERISA-compliant notice and appeal when demanding that a health care provider repay previously issued health insurance benefits. For the reasons stated below, the Court approves PCA's proposed injunction in part.

## Background

After the bench trial in this case, the Court determined that PCA members were

beneficiaries for purposes of ERISA because IBC paid benefits directly to them for services they rendered to insureds. (The Court assumes familiarity with that decision and the facts of this case.) The Court also concluded that PCA members suffered adverse benefit determinations within the meaning of ERISA when IBC withheld or reduced payments after determining that previous payments were made incorrectly. The Court then decided that the notice and appeal procedures that IBC provides to PCA members do not substantially comply with ERISA. The Court concluded its decision by addressing the question of whether PCA members are entitled to a permanent injunction to address IBC's notice and appeal procedures and practices regarding recoupments of paid benefits from PCA providers.

      The Court noted the four elements a plaintiff must show in order to obtain a permanent injunction: 1) it suffered an irreparable injury; 2) remedies available at law, such as damages, are inadequate to redress that injury; 3) the balance of hardships favors awarding injunctive relief; and 4) an injunction would not disserve the public interest. *See Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2756 (2010). In addition to determining that PCA had shown the presence of the first two elements, the Court determined that PCA had satisfied the balance of hardships element: "There is no indication that an order requiring IBC to modify its notice and appeal procedures would impose an undue burden that would outweigh the hardship to PCA members if an injunction is denied." *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *18. The Court noted the fact that IBC currently offers "enhanced notice and appeal procedures to some providers," such as those subject to a settlement in which IBC agreed to alter some of its notice and appeal processes. *Id.* The Court concluded that "[t]here is

2

nothing that suggests this is unduly burdensome to IBC or that extending similar rights to other providers entitled to ERISA-compliant notice and appeal procedures would be unduly burdensome." *Id.* The Court then determined that an injunction would not disserve the public interest, because requiring IBC to provide notice and appeal under ERISA would advance the purpose of the statute, which is intended to protect direct beneficiaries of health and welfare benefit plans. Having determined that PCA satisfied these two elements, the Court decided that PCA was entitled to an appropriate permanent injunction against IBC. PCA submitted a proposed injunction, and IBC has responded in kind, both with argument and with its own proposed injunction.

## Discussion

Federal Rule of Civil Procedure 65(d) requires that an order granting an injunction state the reasons why it issued and include specific terms as well as "reasonable detail" about "the act or acts restrained or required." These are "no mere technical requirements," because they are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). The Seventh Circuit has "insisted on strict compliance with these requirements." *United States v. Apex Oil Co.*, 579 F.3d 734, 739 (7th Cir. 2009).

In addition, injunctions must comply with "the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation." *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013). In fashioning the injunction, the court must "tailor injunctive

3

relief to the scope of the violation found." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (internal quotation marks omitted). The Seventh Circuit has upheld injunctions that are "targeted at the wrongdoing, but broad enough to be effective." *Russian Media Group, LLC v. Cable Am., Inc.*, 598 F.3d 302, 306 (7th Cir. 2010). However, "a court abuses its discretion where the scope of injunctive relief exceeds the extent of the plaintiff's protectible rights." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995) (internal quotation marks and alterations omitted).

PCA's proposed permanent injunction requires IBC to identify the health plan(s) at issue when demanding repayment from a provider on previously issued health insurance benefits and to note which plans are governed by ERISA. If the claim in question is governed by ERISA, PCA's proposal would require IBC to note the reason for the repayment demand, identify the applicable plan provisions, describe material the provider may produce to avoid repayment, and provide information about appeal procedures and the right to bring a civil action under ERISA after an adverse benefit determination. If the repayment demand deals with benefits originally paid pursuant to the terms of a group health plan, PCA's proposal would require IBC to identify the internal rule or policy relied upon in making the demand and to explain the scientific or clinical judgment for the determination if it exists (or a statement that such information can be provided free of charge). PCA's proposed injunction also would establish appeal procedures for providers subject to repayment demands when the benefit in question was paid pursuant to an ERISA plan. Providers would have sixty days to appeal and the opportunity to submit documentation relating to the appeal, which IBC must consider, and providers must also receive all information relevant to the demand. If the

demand involves benefits paid pursuant to terms of a group health plan, the provider would get 180 days to appeal, and IBC would be prohibited from giving deference to its initial reduction of benefits.  These appeals would be decided by a named fiduciary of the plan, who could not be the same person who made the original benefit reduction determination and would be required to consult with a health care professional if the determination was at all based on a medical judgment.  IBC would be required to identify any experts who advised its decision to reduce the benefits.  Under PCA's proposal, IBC would be required to implement these policies within 120 days of the Court's entry of the injunction and would be precluded from issuing any new repayment demands until doing so.  Further, IBC would be required to apply these procedures to any repayment demand issued between September 10, 2006 and the date the new procedures are implemented.  PCA's proposed procedures would apply to all "health care providers."  Pl.'s Proposed Perm. Inj. at 1.

In its memorandum supporting imposition of the proposed injunction, PCA describes how its proposal tracks the requirements of and is designed to comply with ERISA and enjoins conduct of IBC that evades ERISA's requirements.  PCA then argues why the injunction should be broad and should apply to all health care providers, not just PCA members.  In response, IBC contends it is not required to provide ERISA-compliant notice and appeal; the proposed injunction imposes burdens on IBC and non-parties that substantially outweigh its benefits; and PCA's proposed injunction is too broad.  IBC's own proposed injunction differs in some (but not all) ways from PCA's injunction, and it also includes certain procedures that IBC is already offering.

5

### A. Application of ERISA to IBC

IBC argues first that because it is not a plan administrator, ERISA prohibits it from supplying ERISA-compliant notice and appeal to chiropractors. It bases this argument on the fact that the plan documents PCA presented at trial identify IBC as the "claims administrator," but only "the *plan administrator* and *named fiduciary* . . . are bound by ERISA's claim and appeal requirements for benefit disputes." Def.'s Resp. at 6 (citing 29 C.F.R. § 2560-503-1(f)–(j)). Therefore, IBC argues, requiring it to provide ERISA-compliant notice and appeal "would contradict the terms of ERISA, not to mention the public interest, by imposing upon IBC significant legal obligations that belong only to plan administrators." *Id.*

By this argument, IBC attempts to revisit the Court's earlier conclusion that it is required to provide notice and appeal to PCA members pursuant to ERISA when it recoups benefit amounts. The Court has already made that determination, and this is "the violation established in the litigation." *See AutoZone*, 707 F.3d at 841. Therefore, the Court may appropriately issue an injunction that requires IBC to provide notice and appeal to PCA members that complies with ERISA.

Furthermore, the portion of the Code of Federal Regulations that IBC cites does not require that *only* a "plan administrator" or "named fiduciary" provide notice and an appeal pursuant to ERISA. The regulation requires plan administrators and named fiduciaries to provide notice and appeal to claimants in accordance with a specific set of standards. *See* 29 C.F.R. § 2560-503-1(f)–(j). But it contains no limitation on whether and which other entities can provide similar notice and appeal, and IBC identifies no such language. IBC is correct that the plan documents PCA presented at trial state that

6

IBC is not the plan administrator, but this is irrelevant; IBC is attempting to read into the regulation an exclusionary passage that is not there. The Court may appropriately issue an injunction that is tailored to the scope of the violation found. The Court concludes that requiring IBC to provide ERISA-compliant notice and appeal rights fits this description.

**B.     Breadth of proposed injunction**

PCA proposes an injunction that applies "to any dispute raised by a health care provider that concerns a repayment demand that was issued between September 10, 2006 and the date IBC implements" the procedures outlined in the injunction. Pl.'s Proposed Perm. Inj. at 3. IBC argues that the proposed injunction is overbroad. The injunction is "broadly impractical," IBC argues, because PCA wants its injunction to apply both to PCA members and non-members alike. Def.'s Resp. at 14 (quoting *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011)). The Court concludes that both the reach of the proposed injunction beyond PCA members and its retroactivity are problematic.

**1.     Application beyond PCA members**

PCA requests an injunction that applies to all providers who contract with IBC, not just PCA members, and not even just chiropractors. PCA outlines three reasons for this request:  first, IBC's failure to provide ERISA-compliant notice and appeal is a routine practice with application to all providers; second, associations such as PCA may seek injunctions against practices that apply to all persons; and third, the injunction must be broad because there is no practical way for IBC "to selectively apply ERISA-compliant claims procedures only to PCA members." Pl.'s Mem. at 9. In response, IBC

7

argues that the Court should reject PCA's proposed injunction because PCA presented no evidence about other providers at trial, and the Court did not make decisions regarding other providers.

As noted above, an effective injunction is "broad enough to be effective," *Russian Media Group*, 598 F.3d at 306, but the Court must "tailor injunctive relief to the scope of the violation found." *e360 Insight*, 500 F.3d at 604. The injunction must "prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation." *AutoZone*, 707 F.3d at 841. In other words, the Court may not impose relief that is broader than what is appropriate to remedy the actual wrong that the Court found.

PCA appears to assume the Court determined that PCA's practices extend to all medical providers. This is a faulty assumption. The Court's ultimate conclusion was that "PCA is entitled to an appropriate permanent injunction." *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *18; *see also id.* at *17 ("The evidence showed that it has been IBC's usual course of business to provide inadequate notice and appeal rights in connection with recoupments of payments from PCA's members."). PCA also attempts to extrapolate from the trial testimony of Linda Paterson, IBC's senior director of provider relations, that the notice and appeal practices that PCA opposed in the litigation apply to all providers of any kind who contract with IBC. That may be true, but it misses the point; whether IBC offers *all providers* the same treatment was not litigated at trial. More importantly, it was not the basis of PCA's claims. PCA's fourth amended complaint alleges "on behalf of Plaintiffs and the ERISA Classes" that IBC failed to provide ERISA-compliant review. 4th Am. Compl. at 172. Likewise, PCA's claim for

equitable relief under ERISA concerned only the demands of PCA members, as evidenced by PCA's argument at trial: "Through this lawsuit, the PCA seeks relief that will protect its members from the ongoing ERISA violations resulting from IBC's standard and uniform policies." Trial Tr. at 17; *see also id.* at 531 (asking Court to impose injunction "or similar relief on behalf of the PCA"). These statements make it clear that PCA was seeking relief for PCA members, not for the universe of providers who contract with IBC. That is all the Court may appropriately rule on.

PCA's argument about how its status as an association affects the scope of the relief it may seek is similarly unavailing. PCA contends that the Supreme Court "implicitly recognized" the right of an association to "seek relief enjoining unlawful policies and practices as applied to all persons, whether members of the association or not." Pl.'s Mem. at 9 (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)). PCA does not explain how *Hunt* supports this proposition, nor does it provide a page citation that would assist this Court in figuring it out. Regardless, *Hunt* is distinguishable. The association in that case had no actual members, but it nonetheless argued it had standing to bring its claims on behalf of those whose interests it represented. *See* 432 U.S. at 342. The plaintiff in *Hunt* was an association that sought relief for apple growers in a challenge against a statute specific to the importation of closed containers of apples into North Carolina. *Id.* at 337–39. There is no indication from the case that the association sought relief "as applied to all persons," as PCA argues. The apple growers and dealers of Washington State that the association represented "possess[ed] all of the indicia of membership in an organization." *Id.* at 344. "In a very real sense, therefore," the Supreme Court said, "the Commission

represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests." *Id.* at 345. In bringing its claim against the statute, the association in *Hunt* was "representing the individual growers and dealers who collectively form its constituency." *Id.* By contrast, PCA does not similarly contend here that all medical providers are within PCA's constituency, and it offers no other authority to support this supposition.

PCA argues that a determination that its associational status does not permit it to bring claims for all persons would be wasteful, "because it would require non-PCA members to initiate similar actions seeking identical relief." Pl.'s Mem. at 9. Yet as noted above, the evidence adduced at trial did not establish that all non-PCA providers received the same treatment as the PCA members who formed the focus of the evidence. Further, PCA's argument that it would be impractical for the Court to impose relief for PCA members only is similarly unhelpful. PCA contends that "IBC would not know whether the provider was a PCA member when this case was filed" in dealing with appeals from PCA members. Pl.'s Mem. at 9. Left unsaid, however, is why PCA would not be able to provide this information to IBC so that it can be input into IBC's system, if it has not done so already. PCA presumably knows who its members are and can provide this list to IBC.

At bottom, PCA is now asking for a more far-reaching injunction than what was apparent from its complaint and its argument at trial. The Court concludes that the injunction should be limited to IBC's notice and appeal procedures provided to PCA members upon issuance of a demand for repayment of a benefit.

### 2. Retroactive application

PCA also asks the Court to order IBC to apply the procedures PCA requests "to any dispute raised by a health care provider that concerns a repayment demand that was issued between September 10, 2006" and the Court's approval of an injunction in this case. Pl.'s Proposed Perm. Inj. at 3. PCA determined that this date is appropriate "by extending ERISA's 3-year statute of limitations for actions arising from a fiduciary's breach of duty, 29 U.S.C. § 1113(2), back from September 10, 2009, the date this litigation was filed." Pl.'s Mem. at 3 n.3. PCA provides no other support for asking that the Court's imposition of the injunction be retroactive to this date.

An injunction, however, is a prospective remedy. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 515 (1975) (categorizing injunction among "form[s] of prospective relief"); *Kartman*, 680 F.3d at 894 (noting that injunction "provid[es] a final prospective remedy for ongoing and future" harm); *Daubert v. Percy*, 713 F.2d 328, 330 (7th Cir. 1983) (distinguishing "retroactive money award" from injunction requiring prospective relief). PCA has not submitted any authority supporting its assertion that the proposed injunction should be retroactive to a date seven and one-half years prior to the Court's ruling on liability. The portion of ERISA that PCA cites simply discusses the statute of limitations for ERISA claims; it has nothing to do with the retroactivity of injunctions under ERISA. *See* 29 U.S.C. § 1113(2). The Court concludes that only a prospective injunction is appropriate.

### C. Hardship of imposing injunction on IBC and non-parties

IBC's other arguments against PCA's proposed injunction largely involve the hardships it would place on both IBC and other entities and individuals. These include

11

the ERISA plans with which IBC contracts; employers who administer plans; their employees; and Highmark, IBC's claim processing vendor. IBC argues that its own task of implementing PCA's proposed injunction "will be extraordinarily burdensome." Def.'s Resp. at 11. IBC contends it cannot possibly implement the tasks imposed by PCA's injunction with 120 days, the time PCA requests. Also, using several technical terms it does not define, IBC argues that "the systems logic that drives the generation of EOBs to members cannot easily be integrated into the programming logic that governs the generation of SORs to chiropractors." *Id.* IBC cites a two-year "migration project" that is under way to move its members to a new claim processing platform at Highmark, a project requiring "thousands of man hours and millions of dollars." *Id.* IBC states that implementing the injunction "would not be feasible" because of this migration—though it does not explain why. *Id.*

IBC also contends that the proposed injunction will harm parties other than IBC. It argues that the injunction "will significantly curtail the rights of the ERISA employer plan sponsors that contract with IBC," because it will restrict their rights "to define who may be a 'beneficiary' under their plans." Def.'s Mem. at 7–8. IBC also says that administrators of these plans will have to coordinate disputes directly with PCA members "to ensure that the 'benefits' sought are among the benefits actually provided by the plan." *Id.* at 8. In what appears to be a variation on the same argument, IBC also contends that these plan administrators will have "to review and decide a large number of provider disputes," which "will place a considerable burden on" them and "make their health plans more expensive to administer." *Id.* at 9. This, combined with IBC's heightened review tasks under the injunction will cause employers "to reduce

12

benefits or shift more costs to employees," ultimately reducing benefits to plan participants, according to IBC.  *Id.* at 10.  Therefore, IBC argues, "the proposed injunction 'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress' in enacting ERISA."  *Id.* (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 99 (1993)).

In making most of these arguments, IBC is essentially rearguing the merits of the issue that the parties addressed—or at least should have addressed—at the bench trial and is attempting to revisit the Court's conclusion that PCA is entitled to injunctive relief.  Indeed, in discussing the "claim migration" issue, IBC specifically announces what the Court should consider "[i]n evaluating the balance of hardship."  Def.'s Mem. at 12.  The Court already considered and decided that issue in its decision following the bench trial and determined that the balance of hardships weighed in favor of granting an injunction to PCA.  The Court concluded in its earlier opinion that there was "no indication" that an injunction "would impose an undue burden that would outweigh the hardship to PCA members if an injunction is denied."  *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *18.  Whatever merits they may have, IBC's other arguments about the effect of the injunction on certain non-parties fall into the same basket, as they regard "the intrusiveness of the ordered act."  *See Kartman*, 634 F.3d at 892; *see also Yakus v. United States*, 321 U.S. 414, 440 (1944) (court must " balance[ ] the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction").  In short, the Court already decided this point.  These arguments were not timely raised and are forfeited.  *See United States v. Roti*, 484 F.3d 934, 935–36 (7th Cir. 2007) (argument forfeited when attorney "did not call [argument] to the district

judge's attention until after trial or make an argument along its lines"); *Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*, 23 F.3d 1212, 1215 (7th Cir. 1994) (argument "[c]learly" waived when made for first time after trial and "should have [been] presented . . . at the trial").

Furthermore, the Court also decided in its prior order that a permanent injunction against IBC in this case would satisfy the public interest element of the standard for issuing a permanent injunction. The Court held that "requiring a plan administrator to afford notice and appeal rights that comply with ERISA serves the public interest in enforcing duly enacted national legislation whose purpose is to protect workers who are the direct beneficiaries of employer-provided health and welfare benefit plans." *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *18. IBC's arguments on the potential for the injunction to increase costs to plans, decreasing benefits and contravening the spirit of ERISA, are aimed directly at this public interest element. Again, the Court has already decided this question.

IBC's arguments on these points come far too late in the day. The Court notes that IBC did not file a motion seeking reconsideration of the Court's decision that a permanent mandatory injunction is warranted in this case. Even if IBC had done so, however, such a motion would lack merit. Reconsideration is appropriate "when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). By contrast, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Ashcroft*, 388 F.3d

247, 249 (7th Cir. 2004) (internal quotation marks omitted). Each and every one of the points that IBC now makes on the appropriateness of issuing an injunction was a point it could have made during the trial. IBC does not identify anything that prevented it from making these arguments at trial, where plaintiffs specifically sought an injunction. These points have been forfeited.

However, one of IBC's arguments—that it needs more time to comply with PCA's proposed injunction in order to ease IBC's task of implementing the injunction—is appropriately aimed at "the question of the precise contours the injunction should take" rather than rearguing the Court's previous ruling. Without further information from IBC, the Court is left with little to guide it in determining how much extra time IBC legitimately needs. The Court will therefore permit IBC to comply within 150 days of the date of this order, not the 120 days PCA has proposed.

## Conclusion

For the reasons stated above, the Court approves in part PCA's proposed injunction. The injunction will be contained in a separate entry.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 19, 2014

15