IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PENNSYLVANIA CHIROPRACTIC ASSOCIATION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 09 C 5619 ) |
| BLUE CROSS BLUE SHIELD ASSOCIATION, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In November 2013, the Court granted summary judgment in part to two Pennsylvania chiropractors, Barry Wahner and Mark Barnard, as to liability on their claims against Independence Blue Cross (IBC). *See Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2013 WL 5951765 (N.D. Ill. Nov. 7, 2013). Barnard and Wahner, among several other plaintiffs including the Pennsylvania Chiropractic Association (PCA), sued IBC and others for violations of the Employee Retirement Income Security Act (ERISA). After the Court's decision on summary judgment, the Court held a bench trial on the claims of PCA, including testimony from Barnard and Wahner. In March 2014, the Court ruled in favor of PCA on its claims against IBC, and subsequently granted PCA a permanent injunction against IBC, requiring it to reform its notice and comment procedures when issuing repayment demands to PCA members. *See Pa. Chiropractic Ass'n v. Blue Cross Blue Shield*

*Ass'n*, No. 09 C 5619, 2014 WL 2069343 (N.D. Ill. May 19, 2014). Barnard and Wahner have now moved for a similar injunction, as well as an injunction requiring IBC to suspend one of its claims payment policies, payment of funds IBC recouped from them plus interest, and $25,000 each for Barnard and Wahner as an equitable surcharge. In this decision, the Court addresses the appropriate relief to be awarded to Barnard and Wahner.

**Background**

The Court assumes familiarity with the facts from its multiple prior opinions in this case. Wahner and Barnard are chiropractors in Pennsylvania, each with separate practices. Both became participating health care providers with IBC in 1997, and IBC paid both chiropractors for services they rendered to plan participants. In December 2008, IBC sent letters to both Barnard and Wahner informing them that IBC had erroneously paid them for certain services included in IBC's short term rehabilitation therapy capitation program, and that IBC would recoup the money. Wahner appealed this determination, but IBC upheld its decision to recoup the money.

Wahner and Barnard were among the plaintiffs, including PCA, who sued the Blue Cross and Blue Shield Association and a number of Blue Cross entities including IBC. In November 2013, the Court granted Barnard and Wahner summary judgment in part on their claims against IBC. The Court left for trial the issues of whether Barnard and Wahner had standing as ERISA beneficiaries or whether they had experienced adverse benefit determinations, which would entitle them to ERISA-compliant notice and appeal. The Court proceeded to find that the notice and appeal procedures IBC did offer Barnard and Wahner did not substantially comply with ERISA, and that IBC's

2

recoupments from them were arbitrary and capricious.

The Court held a bench trial on PCA's claims against IBC in December 2013. Both Barnard and Wahner testified about their interactions with IBC as well as their own practices. Based in part on Wahner and Barnard's testimony, the Court found that PCA members were ERISA beneficiaries, that IBC's recoupments constituted adverse benefit determinations, and that the notice and appeal procedures IBC offered to PCA members did not substantially comply with ERISA. The Court therefore determined that IBC had violated ERISA with respect to PCA members and concluded that PCA members were entitled to a permanent injunction that would require IBC to reform its notice and appeal procedures with respect to PCA members. The Court ultimately ordered IBC to offer "ERISA-compliant notice and appeal when demanding that a health care provider repay previously issued health insurance benefits" and issued a detailed injunction outlining the procedures IBC is to follow. *Pa. Chiropractic Ass'n*, 2014 WL 2069343, at *1. The Court declined to extend this injunction to all medical providers who contract with IBC, limiting the injunction to PCA members only. The Court also declined to apply the injunction retroactively.

## Discussion

Barnard and Wahner have asked the Court for, among other things, a permanent injunction to address IBC's inadequate notice and appeal procedures and practices regarding recoupments of paid benefits from them. Section 502(a)(3) of ERISA enables a plan participant, beneficiary, or fiduciary to bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan . . . to obtain other appropriate equitable relief to redress such violations or . . . to enforce any

3

provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  This provision allows a beneficiary to seek an injunction against practices that violate the statute.

The right to injunctive relief under ERISA is determined based on the traditional standards for such relief, as "[t]here are no specific procedures under ERISA . . . which cover the issuance of injunctions."  *Gould v. Lambert Excavating, Inc.*, 870 F.2d 1214, 1217 (7th Cir. 1989).  Under traditional standards, a plaintiff seeking a permanent injunction must show that:  1) it suffered an irreparable injury; 2) remedies available at law, such as damages, cannot compensate for that injury; 3) the balance of hardships between the plaintiff and defendant warrants injunctive relief; and 4) an injunction would not disserve the public interest.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).

Federal Rule of Civil Procedure 65(d) requires an order granting an injunction to include the reasons why the injunction is issued; the specific terms of the injunction; and "reasonable detail" about "the act or acts restrained or required."  In fashioning an injunction, the court must "tailor injunctive relief to the scope of the violation found."  *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (internal quotation marks omitted).  The Seventh Circuit has upheld injunctions that are "targeted at the wrongdoing, but broad enough to be effective."  *Russian Media Group, LLC v. Cable Am., Inc.*, 598 F.3d 302, 306 (7th Cir. 2010).  However, "a court abuses its discretion where the scope of injunctive relief exceeds the extent of the plaintiff's protectible rights."  *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995) (internal quotation marks and alterations omitted).

4

Barnard and Wahner propose the following:

(1) Payment by IBC to Barnard and Wahner of amounts IBC recouped from both chiropractors under ERISA plans, plus daily compounded prejudgment interest;

(2) An additional $25,000 each for Barnard and Wahner "reflecting disgorgement of profits and a surcharge," B&W Proposed Order at 2;

(3) An injunction preventing IBC from applying its Claims Payment Policy no. 00.03.03c, which deals with payment for capitated services, unless IBC reforms the policy to include "case-specific assessment," *id.*;

(4) A further injunction, similar in terms to the one the Court issued against IBC in favor of PCA but specific to Barnard & Wahner, requiring detailed, ERISA-compliant notice and appeal procedures when IBC issues repayment demands to either of them;

(5) A requirement that any future repayment demand by IBC against Barnard or Wahner be considered a new adverse benefit determination under ERISA, and an injunction barring IBC from issuing future repayment demands to Barnard and Wahner without complying with the procedures they propose.

IBC takes issue with several of these proposals. It does not challenge the last item described or Barnard and Wahner's request for payment of the amounts IBC recouped from them plus compounding interest. IBC argues, however, that interest on those amounts should be compounded monthly, not daily. It also contests the proposed suspension of its 00.03.03c policy as well as the proposed injunction requiring it to reform its notice and appeal procedures similar to those in the injunction the Court granted to PCA. The Court will address each disputed item in turn.

**A.   Recovery of recouped funds plus compounding daily interest**

Barnard and Wahner have proposed that IBC pay them $4791 and $3839, respectively, for funds that IBC recouped from them, plus prejudgment interest compounded daily from the date of the recoupment. IBC argues that the pre-judgment

5

interest applied to the recouped amounts it will pay Barnard and Wahner should be compounded monthly, not daily. *See* IBC Resp. at 2 n.3, 13. Barnard and Wahner do not answer this argument in their reply brief. In their initial memorandum, they argue that the interest "should be compounded daily," but they provide no support in the form of argument or case citations for this proposal. B&W Mem. at 13. Elsewhere Barnard and Wahner argue that courts may award compounding interest, citing *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002), but that case does not specify whether the compounding should occur daily, monthly, or otherwise.

 IBC cites two district court cases in which pre-judgment interest was compounded on a monthly basis, although the courts in those cases did not state why they were choosing monthly compounding, nor did they reject any other method of compounding. *See Hines v. Hartford Life Ins. Co.*, No. 10-0265, 2012 WL 6004149, at *1–2 (S.D. Ill. Nov. 30, 2012); *Juszynski v. Life Ins. Co. of N. Am.*, No. 06 C 5503, 2008 WL 877977, at *15 (N.D. Ill. Mar. 28, 2008). A case IBC cites elsewhere in its brief, however, does provide a rationale, using language IBC quotes in its brief—that "[b]ecause monthly compounding of interest is standard on everything from mortgages to credit cards to car loans, such compounding is appropriate here." *Cabernoch v. Union Labor Life Ins. Co.*, No. 06 C 1515, 2009 WL 2497669, at *4 (N.D. Ill. Aug. 14, 2009). *Cabernoch* did not compare monthly to daily compounding interest—the court in that case was opting for monthly compounding over no compounding at all—but it still provides a sensible rationale for choosing monthly compounding. In the absence of any argument from Barnard & Wahner to the contrary, the Court awards them monthly compounding interest on the amounts IBC has agreed to pay them for recouped

6

payments. (What that amounts to precisely, however, is for the parties to calculate.)

**B.    Equitable surcharges**

In addition to an award of the amounts IBC recouped from them plus compounding interest, Barnard and Wahner also seek "an additional $25,000.00 reflecting disgorgement of profits and a surcharge." B&W Proposed Order at 2. They argue that this is permitted under 29 U.S.C. § 1132(a)(3)(B), which allows civil actions to be brought by ERISA plan beneficiaries "to obtain other appropriate equitable relief." They also point to *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011), in which the Supreme Court stated that a "[t]he surcharge remedy" is among the remedies that "fall within the scope of the term 'appropriate equitable relief'" in section 1132(a)(3). Barnard and Wahner contend they are entitled to this surcharge because their damages "exceed[ ] the interest-adjusted amount of the recouped funds," pointing to the time they spent on this litigation. B&W Mem. at 18. They also argue that IBC was unjustly enriched via its deficient notice and appeal procedures. They do not, however, discuss how they arrived at the $25,000 figure.

*Amara* is distinguishable from this case. As IBC observes, the plaintiffs in *Amara* were not entitled to relief under section 1132(a)(1)(B), so the Supreme Court looked to section 1132(a)(3) as an avenue for the plaintiffs to obtain relief and found it appropriate. But in the present case, IBC says, Barnard and Wahner do qualify for relief under section 1132(a)(1)(B) because they are seeking to "recover benefits due to" them. 29 U.S.C. § 1132(a)(1)(B). In this, IBC is correct—the plaintiffs in *Amara* were not seeking a surcharge beyond the benefits they sued to recover. *See Amara*, 131 S. Ct. at 1880. Here, by contrast, Barnard and Wahner seek a surcharge over and above

7

the benefit payments they are entitled to recover.

On the other hand, although *Amara* does not specifically condone such a two-part award, it does not proscribe it, either. The case simply did not discuss the present situation. Instead, it concerned a district court's decision to reform the terms of a plan and order benefits paid to beneficiaries according to those new terms. *See Amara*, 131 S. Ct. at 1875–76.

For its part, IBC points to *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996), where the Supreme Court also addressed section 1132(a)(3). It stated that "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* The Supreme Court noted it was "not the case" that the plaintiffs in *Howe* had avenues for relief other than section 1132(a)(3), because they had "no remedy at all" under other sections of ERISA. *Id.* The Supreme Court further noted that section 1132(a)(3) is a "'catchall' provision . . . offering appropriate equitable relief for injuries caused by violations that [section 1132] does not elsewhere adequately remedy." *Id.* at 512. As IBC points out, this Court has noted a "trend among the circuit courts . . . to interpret *Varity* to hold that a plaintiff whose injury creates a cause of action under [section 1132(a)(1)(B)] may not proceed with a claim under [section 1132(a)(3)]." *Schatzel v. Cent. States Se. & Sw. Areas Pension Fund*, 941 F. Supp. 2d 999, 1008 (N.D. Ill. 2013) (internal quotation marks omitted).

Barnard and Wahner nonetheless argue they have suffered injuries additional to the recoupment of payments. They point to IBC's "unjust enrichment" via improper profits gained through its deficient notice and appeal process. They say they were

8

unable "to substantively challenge IBC's recoupment rationale," a "natural consequence" of which was IBC's ability "to book profits on a larger portion of its premiums." B&W Mem. at 18. Whatever the logic may be in this argument, it has not been proven at any stage of this litigation, and Barnard and Wahner do not cite any evidence to support it. They do not, for example, provide any evidence of IBC's profits that directly resulted from Barnard and Wahner's lack of challenges to IBC's recoupment process. Whether such a profit existed, let alone exceeded or came close to $25,000, is unsubstantiated. Further, Barnard and Wahner do not provide a reason why payment of the recouped funds, plus compounding interest, is not an adequate remedy for this occurrence.

Barnard and Wahner also argue that the proposed $25,000 payments would address "IBC's depravation [sic] of their 'intangible' due process rights." B&W Reply at 6–7. They did not argue this in their initial memorandum. Rather, this was more or less the rationale Barnard and Wahner offered in that memorandum to support their demand for prejudgment interest. *See* B&W Mem. at 12 (prejudgment interest award appropriate "because of the extended period of time that Drs. Barnard and Wahner were deprived of their benefits without ERISA due process"); *id.* at 13 (stating that "the equities in this case support an interest award" because "IBC forcibly recouped monies from Drs. Barnard and Wahner without providing them a meaningful process"). It is also the rationale they offer in their reply to support a permanent injunction reforming IBC's policies. B&W Reply at 4–5. These arguments add support for the conclusion that other requested relief, such as compounded prejudgment interest, would adequately address Barnard and Wahner's intangible rights.

9

Barnard and Wahner cite one other injury to justify their request for the $25,000 surcharge. They contend that their "costs associated with having to file and pursue a suit against IBC" exceeds the value of the recoupments IBC made, as well as prejudgment interest. *Id.* at 7. This includes the "dozens of hours" they spent working on the litigation. B&W Mem. at 7. They have not, however, identified their specific costs associated with working on the litigation; they have not submitted anything to substantiate these expenses or losses. They have also separately moved for attorney fees, a motion that undoubtedly addresses a substantial amount of their monetary costs associated with the lawsuit outside their personal time spent not working and money spent on travel. Regardless, Barnard and Wahner have provided no support that the "other appropriate equitable relief" language of section 1132(a)(3) permits them to recover money for time spent on a lawsuit—particularly when they have not quantified to any degree the cost of the time they spent and they will receive an award of compounded interest beyond payment of the recouped amounts from IBC.

Considering these arguments, an additional $25,000 payment each to Barnard and Wahner is inappropriate because of the existence of other adequate remedies for their injury. *See Varity*, 516 U.S. at 515. IBC has conceded that Barnard and Wahner are entitled to prejudgment interest on top of the money they will receive for the recouped funds, and the Court has determined to award such interest. As noted earlier, relief under section 1132(a)(3) is appropriate when other ERISA sections do not address the beneficiary's injury. That is not the case here. Thus there is "no need for further equitable relief" beyond that relief. *See id.*

### C. Injunction against IBC's policy no. 00.03.03c

Here, Barnard and Wahner argue that IBC should be prohibited from enforcing its Claim Payment Policy no. 00.03.03c. It was under this policy, which is entitled "Outpatient Short-Term Rehabilitation Services Included in Capitation," that IBC recouped certain payments from Barnard and Wahner for services they provided to patients. *See* Pls.' Trial Ex. 18. The policy contains codes for certain services that served as the basis upon which IBC recouped payments. *See Pa. Chiropractic Ass'n*, 2013 WL 5951765, at *5 (letter from IBC to Wahner "explained that policy 00.03.03c does not allow 'outpatient short-term rehabilitation services' to qualify 'for fee-for-service reimbursement consideration'"); *id.* at *17 ("Independence also confirmed that the codes came from its own medical policy, as noted in a letter it sent to Wahner."). Barnard and Wahner's proposed injunction would permit IBC to enforce the policy if it "provides for a case-specific assessment of whether the particular treatments in question are covered under the terms of the applicable health plan(s)." B&W Proposed Order at 2. They contend that the Court found this policy to be arbitrary and capricious on summary judgment and that the policy "prevents providers like Drs. Barnard and Wahner from understanding why certain claims are covered and others are not." B&W Mem. at 15.

There is, however, an initial roadblock to this request. The Court noted in its ruling after the bench trial that to justify a permanent injunction, among other elements, "future harm should be imminent rather than likely to occur at some undefined point down the road." *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2014 WL 1276585, at *17 (N.D. Ill. Mar. 28, 2014) (citing *Monsanto*, 561 U.S. at 162). The Court also noted in its decision on the injunction in favor of PCA that injunctions are

prospective remedies. *Pa. Chiropractic Ass'n*, 2014 WL 2069343, at *5. Barnard and Wahner state, however, that they "no longer bill IBC for the procedures listed in" policy 00.03.03c. B&W Reply at 2 n.1. They argue that they do not do so because "IBC arbitrarily and capriciously refuses to pay for the services regardless of whether they are covered under the terms of the patients' health plans." *Id.* Nonetheless, they have essentially stated that IBC is no longer injuring them through its policy, because they are doing nothing that would call on IBC to invoke it. Given these circumstances, Barnard and Wahner have not shown that enjoining IBC's policy would prevent ongoing or future harm to them. For these reasons, the Court declines to enter an injunction in favor of Barnard and Wahner enjoining this policy.

**D.     Injunction for Barnard & Wahner similar to that granted to PCA**

The remainder of the injunction that Barnard and Wahner seek is largely the same as the one the Court granted to PCA on behalf of its members earlier this year. That injunction will therefore apply to Wahner, who is a PCA member. (Barnard is not a member.) IBC argues that its new procedures, whether they come via compliance with the PCA injunction or else through its own efforts, "will adequately compensate" Barnard and Wahner when combined with reimbursement for recoupments. IBC Resp. at 9. Barnard and Wahner's response is that this separate injunction should still be entered, because Barnard is not a PCA member, and Dr. Wahner, who is an individual plaintiff, "could terminate his PCA membership at some point in the future." B&W Reply at 3–4.

The Court agrees with Barnard and Wahner and will consider entering this part of the proposed injunction in their favor alongside the injunction the Court approved for

PCA members. The Court previously declined to extend the reach of the injunction for PCA beyond its own members in part because PCA's associational standing did not permit it to seek such an extension. Yet there is no reason why Wahner, an individual plaintiff who is indisputably a chiropractor from whom IBC recouped payments, should not be permitted to independently pursue a similar injunction despite his PCA membership, provided his motion for the injunction is supported by evidence. Both sides have agreed that the Court may consider evidence from the bench trial in deciding this motion, and Wahner is the only active PCA member who is currently asking for a separate injunction. The Court will therefore proceed to consider this part of the proposed injunction for both Wahner, who is a PCA member, and Barnard, who is not.

IBC argues that Barnard and Wahner have not established that they have suffered the requisite irreparable injury necessary to justify a permanent injunction. Although Barnard and Wahner have not been subject to any recoupments by IBC since 2010 (Barnard) and 2011 (Wahner), they argue that "there is no reason to doubt that" IBC will continue recouping payments without adequate notice and appeal unless the Court issues an injunction. *Id.* at 5. They cite the trial decision, where the Court stated that "the evidence established that providing inadequate notice and appeal procedures is IBC's routine practice even now. Thus PCA's members are likely to continue to suffer the same injuries over and over again, in the near and not-so-near future." *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *17. This is a more solid foundation for a prospective injunction than is Barnard and Wahner's request to enjoin policy 00.03.03c (under which, they say, they no longer submit claims). The Court found "that it has been IBC's usual course of business to provide inadequate notice and appeal rights in

13

connection with recoupments of payments from PCA's members." *Id.* Under the rationale of the trial decision, then, there is a sufficient likelihood that IBC will recoup payments from Barnard and Wahner in the future, even if not related to policy 00.03.03c. Barnard and Wahner meet the irreparable injury portion of the test for a permanent injunction.

IBC next argues that Barnard and Wahner will be adequately compensated absent this particular part of the proposed injunction. IBC contends that the money IBC has agreed to pay them sufficiently addresses their injuries and that the "enhanced claim-and-appeal rights for chiropractors with respect to payment recoupments" that IBC is currently implementing will be adequate. IBC Resp. at 9. Barnard and Wahner respond that IBC's proposed internal changes do not satisfy ERISA. They also contend that an injunction is necessary beyond the monetary relief they will receive because IBC's recoupment procedures deprived them of due process.

Barnard and Wahner are correct on both points. As for changes IBC plans to make absent any injunction, the Court found in its decision on the bench trial that "IBC is not taking ERISA into account during its process of modifying its procedures." *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *7. Thus the new procedures will not duplicate the full extent of the proposed injunction, as the Court has determined that PCA members are entitled to ERISA-compliant notice and appeal. Also, IBC argued in response to PCA's proposed injunction that the changes it was making were not the same as "fully ERISA-compliant claim and appeal procedures," which it contended would be far more expensive. IBC Resp. to PCA Proposed Inj. at 13 [dkt. no. 915]. As for the extent of Barnard and Wahner's injuries, the Court has already found, based on

Barnard and Wahner's testimony, that the injuries PCA members suffered are "irreparable," because IBC has "deprive[d] them of something intangible, specifically, the information supporting the adverse determination and the right to be heard in opposition." *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *17. The Court found that this injury was in addition to the "monetary benefits (the payments)" that IBC had also taken from the chiropractors. *Id.* This was a sufficient basis to grant a permanent injunction to PCA members, and it should likewise apply to Barnard and Wahner, whose testimony provided much of or at least part of the basis for that decision.

Finally, IBC argues that the balance of hardships does not favor entry of this proposed injunction. IBC contends that the amount it recouped from Barnard and Wahner based on capitation payments was under $3000; they haven't been subject to such recoupments "for years"; and IBC will already "be implementing enhanced policies and procedures" regarding recoupments. IBC Resp. at 9–10. Outside the fact that the Court has already addressed most of these contentions, missing here is any discussion of hardships IBC might face in complying with this part of the proposed injunction. The Court has already found that requiring IBC to modify its notice and appeal procedures would not impose an undue burden that would outweigh the hardship to PCA members if an injunction was not ordered. IBC has not provided a reason as to why reforming its procedures with respect to Barnard and Wahner would constitute a hardship.

Considering these arguments, the Court concludes that Barnard and Wahner are entitled to an injunction requiring IBC to provide them with ERISA-compliant notice and appeal procedures.

**Conclusion**

For the reasons stated above, the Court approves in part Barnard and Wahner's proposed injunction as well as their motion for payment of the funds IBC recouped from them, plus prejudgment interest. The parties are directed to confer and attempt to agree on the amount of prejudgment interest that Barnard and Wahner are due based on monthly compounding through the date of September 2, 2014. They are also to prepare a proposed form of injunction consistent with this decision. A joint report addressing both of these elements, and attaching a copy of the proposed form of injunction, is to be submitted by August 26, 2014. The case is set for a status hearing on August 28, 2014 at 9:30 a.m.

                                                  MATTHEW F. KENNELLY
                                                  United States District Judge

Date: August 19, 2014