**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA CHIROPRACTIC ASSOCIATION, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **No. 09 C 5619** |
| **BLUE CROSS BLUE SHIELD ASSOCIATION, et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Pennsylvania Chiropractic Association (PCA), Mark Barnard, D.C. (Barnard), and Barry Wahner, D.C. (Wahner) have moved for an award of attorney's fees and costs against defendant Independence Blue Cross[1] (IBC) pursuant to 29 U.S.C. § 1132(g)(1). For the reasons stated below, the Court grants plaintiffs' motion for fees and costs but reduces the requested fee award and directs the parties to confer and quantify the reductions ordered.

### Background

The Court assumes familiarity with the previous orders in this case. As an overview, associations representing the interests of individual chiropractors sued Blue Cross and Blue Shield Association and a number of Blue Cross Blue Shield entities for

---

[1] According to defendant's October 3, 2014 corporate disclosure statement, IBC is now known as Independence Hospital Indemnity Plan, Inc., a Pennsylvania not-for-profit hospital plan corporation. For consistency with prior orders and the parties' briefs, the Court continues to refer to the defendant as IBC.

violations of the Employee Retirement Income Security Act (ERISA).  Following the Court's 2013 rulings on the parties' motions for summary judgment, nearly all of the remaining claims were settled.  What remained were PCA's injunctive relief claims against IBC and the claims against IBC of two individual plaintiffs, Barry Wahner and Mark Barnard, to whom the Court had granted summary judgment on the issue of liability.

After a bench trial on PCA's injunctive relief claims, the Court found in favor of PCA.  PCA claimed that IBC unlawfully recouped payments it had previously made to its members.  IBC withheld payments for authorized services in order to account for a claimed computer glitch that resulted in overpayments to certain providers.  Providers received notice in the form of a letter stating that overpayments had been made, but the notice did not identify the particular services at issue.  In certain cases, IBC began recouping payments without giving providers reasons for the recoupments or information about their rights to appeal.  Providers who attempted to pursue an appeal through IBC's general appeals process were not provided with adequate information concerning the outcome of the review or the evidence that was reviewed in reaching the decision, and there was no real opportunity for providers to participate in any appeals.

After the bench trial, the Court found in favor of PCA on its ERISA claims, finding that PCA members were beneficiaries for purposes of ERISA because IBC paid benefits directly to them for the services they rendered to insureds.  In the alternative, the Court held that PCA members were ERISA beneficiaries because patients had assigned their rights to receive benefits to PCA providers.  The Court determined that IBC did not

provide adequate notice and appeal procedures for providers to challenge the recoupment of paid benefits as required under ERISA.

On May 19, 2014, the Court issued a permanent injunction requiring IBC to provide ERISA-compliant notice and appeal procedures to PCA members when it seeks recoupment of a benefit.

The Court later ruled on the matter of the appropriate relief for Wahner and Barnard, who had obtained summary judgment on the issue of liability. The Court found they were entitled to an injunction as well as monetary relief arising from wrongful recoupments of benefit payments. The injunction, which the Court issued on September 4, 2014, required IBC to provide Wahner and Barnard with ERISA-compliant notice and appeal procedures. The Court recently stayed the injunctions pending the resolution of IBC's appeal by the Seventh Circuit.

PCA, Barnard, and Wahner have now moved for attorney's fees and expenses pursuant to 29 U.S.C. § 1132(g)(1). Plaintiffs have filed two separate requests in this case. On July 2, 2014, plaintiffs moved for fees and expenses incurred from the initiation of the litigation through May 31, 2014. On September 18, 2014, plaintiffs filed a supplemental motion requesting fees and expenses incurred from June 1, 2014 through September 18, 2014.

## Discussion

### A.     Appropriateness of a fee award

Under ERISA's fee-shifting provision, a court has discretion to award fees and costs to either party. The statute provides that in actions brought "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee

and costs of action to either party." 29 U.S.C. § 1132(g)(1). To be awarded fees, a party must achieve "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). PCA, Barnard, and Wahner are eligible for fees because they prevailed on summary judgment and at trial.

In ERISA cases, "there is a modest presumption in favor of awarding fees to the prevailing party, but that presumption may be rebutted." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 673 (7th Cir. 2004) (internal quotation marks omitted). The Seventh Circuit recognizes two tests that courts may use to determine whether to award fees. Although there has been some discussion about whether the Supreme Court's decision in *Hardt* "does away with our two tests," the Seventh Circuit has not expressly rejected the tests. *Temme v. Bemis Co.*, 762 F.3d 544, 550 (7th Cir. 2014).

One test instructs that fees may be denied if the losing party's position was "substantially justified," which means "something more than non-frivolous, but something less than meritorious—and taken in good faith." *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011). Under the other test, the court considers:

> 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the [ ] plan as a whole; and 5) the relative merits of the parties' positions.

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505–06 (7th Cir. 2011) (internal quotation marks omitted). The five-factor test is useful in cases like this one in which the plaintiff prevailed. *See Pasternak v. Radek*, No. 07 C 2858, 2008 WL 2788551, at *2 (N.D. Ill. Apr. 3, 2008), *op. clarified on den. of recons.*,

No. 07 C 2858, 2008 WL 2788547 (N.D. Ill. Apr. 24, 2008). "[B]oth tests essentially ask the same question: was the losing party's position substantially justified and taken in good faith." *Kolbe*, 657 F.3d at 506 (internal quotation marks omitted). A finding of bad faith or harassment is not necessary to award attorney's fees under ERISA. *See Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011).

With respect to the substantially justified test, the Seventh Circuit recently clarified that the "relevant 'substantiality' inquiry should be into a party's posture during the case as a whole," including the non-moving party's "*pre*litigation behavior." *Temme*, 762 F.3d at 551. In *Temme*, the plaintiff class sued Bemis Company for eliminating health care benefits. Although the district court granted summary judgment in favor of Bemis (the defendant), the Seventh Circuit reversed. After the case settled before trial, the plaintiffs were awarded fees. In affirming the fee award, the Seventh Circuit rejected Bemis's argument that its position was substantially justified because it had initially obtained summary judgment. *Id.* at 550. In *Temme*, Bemis continued to deny a benefit to which plaintiffs "were *clearly* entitled" based on the Seventh Circuit's ruling in their favor. *Id.* at 551. *Temme* instructs courts to look at the losing party's actions prior to the litigation and throughout the litigation.

As in *Temme*, IBC has persistently denied benefits to which the plaintiffs were entitled. IBC contends that it was substantially justified because the Court's decision that PCA members were ERISA beneficiaries because they were designated by employee benefit plans to receive benefits was novel. Even if this is so, that was only one route to the Court's determination that plaintiffs were beneficiaries with rights under ERISA.

5

IBC was not substantially justified in arguing that it was under no obligation to provide ERISA-compliant procedures to providers. IBC steadfastly contended throughout the litigation that the plaintiff healthcare providers did not have ERISA standing, despite Seventh Circuit case law stating that section 1132(a)(1)(B) of ERISA "supplies jurisdiction when a provider of medical services sues as assignee of a participant." *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). IBC knew, or at least it was readily apparent, that at least some PCA members had been "designated by participants" to receive benefits. *See Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2014 WL 1276585, at *11–12 (N.D. Ill. Mar. 28, 2014). Though IBC contested the validity of some of these assignments, it was undisputed that at least some of the plans in question did not contain anti-assignment clauses. And at the summary judgment stage, IBC conceded that plaintiffs had produced some assignments that were not subject to anti-assignment clauses. *See* Pls.' Reply in Supp. of Mot. for Award of Att'y Fees at 2–3; Def.'s Opp. to Barnard/Wahner Mot. for Summ. J. at 2. In sum, IBC was not substantially justified in taking a blanket position that no provider was entitled to ERISA-compliant due process rights.

IBC's position on the adequacy of its procedures likewise was not substantially justified. The Court concluded on summary judgment that Barnard and Wahner did not receive adequate notice under ERISA because "[t]he original notice that Barnard and Wahner received lacked any explanation for Independence's decision, and it gave them next to nothing to go on in the event that they wished to appeal. No reasonable fact finder could conclude that the[y] substantially complied with ERISA." *Pa. Chiropractic*

*Ass'n v. Blue Cross Blue Shield Ass'n*, 4 F. Supp. 3d 929, 950 (N.D. Ill. Nov. 7, 2013). The Court further held that IBC's recoupments were arbitrary and capricious because the decision to recoup was based on a uniform method that identified procedure codes, rather than on any individualized determination. *Id.* at 951. IBC's position with respect to Barnard and Wahner's claims was not substantially justified.

During the bench trial on PCA's claims against IBC, Linda Paterson, senior director of provider network services for IBC, "confirmed that IBC is not taking ERISA into account during its process of modifying its procedures" as a result of a settlement in another lawsuit. *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *6. IBC was not substantially justified in continuing to press its position that ERISA notice and appeal requirements did not apply to payments made to PCA or its members, particularly given that this Court concluded that ERISA applied to Wahner, who *is* a PCA member. As this Court concluded after the bench trial, "IBC's practices c[ame] nowhere near substantial compliance with ERISA's notice and appeal requirements." *Id.* at *16. IBC was therefore not substantially justified with respect to PCA's claims.

Even with respect to those plans that contained anti-assignment clauses, the Court found that the plans' terms that provided for direct payments to providers made the anti-assignment provisions effectively irrelevant. *Id.* at *12. IBC points to two cases from other jurisdictions finding that anti-assignment provisions prevent in-network providers from asserting ERISA rights through assignment. Def.'s Surreply in Opp. to Pls.' Mot. for Award of Att'y Fees at 5. But two district court orders from other jurisdictions do not render IBC's position substantially justified.

Analyzing the plaintiffs' fee request under the five-factor test also supports an award of attorney's fees. The fifth factor, the relative merits of the parties' positions, overlaps with the substantially justified analysis that the Court just described. *See Temme*, 762 F.3d at 551. As the Court has discussed, this factor weighs in favor of awarding fees. The first factor requires a court to consider "the degree of the offending parties' culpability." *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1090, 1090 n.6 (7th Cir. 2012) (noting that the Seventh Circuit has "abandoned the idea that a finding of bad faith is vital to an award of fees"). Although IBC may not have acted in bad faith, its failure to follow ERISA's notice and appeal requirements to the detriment of healthcare providers suggests some level of culpability. The other factors weigh even more strongly in favor of awarding fees. As to the second factor, IBC does not dispute that it is able to pay an award of attorney's fees. The third factor also tilts in favor of a fee award, as it will deter other insurers from denying benefits without providing ERISA-compliant notice and appeal procedures. This is particularly important given the fact that cases like this one do not always result in a monetary damage award, at least not a significant award; as a result, insurers have less of a monetary incentive to provide ERISA-compliant procedures until after a suit is initiated. Finally, members of the plan who contract with IBC have benefited from plaintiffs' efforts to ensure that IBC provides adequate notice and appeal procedures. Thus, an award of attorney's fees is appropriate.

## B.  Reasonableness of the requested fees and expenses

Having determined that a fee award is appropriate, the Court must consider the amount of the award. Attorneys from Pomerantz LLP served as lead plaintiffs' counsel

for the bulk of the litigation.  Following the conclusion of the trial, several of plaintiffs'
attorneys left the Pomerantz firm and continued to represent plaintiffs in new firms.
Specifically, Brian Hufford and Jason Cowart resigned their partnerships at Pomerantz,
and since January 1, 2014 they have continued to serve as lead counsel for the
plaintiffs at Zuckerman Spaeder LLP.  Since March 6, 2014, Anthony Maul has worked
on the case as principal attorney of the Maul Firm, P.C.  And Robert Axelrod recently
became a founding partner of Axelrod & Dean LLP, where he also continues to serve as
plaintiffs' counsel.  In addition, attorneys from Buttaci & Leardi, LLC served as plaintiffs'
counsel for the duration of the litigation.  The table below summarizes each firm's
request for fees and expenses.

| | Through 5/31/2014 | | 6/1/2014 – 9/18/2014 | | |
|---|---|---|---|---|---|
| Firm | Fees | Expenses | Fees | Expenses | Total |
| Pomerantz | $1,780,949.27 | $57,949.90 | $0 | $0 | $1,838,899.17 |
| Buttaci & Leardi | $394,232.50 | $8,391.35 | $0 | $0 | $402,623.85 |
| Zuckerman Spaeder | $53,461.75 | $133.69 | $170,039.00 | $5,724.15 | $229,358.59 |
| The Maul Firm | $71,269.00 | $262.15 | $171,699.00 | $1,179.04 | $244,409.19 |
| Axelrod & Dean | $4,125.00 | $0 | $12,100.00 | $0 | $16,225.00 |
| TOTAL | | | | | $2,731,515.80 |

Plaintiffs claim they "incurred a total lodestar of well over $14 million in this
litigation, and spent a total of more than $260,000.00 in out-of pocket expenses."  Pls.'
Mem. in Supp. of Mot. for Award of Att'y Fees at 1.  But recognizing that they asserted
claims against defendants in addition to IBC, plaintiffs request from IBC $2,304,037.52
in fees and $66,737.09 in expenses for the period through May 31, 2014,[2] and

_____

[2] Plaintiffs' total request stated on the first page of its memorandum does not equal the
sum of each firm's fee and expense request.  In addition to this calculation error, the
memorandum states that Axelrod & Dean requests $2,750 in fees, even though
Axelrod's declaration and supporting documentation state $4,125 as its total fee
request.  The Court has corrected the calculation errors and assumes that Axelrod is
seeking $4,125 in fees for the period through May 31, 2014.

$353,838.00 in fees and $6,903.19 in expenses from June 1, 2014 through September 18, 2014.

The Court first calculates the "lodestar," that is, "the product of an attorney's reasonable hourly rate and the number of hours reasonably expended." *Stark*, 354 F.3d at 674. Three attorneys at Buttaci & Leardi worked on the litigation: two worked a total of 818.6 hours at $475 per hour, and one worked 12.7 hours at $425 per hour, totaling $394,232.50. Zuckerman provides charts listing the hours and rates of six attorneys and two paralegals who worked on the case, totaling $223,500.75 through September 18, 2014.[3] *See* Pls.' D. Brian Hufford Decl., Ex. 1 at 1 (dkt. no. 942-5); Pls.' Hufford Decl., Ex. 1 at 1 (dkt. no. 1010-3). Since he began working at the Maul Firm, Anthony Maul has recorded a total of 401.6 hours at $605 per hour, totaling $242,968. Since he began working at Axelrod & Dean, Robert Axelrod has recorded 29.5 hours at a $550 hourly rate, totaling $16,225. Pomerantz requests $1,780,949.27 in fees. (As described in more detail below, it is not feasible for the Court to independently calculate the portion of Pomerantz's billings that is attributable to IBC.)

IBC objects that plaintiffs failed to properly account for claims against other defendants; they included time and expenses spent on unsuccessful claims and motions; they seek fees for clerical tasks; their rates are unreasonable; and many of the claimed expenses are not recoverable. The Court addresses each argument in turn.

### 1. Methodology for removing fees relating to defendants other than IBC

This litigation originally involved multiple defendants. Claims against all other defendants settled, were dismissed, or were resolved on summary judgment. Only the

---

[3] Zuckerman appears to have deducted 0.3 hours from its billings during the first period.

claims against IBC went to trial. Pomerantz and Buttaci & Leardi contend that they have isolated the fees and expenses attributable to claims against IBC alone. (Because the three other firms only request fees for the phases of litigation involving IBC alone, they have no similar need to allocate their billings.)

The Court recognizes the difficulty of isolating work involving IBC and approves plaintiffs' method of reducing its hours. Plaintiffs coded every time entry by defendant and by stage of the litigation. They removed entries related to projects that did not involve IBC. Plaintiffs discounted entries that specified multiple defendants based on the number of defendants. For those entries in which no defendant was specified, plaintiffs discounted the requested amounts based on how many defendants were still involved in the litigation at the time. For instance, if two defendants were involved in the case and the entry was for general work that related to all defendants, plaintiffs claimed 50% of the fees and expenses incurred. If there were four defendants, plaintiffs claimed 25% of the fees and expenses incurred, and so on. Pls.' Anthony F. Maul Decl. ¶ 6 (dkt. no. 942-9).

Though the Court approves plaintiffs' methodology, it has no practicable way to verify that plaintiffs correctly applied it. In particular, Pomerantz has given the Court all of its billing records from the litigation, categorized by litigation phase but not by defendant. There is no way for the Court to verify that plaintiffs' attorneys actually removed work related to other defendants, because the billing records do not clearly reflect which tasks involved IBC and which did not.

Nonetheless, plaintiffs' methodology is a reasonable way to identify fees reasonably attributable to claims against IBC, and Pomerantz's billing records are

thorough. For these reasons, and because the firm has requested far less than the nearly $14 million it billed for the entire litigation, the Court accepts Pomerantz's claimed time entries, with the exception of time spent on plaintiffs' unsuccessful RICO claims and class certification motions, as discussed below.

### 2. Buttaci & Leardi's entries

The Court does not accept Buttaci & Leardi's claimed hours. Although Buttaci & Leardi claims to have used the same methodology as Pomerantz to reduce its requested fees, the Court takes issue with the lack of description in Buttaci & Leardi's submissions. Buttaci & Leardi has given the Court a three-page summary that purports to reflect all work that was done from August 2009 through May 2014. That document lists the total hours worked by each attorney at every litigation stage, but it does not detail how those hours were spent. *See* Pls.' John W. Leardi Decl., Ex 1 (dkt. no. 942-15). Buttaci & Leardi did not include any other description of the hours worked or the tasks completed. The Court therefore has no way to verify whether the time recorded was reasonable. Because of the lack of adequate description, the Court reduces Buttaci & Leardi's total fee award by half. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 658 (7th Cir. 1985) (affirming a 15% reduction for vague billing entries); *Davis v. Budz*, No. 99 C 3009, 2011 WL 1303477, at *4 (N.D. Ill. Mar. 31, 2011) (reducing award by half for vague entries).

### 3.    Unsuccessful claims and motions

IBC argues that Pomerantz and Buttaci & Leardi cannot recover fees attributable to the RICO claims that the Court dismissed early in the litigation after extensive briefing.  In the Seventh Circuit, a partially prevailing plaintiff can be awarded fees for unsuccessful claims if the successful and unsuccessful claims involve a common core of facts or related legal theories.  *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988); *Holmstrom v. Metro. Life Ins. Co.,* No. 07 C 6044, 2011 WL 2149353, at *6 (N.D. Ill. May 31, 2011).  Plaintiffs' RICO claims were based on a legal theory that was unrelated to the theory underlying the claims on which they prevailed.  Additionally, the factual theories were distinct in that the RICO claims centered around the allegation that IBC and other insurers had engaged in a scheme to defraud providers.  Because the RICO claims were largely distinct from the ERISA claims, the Court disallows fees and expenses incurred in litigating the RICO claims.

It is impossible for the Court to neatly disentangle time spent on the RICO claims and the ERISA claims during the early stages of the litigation.  Instead, the Court reduces by half the time and expenses attributable to IBC that were incurred through the dismissal of the second amended complaint.  The Court arrives at a 50% reduction by estimating, based on its oversight of the entirety of this litigation, that plaintiffs' attorneys spent roughly equal time working on the RICO and ERISA claims during that period.  The Court directs Pomerantz and Buttaci & Leardi to apply these reductions.

IBC also argues that plaintiffs cannot recover for time spent pursuing their unsuccessful motions for class certification.  A reduction is appropriate because the Court's denials of the plaintiffs' two successive sets of motions for class certification

reshaped the course of the litigation and limited the total relief plaintiffs could be awarded. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. *See also Riddle v. Nat'l Sec. Agency, Inc.*, No. 05 C 5880, 2010 WL 1655443, at *13 (N.D. Ill. Apr. 23, 2010). Accordingly, the Court directs Pomerantz and Buttaci & Leardi to remove all time spent briefing the class certification motions from the fee request.

The Court will not, however, exclude fees and expenses incurred during the class discovery phase of the case. As plaintiffs point out, the bulk of the records, depositions, and written discovery responses that were cited on summary judgment and admitted at trial were produced during the class discovery period.

IBC argues that plaintiffs are not entitled to fees incurred litigating the motion to stay because plaintiffs were unsuccessful on the motion. IBC cites no authority to support its argument that the plaintiffs are not entitled to fees for those efforts. IBC contends that "[p]laintiffs' lack of success on the motion, the distinct nature of the issues presented therein, and the duplication of work by multiple lawyers and firms" require that the Court refuse to award fees. Def.'s Mem. in Opp. to Pls.' Mot. for Award of Att'y Fees at 6. The Court disagrees and concludes that fees can be awarded for plaintiffs' work litigating the motion to stay. Unlike the motions for class certification, the denial of which shaped the relief the plaintiffs could ultimately obtain, work on the motion to stay was undertaken to defend the relief plaintiffs had already obtained. Because this work related to the claims on which plaintiffs prevailed, the Court awards fees for work litigating the motion to stay.

To summarize, the Court directs Pomerantz and Buttaci & Leardi to remove all time and expenses incurred briefing the class certification motions and to reduce by half the time and expenses incurred through the dismissal of the second amended complaint. Buttaci & Leardi is also directed to apply a further 50% reduction after it recalculates its hours to account for insufficient description in its billing records, as described above.

### 4. Appeal and fee petition

IBC argues that the Court should deny plaintiffs' supplemental request for fees related to IBC's pending appeal. In response, plaintiffs have retracted their request for fees incurred addressing appeal-related issues "with the understanding that Plaintiffs will seek such fees after they prevail in the Seventh Circuit." Pls.' Reply in Supp. of Mot. for Award of Att'y Fees at 5 n.4. Accordingly, the Court directs plaintiffs to remove the time spent on appellate issues in recalculating the fee award.

IBC does not contest that plaintiffs are entitled to fees incurred in preparing their motions for fees and expenses. *See Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980) (holding that prevailing plaintiffs are "entitled to fee awards for time spent litigating their claim to fees" under the Civil Rights Attorney's Fees Awards Act of 1976); *Holmstrom*, 2011 WL 2149353, at *8.

### 5. Clerical tasks

IBC complains that plaintiffs' attorneys have included clerical or secretarial work in their billings, because they included entries such as "prep deposition schedules" and "travel arrangements for deps." Def.'s Opp. to Pls.' Mot. for Award of Att'y Fees at 14 n.5. The Court is persuaded by the plaintiffs' argument that scheduling dozens of

depositions, coordinating with co-counsel, and strategizing assignment of those depositions are not clerical tasks, at least in a case of this complexity with numerous parties and attorneys on both sides. The "travel arrangements" item IBC cites was listed in conjunction with three other legal tasks that the attorney completed in one hour. *See* Pls.' Maul Decl. (Pomerantz), Ex. 1 at 245 (dkt. no. 942-10). The Court makes no reduction for these tasks.

### 6. Rates

Having addressed the requested hours, the Court turns to the attorneys' hourly rates. IBC argues that Pomerantz, Zuckerman, and the Maul Firm's billing rates are unreasonably high. IBC does not dispute the hourly rates requested by attorneys with Buttaci & Leardi or Axelrod & Dean.

Pomerantz requests rates ranging from $755 to $980 per hour for partners, $420 to $645 for associates, $420 to $570 for staff attorneys, and $260 for a paralegal. Zuckerman requests rates ranging from $590 to $905 per hour for partners, $300 to $380 for associates, and $235 to $300 for paralegals. The Maul Firm seeks an hourly rate of $605 for Anthony Maul. Plaintiffs were not billed for fees or expenses during the litigation, and their attorneys advanced any expenses that were incurred.

Although they handled this case on a contingent-fee basis, plaintiffs' attorneys contend that they typically bill clients on an hourly basis, and thus the Court should apply their standard billing rates. But Pomerantz, Zuckerman, and the Maul Firm have not presented enough evidence to show that their requested rates are in line with those in the community for this type of litigation. Although an attorney's actual billing rate for similar litigation is presumptively appropriate, the "fee applicant bears the burden of

'produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Apart from declarations by plaintiffs' attorneys and citations to other fee awards won by Pomerantz attorneys (discussed below), plaintiffs have presented no evidence to support their claimed hourly rates.

Plaintiffs include as an exhibit the Laffey Matrix, which is a framework used by the United States Attorney's Office for the District of Columbia to determine reasonable hourly rates in fee-shifting cases. This Court has expressed reservations about the utility of the Laffey Matrix as evidence of proposed hourly rates. *See Wells v. City of Chi.*, 925 F. Supp. 2d 1036, 1040 (N.D. Ill. 2013). In any event, the Laffey Matrix does not support plaintiffs' claimed rates. The Laffey Matrix states that an attorney with Hufford's experience should receive $771 an hour, not the $905 Hufford requests, and an attorney with Cowart's experience should receive $640 per hour, not $755.[4] Further, plaintiffs submitted billing statements from IBC's attorneys, which reveal that the most senior attorney who did substantial work on the case, Charles C. Jackson, had a billing rate of $675 in 2014, $715 in 2011, and $725 in 2010—lower than the $905 hourly rate requested by Brian Hufford, the $790 rate requested by Robert Axelrod for his time at Pomerantz, and the $755 rate requested by Jason Cowart, all of whom have less experience than Jackson. Pls.' Maul Decl., Ex. 1 at 25 (dkt. no 982-1), Ex. 2 at 10 (dkt. no 982-2), Ex. 3 at 15 (dkt. no 982-3).

---

[4] Hufford graduated from law school in 1985, Cowart graduated in 1999, and Maul graduated in 2003. Plaintiffs have not provided this information for the other attorneys who worked on this case.

Plaintiffs have cited cases in which Pomerantz attorneys received their requested hourly rates. The Court must consider other courts' determinations of an attorney's hourly rate. *Pickett*, 664 F.3d at 646. But the court must also look "at the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought*." *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996). Contrary to defendants' argument, however, this Court need not limit its analysis to reasonable market rates in the Chicago market. *See Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009).

Most of the cases plaintiffs cite were not ERISA cases. The one ERISA case plaintiffs cite in which these Pomerantz attorneys were awarded fees does not support the rates they have requested. *See Wachtel v. Health Net, Inc.*, No. CIV 01-4183, 2007 WL 1791553, at *4 (D.N.J. June 19, 2007). There, the court awarded Hufford $600 per hour, Axelrod $500 per hour, and Cowart (who was an associate at the time) $380 per hour, as opposed to the $905, $790, and $755 respective requests in this case. *Id.* In another case in which Hufford was involved, Pomerantz requested and was awarded between $495 and $725 for partners, $290 to $425 for associates, $150 to $210 for paralegals, and $90 for a legal assistant—but it was not an ERISA case. *Chin v. DaimlerChrysler Corp.*, 520 F. Supp. 2d 589, 608–09, 608 n.6 (D.N.J. 2007), *rev'd sub nom. Chin v. Chrysler LLC*, 538 F.3d 272 (3d Cir. 2008) (reversing fee award because New Jersey rather than California law applied). The Court acknowledges that these cases took place several years before this one, but plaintiffs have not shown that the cases support the much higher hourly rates that they request here.

The Court may also survey awards given to other attorneys in similar cases. In a 2011 ERISA case involving "a complicated record and a number of relatively novel legal issues," a court in this district awarded a $500 hourly rate to "one of the leading attorneys in this city among those who practice in the ERISA field" and a $375 hourly rate to an associate who graduated law school in 2004. *Holmstrom*, 2011 WL 2149353, at *7. Other ERISA cases in this district involved much lower awarded hourly rates. *See, e.g., DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chi. & Vicinity*, No. 09 C 0039, 2011 WL 1131110, at *7–8 (N.D. Ill. Mar. 28, 2011) (awarding $350 for partners, $225 for associates and $100 for paralegals and law clerks); *Pasternak*, 2008 WL 2788551, at *7 (approving hourly rates of $400 for a senior partner, $225 for an attorney with three-and-a-half years of experience, and $150 for an attorney who had recently been admitted to the bar).

The complexity of this litigation and the skill of plaintiffs' attorneys justify an award at the high end as compared to past awards in complex ERISA cases. The Court therefore uses the rates approved in *Wachtel*, with *Holmstrom* as a more recent guidepost and makes what it considers to be an appropriate upward adjustment of 20% to the rates of counsel to account for the passage of time since those cases were litigated.[5] The rates awarded by the court in *Wachtel* in 2007 are similar to the $500 hourly rate awarded to a leading ERISA attorney and the $375 awarded to a senior associate in 2011. *Compare Wachtel*, 2007 WL 1791553, at *4, *with Holmstrom*, 2011 WL 2149353, at *7. Paralegal time will be compensated at $150 per hour. Because the

---

[5] In addition to Hufford's $600 rate, Axelrod's $500 rate, and Cowart's $380 rate, the court in *Wachtel* awarded between $325 and $400 per hour for Pomerantz attorneys who were of counsel and between $325 and $425 for Pomerantz associates. *Wachtel*, 2007 WL 1791553, at *3.

plaintiffs have not provided the court with sufficient evidence that would allow the court to depart from the rates approved in *Wachtel*, the Court awards the rates listed below.

| Firm | Attorney | Rate Requested | Rate Awarded |
|---|---|---|---|
| Maul Firm | Anthony F. Maul | $605 | $600 |
| Zuckerman | Jason S. Cowart | $755 | $600 |
| Zuckerman | D. Brian Hufford | $905 | $720 |
| Zuckerman | Vivek Rao | $380 | $600/hour for partners, $450/hour for associates and staff attorneys, and $150/hour for paralegals |
| Zuckerman | Lori Duignan | $300 | |
| Zuckerman | Caroline Reynolds | $590 | |
| Zuckerman | Andrew Caridas | $460 | |
| Zuckerman | Conor O'Croinin | $360 | |
| Zuckerman | Rebekah Tolliver-Rotzer | $235 | |
| Pomerantz | D. Brian Hufford | $905 | $720 |
| Pomerantz | Robert J. Axelrod | $790 | $600 |
| Pomerantz | Jason S. Cowart | $755 | $600 |
| Pomerantz | Anthony F. Maul | $605 | $600 |
| Pomerantz | Partners | $755 – 980 | $600/hour for partners, $450/hour for associates and staff attorneys, and $150/hour for paralegals |
| Pomerantz | Associates | $420 – 645 | |
| Pomerantz | Staff Attorneys | $420 – 570 | |
| Axelrod & Dean | Robert J. Axelrod | $550 | $550 |
| Butacci & Leardi | John W. Leardi | $475 | $475 |
| Butacci & Leardi | Vincent N. Buttaci | $475 | $475 |
| Butacci & Leardi | Paul D. Werner | $425 | $425 |

The Court notes that attorney Axelrod requested a lower hourly rate ($550) for work performed while at his new firm than he requested for work while at Pomerantz, presumably because Pomerantz is a larger firm. The Court sees no basis to award Axelrod a higher hourly rate for time at his new firm than the rate he requested.

The Court also notes that Pomerantz and Zuckerman have not provided the Court with any information about the education and experience of many of the attorneys who worked on the case. Accordingly, the following rates will apply to Pomerantz and Zuckerman attorneys for whom the Court has not specified a rate: partners will be awarded $600 per hour, associates and staff attorneys $450 per hour, and paralegals

$150 per hour.  The Court directs plaintiffs to recalculate their total fee requests according to these billing rates.

### 7.    Expenses

Plaintiffs seek $66,737.09 in expenses from the commencement of this litigation through May 31, 2014, and $6,903.11 in expenses from June 1 through September 18, 2014.  Pomerantz requested the bulk of these expenses ($57,949 in total).[6]  Plaintiffs contend that they have isolated expenses attributable to claims against IBC using the same methodology they applied to calculate fees attributable to IBC.  The requested expenses include: (1) depositions attributable to IBC, (2) expenses related to document collection, review, and production (with each entry credited 6.94% to reflect the "parties' total document production, by page, attributable to IBC"), and (3) generalized expenses (discounted based on the number of defendants at each stage).  Pls.' Maul Decl. (Pomerantz) ¶¶ 6 n.1, 8 (dkt. no. 942-9).  The generalized expenses include computer research, database charges, expert fees, meals, overtime clerical charges, photocopying, telephone, trial supplies, and travel expenses.  Plaintiffs' attorneys have provided varying amounts of detail to support their expense requests.

Many of the requested items are generally recoverable as costs.  Photocopying costs, filing fees, postage, telephone calls, and delivery charges are recoverable to the extent they are reasonable.  *See Tchemkou v. Mukasey*, 517 F.3d 506, 512–13 (7th Cir. 2008); *Hakim v. Accenture U.S. Pension Plan*, 901 F. Supp. 2d 1045, 1057 (N.D. Ill. 2012).  Witness travel and lodging expenses for trial and depositions are also recoverable.  *See Majeske v. City of Chi.*, 218 F.3d 816, 825–26 (7th Cir. 2000).

---

[6] Axelrod & Dean has not requested costs or expenses.

ERISA's fee-shifting provision, however, does not allow for the recovery of expert witness fees as part of the attorney's fee. Thus, plaintiffs can recover a maximum of $40 per day for each witness who was not appointed by the court as costs. *See* 28 U.S.C. § 1821(b); *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987) ("[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary."); *Agredano v. Mut. of Omaha Cos.*, 75 F.3d 541, 542–43 (9th Cir. 1996); *Holland v. Valhi Inc.*, 22 F.3d 968, 979–80 (10th Cir. 1994).

Although the Seventh Circuit has not defined which electronic discovery costs are recoverable, at least some electronic discovery costs have been considered taxable provided they are reasonable and necessary. *See Hecker v. Deere & Co.,* 556 F.3d 575, 591 (7th Cir. 2009). This Court has previously concluded that only scanning and file format conversion costs are recoverable as costs under section 1920, whereas data processing costs are not. *In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 4343286, at *3 (N.D. Ill. Sept. 2, 2014).

Other of plaintiffs' requested expenses are recoverable as part of their attorney's fees awarded under ERISA. Travel is included as part of the fee award, including meals and local travel expenses. *See Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994); *Wells*, 925 F. Supp. 2d at 1049; *Davis*, 2011 WL 1303477, at *8 (Civil Rights Attorney Fees Awards Act); *Hitchcock v. G & W Elec. Co.*, No. 85 C 0667, 1989 WL 2061, at *2 (N.D. Ill. Jan. 5, 1989) (ERISA). Similarly, computerized research costs are recoverable as part of the attorney's fee award. *See Tchemkou*, 517 F.3d at 513 ("[C]osts of computerized legal research are recoverable as part of an attorney-fee

award."); *Haroco, Inc. v. Am. Nat. Bank & Tr. Co. of Chi.*, 38 F.3d 1429, 1441 (7th Cir. 1994); *DeBartolo*, 2011 WL 1131110, at *10.

Regardless of whether the claimed expenses are categorized as costs or as part of the fee award, Pomerantz and Buttaci & Leardi have not provided sufficient information to permit recovery of all of their expenses. Pomerantz provides a spreadsheet listing the types of expenses categorized by litigation phase, but it gives no additional explanation. For instance, roughly $10,000 is claimed by Pomerantz for experts. *See* Pls.' Maul Decl. (Pomerantz), Ex. 3 (dkt. no. 942-12) (requesting 14.28% out of $68,605.74 for "Expert[s]" as attributable to IBC). No other details have been provided to the Court. The Court cannot determine whether the request exceeds the $40 daily limit for expert witness fees. *See* 28 U.S.C. § 1821(b). Similarly, Pomerantz requests roughly $5,500 for "Database Charges" related to "Document Collection, Review and Production." Pls.' Maul Decl. (Pomerantz), Ex. 3 (dkt. no. 942-12). Because Pomerantz has not adequately described these charges, the firm cannot recover for these and other expenses. *See Davis*, 2011 WL 1303477, at *8–9 (denying reimbursement because of insufficient description); *Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 980 (N.D. Ill. 2003) ("When the costs can not [sic] be obtained reasonably by reference to supporting documentation, the costs as requested can not [sic] be awarded."). Similarly, Pomerantz cannot recover fees for transcripts because the firm has not provided the number of pages copied, which is necessary for the Court to determine whether the costs "exceed[ed] the regular copy rate as established by the Judicial Conference." Local Rule 54.1(b) (N.D. Ill.). *See Koneff v. Nyang'iti*, No. 07 C 3283, 2009 WL 5215595, at *1 (N.D. Ill. Dec. 29, 2009).

Pomerantz can, however, recover expenses incurred for photocopying, postage, and telephone calls. Parties are not required to account for each page photocopied in order to recover such costs. *See Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014). This same rationale applies to items such as postage and telephone charges. Because it would be unduly onerous for a party "to identify precisely each document it had copied along the way," every telephone call it made, or every parcel it sent, the Court will not reduce the amount requested for those items. *In re Text Messaging Antitrust Litig.*, 2014 WL 4343286, at *2. Pomerantz is directed to subtract all other expenses from its request. (Pomerantz is also directed to subtract postage, telephone, and photocopying expenses incurred during briefing on the class certification motions and reduce by half expenses incurred through the dismissal of the second amended complaint, as discussed above.)

Buttaci & Leardi has offered even less detail about its claimed expenses than Pomerantz. The firm asks the Court to award $391.94 for database access, $4,764.85 for depositions, $770.05 for deposition travel, and $3,646.51 for trial travel. No additional information is provided. For instance, neither travel listing is itemized, though both purport to include airfare, lodging, meals, and ground transportation. Pls.' Leardi Decl., Ex. 1 at 2 (dkt. no. 942-15). Similarly, Buttaci & Leardi requests $3,764.85 for deposition transcripts. But the firm does not state the number of pages copied as required under Local Rule 54.1(b). Because Buttaci & Leardi has offered no support or explanation for its claimed expenses, the Court declines to award expenses to the firm.[7]

---

[7] Buttaci & Leardi did not request an award for photocopying, telephone calls, or postage.

The Maul Firm has requested $262.15 in expenses for the time through May 31, 2014 and $1,179.04 from June 1 to September 18, 2014. Maul's expenses are documented in more detail than Pomerantz or Buttaci & Leardi's. Maul provides a spreadsheet with the date, category, and a description of each expense. For example, Maul includes entries such as "Meals for trip to Chicago" and "R/T train to Philadelphia." Pls.' Maul Decl., Ex. 1 at 5 (dkt. no. 942-17); Pls.' Maul Decl., Ex. 1 at 10–11 (dkt. no. 1010-5). The Maul Firm has sufficiently supported its requested expenses. The Court therefore awards a total of $1,441.19 to the firm for expenses.

Zuckerman requests $133.69 in expenses for work done through May 31, 2014, and $5,724.15 after June 1, 2014. This includes fairly detailed accounts of vendor costs, Westlaw charges, and delivery fees, with dates that allow the Court to match the charges with the work done. The only unrecoverable expenses are those related to "court costs" and "court reporters." *See* Pls.' Hufford Decl., Ex. 1 at 13 (dkt. no. 1010-3). The Court cannot determine whether those expenses correspond to transcript costs and the number of pages, if any, that were requested. Accordingly, the Court awards Zuckerman its requested expenses, but directs court and court reporter costs subtracted from the total award.

## Conclusion

The Court grants plaintiffs' motions for attorney's fees as described above [dkt. no. 942 & 1010]. The Court directs Pomerantz and Buttaci & Leardi to remove all hours and expenses incurred briefing the class certification motions and to reduce the hours and expenses incurred before dismissal of the RICO claims by half. Buttaci & Leardi is ordered to reduce its requested hours by an additional 50% due to insufficient

description in its submissions.  Zuckerman, the Maul Firm, and Axelrod & Dean are ordered to remove any hours spent working on issues related to the pending appeal. After making these reductions, plaintiffs are instructed to recalculate their requested fees by applying the hourly rates approved by the Court.  Pomerantz is awarded photocopying, telephone, and postage costs, but no other expenses.  Buttaci & Leardi is not awarded expenses.  The Maul Firm is awarded all of its requested expenses. Zuckerman is awarded its requested expenses with the exception of court and court reporter costs, which must be subtracted.

Plaintiffs are directed to apply these reductions and provide a calculation and explanation to IBC by no later than December 23, 2014.  IBC is directed to provide a point-by-point response to plaintiffs by no later than December 29, 2014.   The parties are directed to make a joint submission to the Court by no later than January 5, 2015 that describes and explains their contentions regarding the fees and expenses to be awarded pursuant to the Court's ruling.   The attorney time for plaintiffs' counsel associated with this additional work will not be compensable, unless the Court finds that IBC's counsel have acted unreasonably or in a dilatory fashion in connection with the additional work required.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  December 17, 2014