IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA CHIROPRACTIC ASSOCIATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 09 C 5619 |
| BLUE CROSS BLUE SHIELD ASSOCIATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In November 2013, the Court granted partial summary judgment on the issue of liability to two Pennsylvania chiropractors, Barry Wahner and Mark Barnard, on their claims against Independence Blue Cross (IBC).[1]  *See Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2013 WL 5951765 (N.D. Ill. Nov. 7, 2013). Barnard and Wahner, among several other plaintiffs including the Pennsylvania Chiropractic Association (PCA), had sued Independence and others for violations of the Employee Retirement Income Security Act (ERISA).  After the Court's decision on summary judgment, Barnard and Wahner settled their individual claims, leaving for trial only PCA's claims against IBC.  The Court held a bench trial on PCA's claims.  The Court found in favor of PCA, *see Pa. Chiropractic Ass'n v. Blue Cross Blue Shield*

---

[1] IBC is now known as Independence Hospital Indemnity Plan, Inc., a Pennsylvania not-for-profit hospital plan corporation.  For consistency with prior orders and the parties' briefs, the Court continues to refer to the defendant as IBC.

*Ass'n*, No. 09 C 5619, 2014 WL 1276585 (N.D. Ill. Mar. 28, 2014), and subsequently

granted it a permanent injunction against IBC, requiring it to reform its notice and

comment procedures when issuing repayment demands to PCA members. *See Pa.*

*Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2014 WL 2069343

(N.D. Ill. May 19, 2014). The Court later approved injunctions requested by Barnard

and Wahner as well, *see Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09

C 5619, 2014 WL 4087221 (N.D. Ill. Aug. 19, 2014), and awarded attorneys' fees and

costs to PCA, Barnard, and Wahner, *see Pa. Chiropractic Ass'n v. Blue Cross Blue*

*Shield Ass'n*, 76 F. Supp. 3d 722 (N.D. Ill. 2014).

In November 2015, the court of appeals reversed this Court's decisions finding

liability, granting the injunctions, and awarding attorneys' fees to the plaintiffs. IBC has

now moved for attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1). In

response, plaintiffs have moved for discovery sanctions against IBC. For the reasons

stated below, the Court denies both parties' motions.

## Background

The Court assumes familiarity with the previous orders in this case. In short,

associations representing the interests of individual chiropractors sued Blue Cross Blue

Shield Association and a number of Blue Cross Blue Shield entities for violations of

ERISA. Plaintiffs alleged that the Blue Cross defendants had a practice of initially

reimbursing them for medical services they provided to Blue Cross insureds, only to

later make false or fraudulent determinations that the payments had been made in error.

The Blue Cross entities would then demand immediate repayment from plaintiffs and

would forcibly recoup the amounts they sought by withholding payment on other,

unrelated claims for services plaintiffs provided to other Blue Cross insureds. Plaintiffs further alleged that when the Blue Cross entities made these repayment demands, they typically failed to provide adequate explanations for their demands or reasonable procedures for challenging them. Plaintiffs brought claims under section 502(a)(1)(B) of ERISA, which permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and section 502(a)(3), which authorizes a plan participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," *id.* § 1132(a)(3).

The Court determined that plaintiffs were "beneficiaries" who could bring claims against the defendants under sections 502(a)(1)(B) and 502(a)(3). Many other plaintiffs and defendants settled out of the case. Following a bench trial in 2013, the Court awarded damages and injunctions requiring IBC to follow ERISA and Department of Labor regulations when making future decisions concerning coverage and level of payment under insurance policies. Plaintiffs then petitioned for attorneys' fees and costs pursuant to ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1), which the Court awarded to plaintiffs.

On appeal, IBC argued (among other things) that plaintiffs failed to prove their case because they never introduced into evidence an ERISA plan whose terms could be enforced or clarified through a civil action under section 502(a)(1)(B) or section

502(a)(3). The Seventh Circuit agreed. It held that "a 'beneficiary' is a person designated 'by a participant' or 'by the terms of an employee benefit plan,' and plaintiffs are neither." *Pa. Chiropractic Ass'n v. Independence Hosp. Indemnity Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015) (quoting 29 U.S.C. § 1002). The court noted that under *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir. 1991), a provider is a "beneficiary" under ERISA when a "participant" assigns to the provider the right to receive the participant's entitlements under an ERISA plan. But, the court said, the plaintiffs in this case "[did] not rely on a valid assignment from any patient. Nor [did] they rely on a designation in a plan. Instead they rel[ied] on their contracts with an insurer. That does not meet the definition in § 1002(8)." *Pa. Chiropractic Ass'n*, 802 F.3d at 928. For this reason, the Seventh Circuit reversed, stating that "[t]he damages and injunctions . . . must be vacated, and the award of attorneys' fees to plaintiffs falls with them." *Id.* at 930.

When the parties returned to this Court, IBC moved for an award of attorneys' fees and costs pursuant to ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1). Plaintiffs opposed IBC's motion and filed a motion of their own seeking monetary sanctions against IBC for allegedly committing discovery violations before this Court that led to IBC's victory on appeal. Specifically, plaintiffs contend that IBC should be sanctioned because it had possession, custody, or control over the ERISA plan documents governing their insureds' employers' benefit plans, yet IBC never produced (and still has not produced) those documents.

**Discussion**

**A.    IBC's motion for attorneys' fees and costs**

Under ERISA's fee-shifting provision, a court has discretion to award fees and costs to either party.  The statute provides that in actions brought "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  To be awarded fees, a party must achieve "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).  IBC is eligible for fees because it prevailed on appeal.

In ERISA cases, "there is a modest presumption in favor of awarding fees to the prevailing party, but that presumption may be rebutted."  *Stark v. PPM Am., Inc.*, 354 F.3d 666, 673 (7th Cir. 2004) (internal quotation marks omitted).  This presumption, however, is weaker in cases in which a prevailing defendant seeks fees from a losing plaintiff.  *See Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 720 (7th Cir. 1981).  The Seventh Circuit recognizes two tests that courts may use to determine whether to award fees.  *Temme v. Bemis Co.*, 762 F.3d 544, 550 (7th Cir. 2014).  One test instructs that an award of fees may be denied if the losing party's position was "substantially justified," which means "something more than non-frivolous, but something less than meritorious—and taken in good faith."  *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011).  The other test instructs a court to consider:

> 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the [ ] plan as a whole; and 5) the relative merits of the parties' positions.

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505–06 (7th Cir. 2011) (internal quotation marks omitted). "[B]oth tests essentially ask the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Id.* at 506 (internal quotation marks omitted).

IBC contends that plaintiffs' litigating position was not substantially justified and that every one of the factors under the Seventh Circuit's five-factor test tilts in IBC's favor. First, IBC contends that plaintiffs are culpable, censurable, and blameworthy because, IBC says, they advanced a legal theory that had never been adopted by any court. Second, IBC argues that plaintiffs can afford to pay the requested fees and costs, either themselves or with the help of their attorneys. Third, IBC argues that awarding fees against plaintiffs will deter future plaintiffs looking to bring frivolous or groundless claims under ERISA. Fourth, IBC contends that awarding fees will benefit participants and beneficiaries of ERISA plans by deterring non-participants and non-beneficiaries from filing suits like these and potentially taking money that would otherwise flow to plan participants and beneficiaries. Last, IBC emphasizes yet again that plaintiffs' position was categorically rejected on appeal, so the relative merit of IBC's position is superior to that of plaintiffs' position.

### 1.    Plaintiffs' culpability or bad faith

IBC states three grounds for asserting that plaintiffs are culpable and took a censurable or blameworthy position. First, it contends that the way the Seventh Circuit handled IBC's appeal demonstrates the frivolousness of plaintiffs' theory of recovery. Second, IBC says that plaintiffs' attorneys' press releases announcing their victory at

summary judgment and at trial demonstrate that even plaintiffs knew that their theory of recovery was outlandish.  Third, IBC argues that plaintiffs should be censured for advancing a novel theory at all.

All three of these arguments lack merit.  First, IBC claims that plaintiffs' position was not substantially justified because the Seventh Circuit issued its opinion reversing the Court just a few weeks after hearing oral argument and because the appellate court used colorful language rejecting plaintiffs' theory of recovery.  IBC cites no authority for the proposition that an appellate court's ability to issue a decision quickly indicates that the losing party's position is not substantially justified.  Nor could it, for the turn-around time of an appeal often depends on a variety of factors unknown to the parties or the district court.  Likewise, although colorful prose in an appellate court's decision might suggest the mindset of the panel of judges who decided the appeal, it does not constitute an instruction by the circuit court that the district court should view plaintiffs' position as lacking substantial justification.  The fact that the Seventh Circuit stated that "[t]he problem with [plaintiffs'] contention [that they are beneficiaries under an ERISA plan] all but catapults off the page," *see Pa. Chiropractic Ass'n*, 802 F.3d at 928, does not demonstrate that asserting the claim in the first place was not substantially justified.

IBC's second argument—that plaintiffs' attorneys' press releases demonstrate their position's lack of substantial justification—fares no better.  IBC contends that plaintiffs must have known that their position was unjustified because their attorneys issued press releases in which they emphasized that their legal theory was novel and that they were among the first lawyers in the country to advance it.  But the statements made in these press releases are wholly irrelevant to whether taking the position

plaintiffs took should be deemed culpable. Neither the Seventh Circuit nor any other court has instructed that a litigant's position should be deemed culpable or otherwise not substantially justified if that litigant signals that he thinks his theory is novel. It thus does not matter whether plaintiffs or their counsel thought their legal theory to be innovative or unprecedented.

More importantly, a legal theory can be novel without being unjustified; indeed, all legal theories, from the frivolous to the meritorious, must get their start somewhere. Plaintiffs, by their own admission, advanced a new theory. They lost, but that does not retroactively render their approach frivolous or unjustified; novelty is not the same as frivolousness, even if a novel theory is ultimately rejected.

The important question, then, is whether plaintiffs acted culpably in taking the particular novel position they took in this case. IBC seems to suggest that plaintiffs' position lacked justification because courts throughout the country have roundly rejected it. But even the Seventh Circuit in this case acknowledged that the courts that have addressed this issue have not done so in the clearest of terms and that the court that most clearly rejected a version of plaintiffs' theory did so after the present case was already pending on appeal. In its decision reversing the Court, the Seventh Circuit observed that "[t]he Second Circuit recently held [in *Rojas v. CIGNA Health & Life Insurance Co.*, 793 F.3d 253 (2d Cir. 2015)] that a network contract between a medical provider and an insurer does not make that provider a 'beneficiary' under ERISA." *Id.* at 929. The appellate court explained that the Second Circuit in *Rojas* discussed three cases—a Ninth Circuit case decided in 2014 and cases decided by the Sixth and Eleventh Circuits in 2001—and "conclude[d] that every circuit that has addressed the

8

subject has distinguished between providers' status as assignees of particular claims to benefits and providers' status as voluntary members of a network established by an insurer." *Id.* The Seventh Circuit also observed that the "language of those other decisions is not as clean as the Second Circuit's," but it ultimately concluded that "the distinction between assignment of particular claims and status as an in-network provider is supported by the case law." *Id.*

The Court is not persuaded that advancing a legal theory that is new to this circuit constitutes culpable conduct when some version of that theory has been obliquely or unclearly rejected in the past by three other circuit courts. Plaintiffs knew that under *Kennedy*, they could be deemed "beneficiaries" only if they were designated by a participant or by the terms of an ERISA plan. Viewing as "ERISA plans" the contracts they had negotiated with IBC to provide health care services to members of employee benefit plans, they argued that they had indeed been designated by the terms of an ERISA plan. At the time plaintiffs brought suit, the Seventh Circuit had been silent on this issue, and only two circuits had ever addressed a similar theory. It was far from obvious that two others would concur during the pendency of this litigation and that the Seventh Circuit someday would as well.

The Seventh Circuit has instructed:

> The 'culpability' of a losing plaintiff significantly differs from that of a losing defendant. A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found 'culpable', but may be only in error or unable to prove his case.

*Marquardt*, 652 F.2d at 720. That is precisely what happened here. Had plaintiffs procured employer plan documents showing that plaintiffs were designated as

beneficiaries, they might have prevailed on their claims.  Because plaintiffs did nothing

more than fail to prove their status as beneficiaries under an ERISA plan, the Court

finds the first factor weighs against awarding fees to IBC.

**2.      Plaintiffs' ability to pay**

IBC argues that plaintiffs are more than capable of paying the multi-million dollar

fee award IBC requests.  It points out that PCA consists of health care providers

throughout Pennsylvania who could pool their resources to satisfy a fee award,

especially in light of the settlements other defendants entered into throughout the

course of this litigation.  IBC also notes that plaintiffs pursued this lengthy and labor-

intensive lawsuit for seven years, which IBC says plaintiffs could have done only with

limitless resources.  Moreover, says IBC, plaintiffs' counsel should be deemed a real

party in interest whose assets should be considered when determining plaintiffs' ability

to pay.

The Court finds these arguments unpersuasive.  First, plaintiffs have

demonstrated through sealed affidavits that they are not in a position to pay a large fee

award.  IBC offers no support for the contention that because PCA consists of

numerous health care providers, it can collect a large sum of money from its members

to cover IBC's legal fees.  Furthermore, IBC is misguided in arguing that because

plaintiffs' own attorneys' services were worth over two million dollars, plaintiffs can

afford to pay their own attorneys that amount *and* pay an additional five million dollars to

defendants.  *Cf. Marquardt*, 652 F.2d at 720–21 ("[W]hen an employee sues an

employer, the employer often will be in a position to pay its own legal fees while the

employee will be hard pressed to pay both his own and the employer's fees. . . . Thus,

the 'ability to pay' factor will rarely weigh in favor of an award of attorneys' fees to a defendant.").  A plaintiff's willingness to prosecute a case for several years is not evidence of that plaintiff's ability to pay millions of dollars in defense attorneys' fees. The Court also notes that in its original form, the litigation involved a large number of plaintiffs suing a large number of Blue Cross-related entities in addition to IBC, and the extended period the litigation was pending was attributable to its overall scope, not to anything that these particular plaintiffs did in pursuing their claims against IBC.

The only evidence IBC brings forward to support its contention that plaintiffs can pay a fee award concerns plaintiffs' counsel, whose evident prosperity IBC believes is relevant to the question whether their clients can afford to pay.  To support its position that plaintiffs' counsel's ability to pay a fee award should be considered, IBC cites a decision by a district judge in the Northern District of California.  *See Ghorbani v. Pac. Gas & Elec. Co. Grp. Life Ins.*, 100 F. Supp. 2d 1165 (N.D. Cal. 2000).  There, the court determined that when a plaintiff's attorneys work on a contingency fee basis to prosecute a claim under ERISA, they acquire an ownership interest in the litigation that renders their worth relevant to the question whether the losing plaintiff can afford to pay a resulting fee award under 29 U.S.C. § 1132(g)(1).  *Id.* at 1167.

Plaintiffs argue that the Ninth Circuit rejected the principal reasoning underpinning *Ghorbani*—that counsel working on a contingent fee basis assume some ownership of the lawsuit—in *Benci-Woodward v. C.I.R.*, 219 F.3d 941 (9th Cir. 2000), a month after *Ghorbani* was issued.  The Court does not read *Benci-Woodward* quite that broadly; the Ninth Circuit held that contingent fee counsel do not assume an ownership interest or otherwise become a real party in interest under California or Alaska law.  The

court did not address whether the same principle applies under ERISA or other federal statutes that provide for fee shifting.

That said, no controlling precedent supports IBC's argument that a court evaluating a losing plaintiff's ability to pay fees pursuant to 29 U.S.C. § 1132(g)(1) should consider the plaintiff's attorneys' resources. In fact, courts throughout the country agree that "[w]hen a fee-shifting statute that authorizes the courts to award attorneys' fees . . . does not mention an award against the losing party's attorney, the appropriate inference is that an award against attorneys is not authorized." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991); *see, e.g.*, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 (1980); *In re Crescent City Estates, LLC*, 588 F.3d 822, 828 (4th Cir. 2009); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2007); *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006); *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005–06 (9th Cir. 2002); *Foster v. Mydas Assocs., Inc.*, 943 F.2d 139, 142 (1st Cir. 1991); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 276–77 (3d Cir. 1990). Although IBC does not directly seek an award from plaintiffs' attorneys, its request that the Court take their finances into account amounts to the same thing. It makes no sense to consider the resources of a party's attorney in evaluating the party's ability to pay if the attorney has no obligation to contribute to payment of an award.

ERISA does not provide for recovery of a fee award against a losing party's attorneys. Because no law permits either IBC or the plaintiffs to demand a contribution from plaintiffs' attorneys, the Court sees no appropriate basis to consider plaintiffs' attorneys' means when assessing plaintiffs' ability to pay a fee award. In light of the

uncontroverted evidence of plaintiffs' inability to pay the fees requested, the Court finds

that the second factor weighs against awarding attorneys' fees to IBC.

### 3.     Deterrence

IBC next argues that imposing a fee award would deter future plaintiffs from

bringing meritless lawsuits under ERISA.  It contends that because ERISA provides for

bilateral, rather than unilateral, fee shifting, Congress must have intended the provision

to equally deter unscrupulous defendants and speculative plaintiffs.  This means,

according to IBC, that Congress was more interested in preventing speculative suits

than it was in ensuring plaintiffs could experiment with new theories to broaden ERISA's

scope.  *See* Def.'s Mem., dkt. no. 1052-1, at 10 ("ERISA's fee-shifting provision is

neutral with respect to plaintiffs and defendants, meaning that Congress was more

concerned with deterring unmeritorious claims than with expanding ERISA's claims for

relief.").

But as the Seventh Circuit has explained:

> [T]he third factor, deterrence, generally will not justify an award of
> attorneys' fees to defendants.  Although an assessment of attorneys' fees
> against a plaintiff certainly would be a strong deterrent against bringing a
> frivolous action, it generally is sufficient that plaintiff bears his own
> attorneys' fees and costs to deter institution of a frivolous or baseless suit.
> Deterrence is achieved against employers, on the other hand, because
> they will have added incentive to comply with ERISA, rather than facing
> suits for compliance, if they know that they may have to pay plaintiffs'
> attorneys' fees, in addition to the costs of compliance and their own legal
> fees.

*Marquardt*, 652 F.2d at 721.  Likewise, although assessing attorneys' fees against

plaintiffs would serve as a strong deterrent against bringing future suits without firm

grounding in precedent, the fact that plaintiffs must bear their own fees and costs from

lengthy litigation like this is amply sufficient to deter future meritless suits.  A fee award

might be appropriate to deter plaintiffs from engaging in dilatory tactics in pursuit of baseless lawsuits.  But as explained above, IBC has made no showing of impropriety or fraud on the part of plaintiffs; its entire rationale for requesting attorneys' fees is that plaintiffs pursued a theory of relief for which no court had yet signaled its approval. The Court is not persuaded that requiring plaintiffs to pay a fee award is necessary from a deterrence perspective.  This factor weighs neither in favor of nor against a fee award.

### 4.    Benefit to plan members

In *Marquardt*, the Seventh Circuit cautioned that the fourth factor will rarely favor awarding fees to a prevailing defendant in an ERISA suit:

> [T]he benefit of the suit to all participants in an ERISA plan or the resolution of a significant legal question under ERISA is . . . primarily relevant only to whether plaintiffs should be awarded attorneys' fees. Plaintiffs will have added incentive to bring suits that benefit all plan beneficiaries and to enforce the policies behind ERISA if their attorneys' fees will be paid by defendants.  Of course, sometimes a defendant may establish an interpretation of ERISA that clarifies the law or benefits ERISA plan beneficiaries, if not the plaintiff.  But, in general, the fourth factor is significant in determining the benefits conferred in a suit brought by ERISA plaintiffs, rather than the benefits of dismissing a meritless ERISA suit.

*Marquardt*, 652 F.2d at 721.  IBC argues that this case presents the rare occasion where the defendant should be rewarded for clarifying the law and benefiting plan beneficiaries.  It reasons that its insistence on litigating the case to conclusion and its hard work doing so led the Seventh Circuit to set a precedent that will prevent opportunistic non-beneficiaries from filing frivolous lawsuits in the future, thus enabling insurers to avoid incurring legal expenses whose costs would be passed along to consumers.

The alleged benefit to plan participants is highly attenuated, speculative, and

unsubstantiated.  By IBC's logic, this factor would weigh in favor of every prevailing

defendant in every ERISA case, because dissuading prospective plaintiffs from filing

suit in the future will always save defendants from incurring legal fees.  More

importantly, IBC has offered no explanation, evidence, or authority in support of its

contention that downstream benefits to plan members will accrue as a result of its

victory against health care providers attempting to sue as "beneficiaries" under ERISA.

Plan members might very well never experience financial benefits or expanded

coverage as a result of IBC saving money by avoiding future legal fees.  The Court finds

that this factor weighs neither in favor of nor against assessing a fee award against

plaintiffs.

### 5. Relative merits of the parties' positions

This is the only factor that weighs in favor of IBC, for the simple reason that IBC

won and plaintiffs lost.  Plaintiffs contend that this factor weighs in their favor because

the Seventh Circuit neither held that health care providers cannot assert ERISA rights

under some circumstances nor repudiated the Court's finding that IBC's appeal

procedures were inadequate.  But the fact that the Seventh Circuit went no further than

necessary to reverse the Court's decisions at summary judgment and trial does not

mean that the Seventh Circuit validated plaintiffs' position or implied that it had some

merit.

Although this factor favors IBC, it does so only slightly.  To some extent, this

factor overlaps with the "substantially justified" test for determining the appropriateness

of fees generally.  *See Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir.

2007) ("[T]he 'relative merits of the parties' positions' is an oblique way of asking

whether the losing party was substantially justified in contesting his opponent's claim or defense.").  As the Court explained earlier, IBC has not shown that plaintiffs defrauded IBC or the Court or otherwise abused the judicial process.  IBC does not contend that plaintiffs' conduct, either during the litigation or prior to it, was inappropriate or intended to harass IBC.  Rather, IBC contends that the plaintiffs are culpable simply for advancing a novel legal theory that was ultimately rejected.  IBC won on appeal, but plaintiffs were substantially justified in taking their position because it was "more than non-frivolous, but something less than meritorious—and taken in good faith."  *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011).

**6.      Weighing the factors**

In sum, the first two factors weigh against IBC, the last factor slightly favors IBC, and the third and fourth factors do not favor or disfavor a fee award.  All of these factors must be weighed together to determine whether plaintiffs' position was "substantially justified and taken in good faith."  *Kolbe*, 657 F.3d at 506 (internal quotation marks omitted).  "At most the five-factor test is a checklist of factors for the district judge to consider to make sure he hasn't overlooked anything that might be relevant to the appropriateness or size of the award."  *Sullivan*, 504 F.3d at 672.  The Seventh Circuit has instructed that "the five factors used as guidelines" to determine whether a losing party's position was substantially justified "will seldom dictate an assessment of attorneys' fees against ERISA plaintiffs."  *Marquardt*, 652 F.2d at 720.  With only IBC's victory on the merits weighing slightly in its favor, the Court finds that plaintiffs' position was substantially justified and declines to award attorneys' fees and costs to IBC under 29 U.S.C. § 1132(g)(1).

**B.      Plaintiffs' motion for discovery sanctions**

Plaintiffs contend that IBC should be "severely sanctioned" for alleged discovery violations.  Pls.' Mem., dkt. no. 1067, at 5.  They argue that IBC lied to them and to the Court when it "repeatedly assured Plaintiffs and the Court that [it was] producing [plan documents] to Plaintiffs."  *Id.*  Instead, say plaintiffs, IBC hyper-technically interpreted plaintiffs' interrogatory and document requests and produced non-ERISA plan documents.  Plaintiffs contend that as a plan fiduciary, IBC had access to and control of the relevant documents but chose to withhold them in order to ambush plaintiffs during closing arguments at trial and on appeal.  Plaintiffs seek sanctions under the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, which prohibits lawyers from engaging in conduct that "multiplies the proceedings in any case unreasonably and vexatiously."

IBC argues against the imposition of discovery sanctions on two grounds.  First, it contends that plaintiffs' motion is procedurally improper.  IBC says the Court lacks jurisdiction to hear plaintiffs' motion and that even if jurisdiction exists, sanctioning IBC would impermissibly run counter to the Seventh Circuit's mandate.  It also disputes whether discovery sanctions can issue given the long passage of time since the alleged violations and the fact that plaintiffs did not request to meet and confer prior to requesting sanctions.  Second, IBC denies that it committed any wrongdoing.  It argues that in responding to plaintiffs' interrogatories, requests for admission, and document requests, it relied on the ordinary meaning of words used in the health care and ERISA context.  IBC also contends that it did not violate any discovery obligations because it did not have possession of or control over ERISA plan documents.

IBC relies on *Gibbons v. Brandt*, 181 F.2d 650, 651 (7th Cir. 1950), to support its

contention that the Court lacks jurisdiction to consider plaintiffs' motion for sanctions.  In *Gibbons*, the Seventh Circuit held that "where a decree is reversed upon appeal solely because of the trial court's error in applying the law to the facts as found, there is nothing for the trial court to do upon remand except to enter a judgment or decree for the party who prevailed upon the appeal." *Id.*  Although the Seventh Circuit did use jurisdictional language in *Gibbons*, it did so in the course of discussing the so-called "mandate rule," which requires that a lower court do nothing "other than proceed in accordance with the direction contained in the [appellate court's] mandate." *Id.* ("The general rule is that where the merits of a case have once been decided upon an appeal, the lower court is without jurisdiction in the absence of authority from the reviewing court, to do other than proceed in accordance with the direction contained in the mandate.").  The Court has not found, and IBC has not cited, case law supporting the notion that in the wake of a reversal, a district court lacks jurisdiction to hear sanctions motions.

Still, if granting plaintiffs' motion would contradict or undermine the Seventh Circuit's mandate, the mandate rule and the law of the case doctrine would bar the Court from imposing sanctions.  "The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  The mandate rule is "the most elementary application of this doctrine," and requires "that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the

appellate court." *Moore v. Anderson*, 222 F.3d 280, 283 (7th Cir. 2000) (internal quotation marks omitted).

The mandate rule only prohibits lower courts from addressing matters within the appellate mandate's compass. *See Moore*, 222 F.3d at 283; *Frank v. Walker*, No. 15-3582, 2016 WL 1426486, at *2 (7th Cir. Apr. 12, 2016) ("The scope of an appellate mandate depends on what the court decided."). "On remand, the district court retains the authority to dispose of other issues not addressed." *Moore*, 222 F.3d at 283. IBC argues that by holding "that [plaintiffs] had failed to carry their burden of proving the existence of ERISA plans," the Seventh Circuit's mandate "expressly and impliedly reject[ed]" plaintiffs' argument "that [IBC] supposedly represented insurance documents as being ERISA plans and therefore should be precluded from challenging the sufficiency of [plaintiffs'] proffered ERISA-plan evidence." Def.'s Resp., dkt. no. 1074, at 8. But plaintiffs' argument on appeal was that IBC's alleged malfeasance during discovery should preclude IBC from arguing that the documents it produced were not ERISA plans. By its ruling, the Seventh Circuit impliedly determined that IBC's reliance on the produced documents did not render those documents sufficient to demonstrate plaintiffs' status as beneficiaries under an ERISA plan. The court neither expressly nor impliedly ruled on whether IBC neglected its discovery obligations. As a result, the court's mandate cannot be said to require a finding that IBC's behavior during discovery was acceptable or unworthy of sanction.

But contrary to plaintiffs' contention, the Court is under no obligation to impose monetary sanctions for the violations alleged. Plaintiffs argue that Federal Rules of Civil Procedure 16(f), 26(g)(3), 37(b)(2), 37(c), 37(d)(1)(A)(ii), and 37(d)(3) "require

imposition of such sanctions, absent substantial justification," for the violations they allege against IBC. Pls.' Mem., dkt. no. 1067, at 18. This is incorrect. Rule 26(g)(3) does mandate the imposition of sanctions where a party knowingly certifies inaccurate or incomplete discovery responses without substantial justification. Fed. R. Civ. P. 26(g)(3). Sanctions, however, need not be monetary. *See Rojas v. Town of Cicero*, 775 F.3d 906, 909 (7th Cir. 2015) ("Rule 26(g)(3) gives the judge discretion over the nature of the sanction but not whether to impose one. . . . It could be money, but it also could be a formal (and public) reprimand or censure."). Rules 16(f)(2), 37(b)(2)(C), 37(c)(2), and 37(d)(3), meanwhile, provide that a court "must" order a noncompliant party to pay fees and costs "instead of or in addition to" any sanction the court chooses to impose, but these rules require a court to order such payment only if it determines that a fee award would be just under the circumstances. Rules 16(f)(1), 37(b)(2)(A), 37(c)(1), and 37(d)(1)(A) all authorize but do not require a court to impose sanctions for discovery violations. Sanctions against an opposing party's counsel under 28 U.S.C. § 1927 are discretionary as well. *See Rojas*, 775 F.3d at 908.

The Court finds no violation of Rule 26(g)'s certification requirement. Plaintiffs contend that by producing health care plan documents and relying on those documents' anti-assignment clauses to argue plaintiffs were not beneficiaries, IBC misrepresented to plaintiffs that those documents were the governing plan documents for the ERISA plans in question. It appears to the Court, however, that plaintiffs and IBC were simply talking past one another. As far as IBC was concerned, plaintiffs' intention throughout the litigation was to demonstrate that insurance contracts between health care providers and insurers could confer beneficiary status on health care providers. IBC could have

more directly stated that ERISA beneficiaries could be defined only by reference to ERISA plan documents that IBC would not or could not provide. But plaintiffs, through due diligence and open communication with defense counsel, could very well have determined that they needed employer plan documents and requested that IBC provide them. At that point, IBC could have attempted to provide them, or it could have objected and referred plaintiffs to third-party employers to request plan documents.

In other words, the materials submitted on plaintiffs' motion for sanctions suggest errors, misjudgments, and mistakes by both parties; plaintiffs' counsel could have been more diligent, and defense counsel could have been more direct. The Court is not persuaded that IBC or its attorneys knowingly certified inaccurate or incomplete discovery responses in violation of Rule 26. For the same reasons, the Court declines to sanction defendants under Rules 16 and 37, and also declines to impose sanctions on defense counsel under 28 U.S.C. § 1927.

Plaintiffs' motion is an unusual one. It is curious that although plaintiffs essentially claim that IBC secured its victory by defrauding them and the Court, they do not seek relief from judgment under Rule 60(b)(3). This rule, which provides that a court may set aside a judgment if a party engaged in "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), requires a plaintiff to "show that she has a meritorious claim that she was prevented from fully and fairly presenting at trial as a result of the adverse party's fraud, misrepresentation, or misconduct." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010) (internal quotation marks omitted). But instead of seeking to have the judgment on appeal vacated, plaintiffs seek only an award of monetary sanctions,

evidently for having been diverted off-track by defendants' conduct and for allegedly having been blindsided at closing argument and on appeal. This is an odd argument to advance in a post-appeal discovery sanctions motion rather than as a waiver or default argument on appeal.

This was a case in which plaintiffs attempted to show that under the terms of insurance contracts that sometimes allowed for and sometimes prohibited assignment, health care providers could become beneficiaries of an ERISA plan entitled to appeal procedures under ERISA. IBC contended from the start that this was not how ERISA worked, and it offered various arguments against this legal theory, including that it was not a proper ERISA defendant and that some of the plan documents plaintiffs used to prove their case did not permit assignment. IBC's argument evolved throughout pretrial motion practice, trial, and appeal, but the Seventh Circuit ultimately agreed that plaintiffs' evidence was insufficient to prove their status as beneficiaries under an ERISA plan. The Court does not believe that sanctions are necessary or appropriate.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion for fees and costs [dkt. no. 1052] and plaintiffs' motion for discovery sanctions [dkt. no. 1066].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 23, 2016